IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Timothy Tangen, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:21-cv-00335-BHH |
| | ) | |
| vs. | ) | |
| | ) | |
| Fluor Intercontinental, Inc.; Fluor | ) | |
| Government Group International, Inc.; | ) | |
| and Alliance Project Services, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT ALLIANCE PROJECT SERVICES, INC.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY POSITION .....................................................................1

FACTUAL BACKGROUND ...............................................................................................2

I.    APS IS A DELAWARE COMPANY THAT DOES NOT HAVE ANY PRESENCE
      IN SOUTH CAROLINA. ........................................................................................2

II.   PURSUANT TO A CONTRACT, APS PROVIDED LIMITED,
      ADMINISTRATIVE EMPLOYMENT-RELATED SERVICES FOR HOST
      COUNTRY NATIONALS AT BAGRAM AIRFIELD LOCATED IN
      AFGHANISTAN. ...................................................................................................2

      A.    IN ENTERING INTO THE CONTRACT AND ITS AMENDMENTS, APS
            DID NOT ENGAGE IN ACTIVITIES IN SOUTH CAROLINA. ........................3

      B.    THE APS/FLUOR CONTRACT DIRECTED APS TO PROVIDE CERTAIN
            SERVICES IN AFGHANISTAN; FULFILLING ITS OBLIGATIONS, APS
            PROVIDED SERVICES IN AND OTHERWISE DIRECTED TO
            AFGHANISTAN—
            NOT SOUTH CAROLINA. ...............................................................................4

III.  THE PREDOMINATE CAUSE OF ACTION ALLEGED IN THE COMPLAINT
      AGAINST APS IS A TORT-BASED CLAIM FOR "NEGLIGENCE/GROSS
      NEGLIGENCE" ALONG WITH A NON-SPECIFIED "BREACH OF CONTRACT"
      CLAIM ASSERTED "AGAINST FLUOR AND APS" RELATING TO ALLEGED
      "LOGCAP MATERIALS." ......................................................................................5

      A.    PLAINTIFF ALLEGES APS ENGAGED IN "NEGLIGENCE/GROSS
            NEGLIGENCE" IN ALLEGED ACTIONS AND INACTIONS THAT
            OCCURRED IN AFGHANISTAN. ....................................................................6

      B.    WITHOUT DISTINGUISHING APS FROM THE FLUOR ENTITIES,
            PLAINTIFF ALLEGES APS BREACHED "CONTRACTS WHICH
            ADOPTED AND INCORPORATED THE LOGCAP MATERIALS" BY
            ALLEGED ACTIONS AND INACTIONS THAT OCCURRED IN
            AFGHANISTAN. ...............................................................................................6

LEGAL ARGUMENT .....................................................................................................7

I.    LEGAL STANDARD FOR REVIEWING A MOTION TO DISMISS FOR LACK
      OF PERSONAL JURISDICTION UNDER RULE 12(B)(2). .........................................7

II.     THE COURT'S EXERCISE OF PERSONAL JURISDICTION OVER APS MUST CONFORM WITH APS' DUE PROCESS RIGHTS. ........................................................8

     A.     UNDER THE CONSTITUTIONAL PROTECTIONS AFFORDED APS, THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER APS FOR THE CLAIMS ASSERTED IN THE COMPLAINT. .........................10

          1.     PLAINTIFF CANNOT ESTABLISH THAT GENERAL JURISDICTION CAN BE ESTABLISHED OVER APS. ...................... 10

          2.     PLAINTIFF CANNOT ESTABLISH SPECIFIC JURISDICTION OVER APS FOR THE CLAIMS ASSERTED IN THE COMPLAINT. ...................................................................... 10

          3.     THE COURT'S EXERCISE OF PERSONAL JURISDICTION OVERAPS WOULD BE CONSTITUTIONALLY IMPERMISSIBLE AND UNREASONABLE. .................................................................. 14

CONCLUSION ..............................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
    293 F.3d 707 (4th Cir. 2002) ..................................................................................11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................... *passim*

*Callum v. CVS Health Corp.*,
    137 F.Supp. 3d 817 (D.SC. Sept. 28, 2015)......................................................7, 8, 9

*In re Celotex Corp.*,
    124 F.3d 619 (4th Cir. 1997) ....................................................................................7

*Cockrell v. Hillerich & Bradsby Co.*,
    363 S.C. 485, 611 S.E.2d 505 (2005) .......................................................................9

*Combs v. Bakker*,
    886 F.2d 673 (4th Cir. 1989) ....................................................................................8

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) ................................................................... *passim*

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..........................................................................................1, 10

*ESAB Group, Inc. v. Centricut, Inc.*,
    126 F.3d 617 (4th Cir. 1997) .................................................................................7, 9

*Fidrych v. Marriott Int'l, Inc.*,
    952 F.3d 124 (4th Cir. 2020) ................................................................... *passim*

*Foster v. Arletty 3 Sarl*,
    278 F.3d 409 (4th Cir. 2002) ....................................................................................9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..................................................................................................1

*Grayson v. Anderson*,
    816 F.3d. 262 (4th Cir. 2016) ...................................................................................8

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..................................................................................................9

iii

*Magic Toyota, Inc. v. Se. Toyota Distributors, Inc.*,
    784 F.Supp. 306 (D.S.C. 1992).........................................................................8

*Masselli & Lane, PC v. Miller & Schuh, PA*,
    No. 99-2440, 2000 WL 691100 (4th Cir. May 30, 2000).........................................8

*Nichols v. G.D. Searle & Co.*,
    991 F.2d 1195 (4th Cir. 1993) ...........................................................................9

*Sonoco Products Co.*,
    877 F.Supp. 2d 398 (D. S.C., July 11, 2012)...............................................8, 9, 14

*Ticketmaster-New York, Inc. v. Alioto*,
    26 F.3d 201 (1st Cir. 1994).................................................................................8

*Walden v. Fiore*,
    571 U.S. 277 (2014)...........................................................................................9

*Wolf v. Richmond Cnty. Hosp. Auth.*,
    745 F.2d 904 (4th Cir. 1984) ..............................................................................8

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)...........................................................................................9

**Statutes**

S.C. Code Ann. § 36-2-803.......................................................................................9

## INTRODUCTION AND SUMMARY POSITION

Defendant Alliance Project Services, Inc. ("APS") moves to dismiss the Complaint filed by a non-South Carolina resident because the Court does not have personal jurisdiction over APS. Plaintiff has not alleged (and certainly cannot prove) that APS's affiliations with South Carolina "are so constant and pervasive 'as to render [APS] essentially at home in the forum State'" to establish general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Nor can Plaintiff establish specific jurisdiction. A "court may exercise specific jurisdiction if the defendant has continuous and systematic contacts with the forum state <u>and</u> the claims at issue arise from those contacts with the forum state." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 138 (4th Cir. 2020) (citing *Daimler AG*, 571 U.S. at 126-27) (emphasis added). For specific personal jurisdiction to exist, Plaintiff must satisfy its burden of showing that: i) APS purposefully conducted activities in South Carolina, and ii) Plaintiff's claims arise of out of such APS activities that occurred in South Carolina. *See id.* at 138. Yet, Plaintiff does not—and cannot—satisfy its burden. The lone fact that APS entered into a contract with a South Carolina-based company (Fluor Intercontinental, Inc.) does not justify the exercise of specific jurisdiction—particularly where, as here, APS's services provided under the contract were performed in or otherwise directed at Afghanistan, where APS's contacts in regard to the contract were with Fluor's field office located in Afghanistan, and where APS did not negotiate, sign, or otherwise appear in South Carolina in regard to the contract. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.")

The constitutional protections afforded APS do not render permissible or reasonable the exercise of personal jurisdiction by this Court over APS. Therefore, the Motion to dismiss the Complaint against APS is properly granted.

## FACTUAL BACKGROUND

### I. APS IS A DELAWARE COMPANY THAT DOES NOT HAVE ANY PRESENCE IN SOUTH CAROLINA.

APS is a corporation organized under the laws of the State of Delaware, and its principal place of business is located in Leesburg, Virginia. (Ex. 1, Declaration of Tod E. Nickles ¶ 3.) (*See also* Compl. ¶ 35.)

APS has no presence in South Carolina. APS is not incorporated in South Carolina, and it does not have its principal place of business in South Carolina. (*Id.*) APS has no office located in South Carolina and does not rent or own any property in South Carolina. (*Id.* ¶ 4.) APS has no employees located in South Carolina. (*Id.* ¶ 5.) APS does not have an account at a bank located in South Carolina. (*Id.* ¶ 6.) APS is not registered to do business in South Carolina and does not have an appointed agent for service of process in South Carolina. (*Id.* ¶ 7.) APS does not direct advertising to the State of South Carolina. (*Id.* ¶ 8.) APS operates a website used only for providing information, advertising, and allowing a potential customer to contact APS. (*Id.* ¶ 9.) The APS website does not allow a user to consummate a transaction with APS for its products or services. (*Id.*)

### II. PURSUANT TO A CONTRACT, APS PROVIDED LIMITED, ADMINISTRATIVE EMPLOYMENT-RELATED SERVICES FOR HOST COUNTRY NATIONALS AT BAGRAM AIRFIELD LOCATED IN AFGHANISTAN.

APS provided certain limited, labor supply management services with respect to certain host country nationals (HCN) for Fluor's operations in Afghanistan. (*Id.* ¶ 10.) The services

2

were provided pursuant to a contract (identified as Contract No. L4CP-005-90-K10327) between APS and Fluor Intercontinental, Inc.[1]  (*Id.*)

The voluminous contract is divided into certain "parts."  (*Id.* ¶ 13.)  One part of the contract is referred to as "Contract Part III – General Terms – Standard."[2]  (Ex. 1, Declaration of T. Nickles, ¶ 13, Ex. A.)  As provided therein, the APS/Fluor "[c]ontract shall be subject to the law and jurisdiction of the <u>State of California</u>, unless expressly designated otherwise within the [c]ontract."[3]  (*Id.* ¶ 14, Ex. A, § 38.5 at p. 29) (emphasis added.)  No provision in the contract refers to laws of South Carolina, nor does any provision in the contract refer to disputes relating to the contract being subject to the jurisdiction of a court located in South Carolina.  (*Id.* ¶ 15.)

> **A.    IN ENTERING INTO THE CONTRACT AND ITS AMENDMENTS, APS DID NOT ENGAGE IN ACTIVITIES IN SOUTH CAROLINA.**

APS was awarded the contract with Fluor without APS engaging in activities in South Carolina.  APS responded to a request for proposal (RFP) generated out of Bagram Airfield ("BAF") in Afghanistan.  (*Id.* ¶ 11.)  APS did not negotiate or sign the contract, or any of the contract amendments, in South Carolina.  (*Id.* ¶ 12.)

---

[1] The contract and its forty-seven (47) amendments is voluminous and contains some proprietary and confidential pricing information. (*Id.* ¶ 10.) Parts of the contract were designated "confidential" by Fluor.  (*Id.*)  Upon entering into a mutually agreeable confidentiality agreement, the contract can be shared with Plaintiff.  Plaintiff's counsel already has the contract as a result of another legal action.

[2] Contract Part III – General Terms – Standard – Rev. 30 April 2015 is believed to have been in effect in November 2016.  (*Id.* ¶ 13.)

[3] This provision had not changed; the same provision existed in the original Contract part III – General Terms – Standard.  (*Id.* ¶ 14.)  The contract also provides for a waiver of a jury trial, and includes a survival provision for certain provisions of the contract.  (*See id.* ¶¶ 16-17.)

**B.     THE APS/FLUOR CONTRACT DIRECTED APS TO PROVIDE CERTAIN SERVICES IN AFGHANISTAN; FULFILLING ITS OBLIGATIONS, APS PROVIDED SERVICES IN AND OTHERWISE DIRECTED TO AFGHANISTAN—NOT SOUTH CAROLINA.**

The contract specifies that APS's performance of the contract was to occur in Afghanistan. (*Id.* ¶ 19.)[4] Under the contract, communications and contract notices with Fluor were to be directed to Fluor's field address at BAF in Afghanistan. (*Id.* ¶ 18.) And, APS's direct points of contact for APS's work under the contract were Fluor personnel who were located at BAF in Afghanistan. (*Id.*) Correspondingly, the contract was performed and administered by APS employees who were also located at BAF in Afghanistan; in addition, some contract administration work was provided by APS employees at APS's principal place of business located in the State of Virginia. (*Id.* ¶ 20.) In fulfilling its obligations, APS provided services in, or otherwise directed at, Afghanistan. (*Id.*¶ 19.)

APS did not perform any services in South Carolina. (*Id.* ¶ 19.) On information and belief, APS did not appear in the State of South Carolina for any matter relating to the referenced contract. (*Id.* ¶ 21.) In the Complaint, Plaintiff makes the general assertion, without supporting facts, that APS "regularly conducts business in South Carolina and contracts to supply services in South Carolina …." (*See* Compl. ¶ 36.) As set forth above, this conclusory assertion is not true. (Ex. 1, Declaration of T. Nickles ¶ 23.)

On November 12, 2016, Ahmed Nayeb ("Nayeb"), an Afghan national who worked at BAF in Afghanistan, engaged in a suicide bombing at BAF. (*Id.* ¶ 22.) Pursuant to its contract with Fluor, APS had provided certain limited administrative services related to Nayeb's

---

[4] The allegations in the Complaint are consistent with APS's performance of the contract in Afghanistan. To wit: "Fluor and APS entered into contracts for, among other things, for [sic] APS to provide personnel services, under Task Order 005." (Compl. ¶ 50.) "Task Order 005 encompassed services and base life support for the eastern and northern sections of the Islamic Republic of Afghanistan." (Compl. ¶ 48.)

4

employment.[5] (*Id.*) In its Complaint, Plaintiff alleges, "Nayeb was employed by and hired through APS, which administered payroll, time, and attendance for Nayeb, but his work activities were generally managed and supervised by the Fluor Defendants."[6] (Compl. ¶ 52.) All of APS's interactions with Nayeb occurred in Afghanistan. (*Id.*)

**III. THE PREDOMINATE CAUSE OF ACTION ALLEGED IN THE COMPLAINT AGAINST APS IS A TORT-BASED CLAIM FOR "NEGLIGENCE/GROSS NEGLIGENCE" ALONG WITH A NON-SPECIFIED "BREACH OF CONTRACT" CLAIM ASSERTED "AGAINST FLUOR AND APS" RELATING TO ALLEGED "LOGCAP MATERIALS."**

Most of the allegations throughout the Complaint loosely refer to the Fluor Defendants and APS collectively as "Defendants," failing to differentiate between the entities and the differences between their roles, actions, responsibilities, and differing contracts. While such conclusory and arbitrary pleading results in inaccurate and misleading assertions, it does not inhibit the Court from deciding this motion to dismiss for lack of personal jurisdiction.

---

[5] In his Complaint, Plaintiff frequently refers to the U.S. Army's AR 15-6 Investigation and the resulting Report, which is heavily redacted to hide classified information. (*See* Compl. ¶¶ 107-110; *See* Fluor's Mot. To Dismiss, Ex. 7, [Dkt. 14-6], redacted Army 15-6 Report.) As to Nayeb's access and work at BAF, which led to his directed hiring by APS, the Army's 15-6 Report notes, "On 01 April 2011, Nayeb entered the Provincial Reconstruction Team – Parwan (Republic Of Korea) Vocational Training Center on Bagram Airfield as a construction trainee. [] Nayeb was a transitioning Taliban member who went through reintegration as part of the Afghanistan Peace and Reintegration program efforts funded by the Commander's Emergency Response Program pursuant to the FY2010 National Defense Authorization Act. [] Nayeb was sponsored by Task Force Red Bulls [U.S. Military] in a memorandum dated 25 March 2011, which accompanied his request for a Bagram Airfield access badge []." (*See* Fluor's Mot. To Dismiss, Ex. 7, [Dkt. 14-6] at page 10 of 66.)

[6] The referenced Army 15-6 Report notes, "Alliance Project Services, Inc. is a U.S. veteran owned business in Alexandria, Virginia, which specializes in hiring host nation personnel in a labor broker capacity. Although Alliance Project Services, Inc. was responsible for administration of Nayeb (payroll, time and attendance, etc.), Nayeb's work performance was supervised by Fluor while was employed at the Bagram Airfield Non-Tactical Vehicle Yard." (Fluor's Mot. To Dismiss, Ex. 7, [Dkt. 14-6] at page 11 of 66.)

5

A.    PLAINTIFF ALLEGES APS ENGAGED IN "NEGLIGENCE/GROSS NEGLIGENCE" IN ALLEGED ACTIONS AND INACTIONS THAT OCCURRED IN AFGHANISTAN.

Expressed in generalities and with broad strokes, Plaintiff alleges APS "committed acts of omission and commission, which collectively and severally constituted negligence and gross negligence." (Compl. ¶ 117.) As alleged by Plaintiff, all of the alleged wrongful acts by "Defendants" occurred in Afghanistan. (*See, e.g.*, Compl. ¶¶ 1-8, 11-13, 18, 43, 52, 62-66, 68-88, 117(a-d), 118.) Specifically relating to APS, Plaintiff alleges "APS's negligent employment, supervision, entrustment, retention, and control were the direct and proximate cause of Nayeb being able to assemble and detonate the suicide bomb at the Base on November 12, 2016." The referenced Base is BAF in Afghanistan.

B.    WITHOUT DISTINGUISHING APS FROM THE FLUOR ENTITIES, PLAINTIFF ALLEGES APS BREACHED "CONTRACTS WHICH ADOPTED AND INCORPORATED THE LOGCAP MATERIALS" BY ALLEGED ACTIONS AND INACTIONS THAT OCCURRED IN AFGHANISTAN.

In generally asserting a claim for "breach of contract," Plaintiff does not identify any specific contract provision or provide specific facts supporting a claim that APS breached a contract to which Plaintiff was a party or to which Plaintiff otherwise has standing to bring such claim. (*See* Compl. ¶¶ 50, 122-132.) When specifically referencing APS, Plaintiff alleges that APS's responsibilities vis-à-vis Nayeb were limited to certain administrative services; to wit: "Nayeb was employed by and hired through APS,[7] which administered payroll, time, and attendance for Nayeb, but his work activities were generally managed and supervised by the Fluor Defendants." (Compl. ¶ 52.) (*See also* Fluor's Mot. To Dismiss, Ex. 7, [Dkt. 14-6] at page 11 of 66.) However, Plaintiff does not allege facts that APS breached any of its obligations

---

[7] Plaintiff's Complaint incorporates documents that confirm the Military's role in sponsoring Nayeb for employment at BAF. (Fluor's Mot. To Dismiss, Ex. 7, [Dkt. 14-6] at page 11 of 66.)

6

in the APS/Fluor contract by employing Nayeb, hiring Nayeb, or administering payroll, time, and attendance records relating to Nayeb. In conflict with the narrowness of the specific alleged facts relating to APS, Plaintiff alleges generally that "Defendants" breached unspecified "LOGCAP Materials" by failing to "reasonably supervise Nayeb." (*See* Compl. ¶¶ 122 – 124, 128 – 132.) The factual allegations relating to APS connotes that such breach of contract claim does not actually apply to APS.

In any event, the specific factual—not conclusory—allegations related to APS, taken as true for purposes of this Motion, make clear that any alleged wrongful conduct by APS occurred in Afghanistan.

## LEGAL ARGUMENT

"Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278-79 (4th Cir. 2009) (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997)).

### I.    LEGAL STANDARD FOR REVIEWING A MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2).

"The party seeking to invoke personal jurisdiction over a nonresident defendant bears the burden of proving the existence of personal jurisdiction." *Callum v. CVS Health Corp.*, 137 F.Supp. 3d 817, 835 (D.SC. Sept. 28, 2015). When a defendant challenges the court's personal jurisdiction under Rule 12(b)(2), a plaintiff ultimately has "the burden of proving" that jurisdiction exists "by a preponderance of the evidence." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). Yet, if a court rules on the motion without conducting an evidentiary hearing and, instead, "addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the

7

complaint,[8] a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d. 262, 268 (4th Cir. 2016) (citations omitted). In such review, the Court is to "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

However, the Court "need not 'credit conclusory allegations or draw farfetched inferences.'" *Sonoco Products Co.*, 877 F.Supp. 2d at 405 (quoting *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)). "A plaintiff must also base his claim for personal jurisdiction 'on specific facts set forth in the record.'" *Sonoco Products Co.*, 877 F.Supp. 2d at 405 (quoting *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F.Supp. 306, 310 (D.S.C. 1992)).

Additionally, "whenever a defendant's sworn affidavit contests the allegations in the complaint, the plaintiff can no longer rest on those allegations. Instead, the plaintiff bears the burden to present an affidavit or other evidence showing jurisdiction exists over the nonresident defendant." *Callum*, 137 F.Supp. at 835 (internal citations and quotations omitted); *see Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984).

## II.  THE COURT'S EXERCISE OF PERSONAL JURISDICTION OVER APS MUST CONFORM WITH APS' DUE PROCESS RIGHTS.

"A federal district court may only exercise personal jurisdiction over a foreign [or out-of-state] corporation if such jurisdiction is authorized by the long-arm statute of the state in which it

---

[8] "In ruling on a motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to one for summary judgment." *Callum*, 137 F.Supp. at 835 (citing *Magic Toyota, Inc. v. Se. Toyota Distributors, Inc.*, 784 F.Supp. 306, 310 (D.S.C. 1992)).

8

sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment" of the U.S. Constitution. *Consulting Eng'rs Corp.*, 561 F.3d at 277. A district court may exercise personal jurisdiction "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). South Carolina's long-arm statute, S.C. Code Ann. § 36-2-803, extends to the constitutional limits of the due process clause of the U.S. Constitution. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005). *See Callum*, 137 F.Supp. at 835.

"The Due Process Clause is satisfied for personal jurisdiction purposes if a defendant has 'purposefully availed itself of the privilege of conducting business in the forum state' by establishing sufficient 'minimum contacts' 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Sonoco Products Co.*, 877 F.Supp.2d at 405 (quoting *Burger King Corp.*, 471 U.S. at 475-76; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State." *Fidrych*, 952 F.3d at 140-141 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

The framework for determining whether minimum contacts exist differs depending on whether the assertion is for general or specific personal jurisdiction. *See generally Fidrych,* 952 F.3d at 131-143; *ESAB Grp., Inc.*, 126 F.3d at 623-24; *Callum*, 137 F.Supp. 3d at 835.

9

A.     **UNDER THE CONSTITUTIONAL PROTECTIONS AFFORDED APS, THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER APS FOR THE CLAIMS ASSERTED IN THE COMPLAINT.**

1.     **PLAINTIFF CANNOT ESTABLISH THAT GENERAL JURISDICTION CAN BE ESTABLISHED OVER APS.**

South Carolina does not have general personal jurisdiction over APS. In order to exercise "general" personal jurisdiction over a non-resident defendant, the defendant must have contacts with South Carolina "that are so constant and pervasive as to render it essentially 'at home'" in South Carolina. *Fidrych*, 952 F.3d at 131-32 (citing *Daimler AG*, 571 U.S. at 122). In *Daimler*, the Supreme Court recognized that there might be a rare situation where a corporation is subject to general jurisdiction in a state other than the state of its incorporation or its principal place of business, but that it would have to be an "exceptional case." *Daimler AG*, 571 U.S. at 139 n.19. This is not one of those rare cases.

As provided above, APS is not a South Carolina corporation, does not have its principal place of business in South Carolina and, in fact, has no presence in South Carolina, and does not have constant and pervasive contacts with South Carolina. Because APS's contacts with South Carolina are not sufficient to render it "at home" in South Carolina, the requirements for the exercise of general jurisdiction are not satisfied, and South Carolina cannot exercise general personal jurisdiction over APS.

2.     **PLAINTIFF CANNOT ESTABLISH SPECIFIC JURISDICTION OVER APS FOR THE CLAIMS ASSERTED IN THE COMPLAINT.**

The Court may exercise specific jurisdiction over APS only if: i) APS "has continuous and systematic contacts" with South Carolina, and ii) Plaintiff's claims at issue in his matter "arise from" APS's continuous and systematic contacts with South Carolina. See Fidrych, 952 F.3d at 132 (citing Daimler AG, 571 U.S. at 126-27). Stated another way, specific jurisdiction may be exercised if "the defendant has purposefully directed his activities at residents of the

10

forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Fidrych, 952 F.3d at 138 (quoting Burger King Corp., 471 U.S. at 472.)

The Fourth Circuit adopted the following three-prong test to determine whether specific jurisdiction lies in the forum state: consideration is made of: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted).  Plaintiff has the burden on all three prongs. *See Consulting Eng'rs*, 561 F.3d at 278.

The Fourth Circuit has further articulated the analysis required under these three prongs. The first prong addresses the minimum contacts requirement of due process that the defendant purposefully avail itself of the privilege of conducting business in the forum state.   In the business context, to determine whether there is purposeful availment, courts in the Fourth Circuit may consider whether:

- The defendant maintains offices or agents in the forum state;

- The defendant owns property in the forum state;

- The defendant reached into the forum state to solicit or initiate business;

- The defendant deliberately engaged in significant or long-term business activities in the forum state;

- The parties contractually agreed that the law of the forum state would govern disputes;

- The defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

- The nature, quality, and extent of the parties' communications about the business being transacted; and

- The performance of contractual duties was to occur within the forum.

11

*Geometric*, 561 F.3d at 277.  If plaintiff does not satisfy this first prong of the test for specific jurisdiction, the inquiry ends.  Only if plaintiff meets its burden in showing such purposeful availment does the court consider the second prong.

The second prong of the test for specific jurisdiction — that the plaintiff's claims arise out of the activities directed at the forum — requires that the defendant's contacts with the forum state form the basis of the suit.  Here, in order for Plaintiff to meet its burden on this second prong, the suit must arise out of or relate to APS's contacts with South Carolina.  *See Fidrych*, 952 F.3d at 138 (citations omitted.)

If the plaintiff satisfies prongs one and two, prong three is considered.

Measured against these three considerations, South Carolina cannot exercise specific personal jurisdiction over APS.

First, APS does not purposefully avail itself in conducting activities in South Carolina.  In addition to the absence of a connection with South Carolina noted above,

› APS does not have a physical presence in South Carolina;

› APS does not have employees in South Carolina;

› APS does not direct advertising to South Carolina and does not offer internet-based sales,

› APS did not go to South Carolina to negotiate or sign the APS/Fluor contract or any of the 47 amendments to the contract,

› APS was awarded the contract with a request for proposal generated out of Afghanistan,

› The contract notably has a California choice of law and jurisdiction provision—and not a South Carolina choice of law and jurisdiction provision;

› APS personnel in either Afghanistan or Virginia communicated with Fluor personnel at the Fluor field office at BAF in Afghanistan as to performance and services under the contract,

12

› The contract specifies that APS' performance under the contract is to occur in Afghanistan—not in South Carolina,

› APS, in fact, performed the services under the contract in Afghanistan—and not in South Carolina;

› The services provided by APS under the contract were not directed at residents of South Carolina; instead, such services were intentionally directed to host country nationals living in Afghanistan and working at BAF; by definition, this excludes South Carolina residents; and

› To the best of APS' recollection, APS did not appear in the State of South Carolina in regard to the contract.

As the Supreme Court recognized in *Burger King Corp.*, the fact that a contract was entered into by a non-resident with a resident of the forum, alone, is not sufficient to confer jurisdiction. *Burger King Corp.,* 471 U.S. at 478 (a contract with a resident of the forum state does not automatically in and of itself establish sufficient minimum contacts with the forum state).

While APS entered into a contract with Fluor, that fact is insufficient to justify jurisdiction, particularly in light of all of the facts that APS's contract negotiation and performance were not directed at residents of South Carolina—to wit: APS's services under the contract were directed to and at host country nationals in Afghanistan. APS did not engage in activities directed at South Carolina to justify courts in the state exercising personal jurisdiction over it. Here, as in *Fidrych*, "one of the most frequent bases for the exercise of specific jurisdiction — an activity by the defendant in the forum state — is absent in this case. *See Fidrych*, 952 F.3d at 140 (citation omitted.)

Second, there are no factual allegations in the Complaint demonstrating that Plaintiff's claims arise out of APS's activities directed at South Carolina. The allegations in the Complaint are based only on alleged actions and omissions that occurred in Afghanistan. To wit, Plaintiff alleges that the "negligence/gross negligence" occurred in Afghanistan and that APS breached

13

some contract through its actions vis-à-vis Nayeb, all of which occurred in Afghanistan.  None of the alleged wrongful conduct by APS that Plaintiff asserts in its Complaint occurred in South Carolina.  Instead, every alleged wrongful act or omission that Plaintiff contends APS did that is supportive of the asserted causes of action occurred in Afghanistan.  No act identified in the Complaint as giving rise to the causes of action occurred in South Carolina.

### 3.     THE COURT'S EXERCISE OF PERSONAL JURISDICTION OVER APS WOULD BE CONSTITUTIONALLY IMPERMISSIBLE AND UNREASONABLE.

Even if APS had availed itself of the privilege of doing business in South Carolina and APS's activities were intentionally directed at South Carolina, the exercise of personal jurisdiction over APS is not constitutionally reasonable.  *See Sonoco Products Co. v. ACE INA Ins.*, 877 S.Supp. 2d 398, 409 (D. S.C., July 11, 2012).  Plaintiff has not met its burden of showing otherwise.

The third prong — that the exercise of personal jurisdiction be constitutionally reasonable — permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there. Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies. *See Burger King* Corp., 471 U.S. at 477; *Consulting Eng'rs Corp.*, 561 F.3d at 279.

Evaluated against these considerations, it would be unreasonable for the Court to exercise personal jurisdiction over APS.  First, APS would be unfairly burdened to litigate this case in South Carolina.  It has no offices, employees or any other presence in South Carolina.  (*See Sonoco Products Co.*, 877 F.Supp. 2d at 409 (finding burden of litigating in forum state where

14

foreign company had "no offices, personnel, or other presence in South Carolina.")  Second, South Carolina does not have an inherently high interest in this case against APS brought by a non-South Carolina resident on tort claims allegedly occurring in Afghanistan, and a breach of an APS contract that is governed by the laws of the State of California.  Third, while Plaintiff would have an interest in obtaining relief that is legally owed him, Plaintiff could seek to pursue such relief, if any, as to APS in an appropriate jurisdiction.  The fourth and fifth considerations are related; while states theoretically share interests in obtaining efficient resolution of disputes and furthering public policies, such shared interests do not supply a rationale for exercising personal jurisdiction where the basis is otherwise lacking or otherwise excuse the requirements to establish either general or specific personal jurisdiction.

For the above reasons, South Carolina could not exercise personal jurisdiction over APS for the claims asserted in the Complaints without violating constitutional protections.

## CONCLUSION

Plaintiff cannot satisfy its burden of proving that personal jurisdiction can be exercised by this Court over APS under either general jurisdiction or the Fourth Circuit's three-prong test for determining whether specific jurisdiction exists.  Without a basis for either general or specific jurisdiction, the Complaint against APS must be dismissed.

Respectfully submitted,

FOX ROTHSCHILD LLP

/s/ Stephanie G. Flynn
Stephanie G. Flynn, Fed. Ct. ID 7461
Nicolas J. Cherry, Fed. Ct. ID 12856
2 W. Washington St., Ste. 1100
PO Box 87, Greenville, SC 29602
Phone:  864-751-7607
Fax:  864-751-7800
sgflynn@FoxRothschild.com
ncherry@FoxRothschild.com

15

- AND -

Kathy S. Kimmel (*pro hac vice to be filed*)
FOX ROTHSCHILD LLP
222 South Ninth Street, Suite 2000
Minneapolis, Minnesota 55402
Phone:  612-607-7306
Fax:  612-607-7100
kkimmel@foxrothschild.com

*Attorneys for Defendant*
*Alliance Project Services, Inc.*

16