# Exhibit 1

# DECLARATION OF TOD E. NICKLES

## DECLARATION OF TOD E. NICKLES

STATE OF VIRGINIA       §
                               §
COUNTY OF LOUDOUN     §

1.      My name is Tod E. Nickles. I am over eighteen (18) years of age and am competent to make this declaration. I have personal knowledge of the facts contained in this declaration, and they are true and correct. If called as a witness, I could competently testify as to such facts.

2.      I am the President and Chief Executive Officer of Alliance Project Services, Inc. ("APS"). I have personal knowledge of APS's business and dealings described in this declaration.

3.      APS is a corporation organized under the laws of the State of Delaware, and its principal place of business is located in Leesburg, Virginia. Stated conversely, APS is not incorporated in South Carolina nor does it have its principal place of business in South Carolina.

4.      APS has no office located in South Carolina, and does not rent or own any property in South Carolina.

5.      APS has no employees located in South Carolina.

6.      APS does not have an account at a bank located in South Carolina.

7.      APS is not registered to do business in South Carolina and does not have an appointed agent for service of process in South Carolina.

8.      APS does not direct advertising to the State of South Carolina.

9.    APS operates a website used only for providing information, advertising, and allowing a potential customer to contact APS. The APS website does not allow a user to consummate a transaction with APS for its products or services.

10.    APS provided labor supply management services pursuant to a contract (identified as Contract No. L4CP-005-90-K10327) with respect to certain host country national (HCN) employees for Fluor's operations in Afghanistan. The contract (and its 47 amendments) between APS and Fluor Intercontinental, Inc. is voluminous, contains some proprietary and confidential pricing information, and includes parts that were designated "confidential" by Fluor.

11.    APS was awarded the contract with Fluor after it responded to a request for proposal (RFP) generated out of Bagram, Afghanistan.

12.    APS did not negotiate or sign the contract or any of the amendments in South Carolina.

13.    The voluminous contract is divided into certain described "parts." Attached as Exhibit A is a true and correct copy of "Contract Part III – General Terms – Standard" for "Contract No: L4CP-005-90-K10327," which is the version I believe was in effect in November 2016.

14.    Section 38.5 of Contract Part III – General Terms – Standard" states, "This Contract shall be subject to the law and jurisdiction of the State of California, unless expressly designated otherwise within this Contract." (*See* Ex. A at p. 29.) This provision had not changed; the same provision exists in the original Contract Part III – General Terms – Standard.

15.    There is no provision in the contract that refers to laws of the State of South Carolina nor does any provision in the contract refer to disputes relating to the contract being subject to the jurisdiction of the State of South Carolina.

2

16.    Section 50 of Contract Part III – General Terms – Standard" states, "TRIAL. Contractor [APS] hereby knowingly, voluntarily and intentionally waives (to the extent permitted by applicable law) any right it may have to a trial by jury of any dispute arising under or relating in any way to this Contract and agrees that any such dispute may, at the Company's option, be tried before a judge sitting without a jury." (*See* Ex. A at p. 33.) This provision had not changed; the same provision exists in the original Contract Part III – General Terms – Standard.

17.    Section 49 of Contract Part III – General Terms – Standard" states, "SURVIVAL The provisions of this Contract which by their nature are intended to survive the termination, cancellation, completion or expiration of this Contract shall continue as valid and enforceable obligations of the parties notwithstanding any such termination, cancellation, completion or expiration." (*See* Ex. A at p. 33.) This provision had not changed; the same provision exists in the original Contract Part III – General Terms – Standard.

18.    The contract specifies that communications and contract notices with Fluor are to be directed to Fluor's field address at the Bagram Air Field ("BAF") in Afghanistan. And, APS's direct points of contact with Fluor for APS's work under the contract were Fluor personnel who were located in Afghanistan.

19.    The contract specifies that APS's performance of the contract is to occur in Afghanistan. And, APS's activities and performance under the contract occurred in Afghanistan. APS did not perform any services under the contract in South Carolina.

20.    The contract was performed and administered by APS employees who were located either in the state of Virginia or in Bagram, Afghanistan.

3

21. To the best of my recollection, APS did not appear in the state of South Carolina for any matter relating to the referenced contract.

22. On November 12, 2016, Ahmed Nayeb ("Nayeb"), an Afghan national who worked in at BAF in Bagram, Afghanistan, engaged in a suicide bombing at BAF. Pursuant to the contract with Fluor, APS provided certain limited administrative services related to Nayeb's employment. All of APS's interactions with Nayeb occurred in Afghanistan.

23. In the Complaint, Plaintiff's counsel makes the general assertion, without supporting facts, that APS "regularly conducts business in South Carolina and contracts to supply services in South Carolina ...." (*See* Compl. ¶ 36.) As set forth above, this assertion is not true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed: _____'3 MARCH_____, 2021 _____

Tod E. Nickles

4

# Exhibit A

## to

# DECLARATION OF TOD E. NICKLES



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND      Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

## INDEX OF ARTICLES

**PAGE**

1.0      GUARANTEES ................................................................................................ 3

2.0      INSPECTION, TESTING AND QUALITY CONTROL ................................... 3

3.0      CONDITIONS AND RISKS OF WORK ........................................................ 4

4.0      ISSUED FOR CONSTRUCTION DRAWINGS AND SPECIFICATIONS ........ 5

5.0      INTENT OF SPECIFICATIONS AND DRAWINGS ...................................... 5

6.0      HEALTH, SAFETY, ENVIRONMENTAL PROTECTION AND CLEAN-UP ........ 6

7.0      SUBCONTRACTS AND PURCHASE ORDERS ......................................... 6

8.0      TERMINATION FOR DEFAULT .................................................................. 7

9.0      STOP WORK ORDERS ............................................................................. 9

10.0     SCHEDULING, REPORTING AND COORDINATION ................................. 9

11.0     OVERTIME ............................................................................................... 10

12.0     DELAYS ................................................................................................... 10

13.0     POSSESSION PRIOR TO COMPLETION .............................................. 11

14.0     NOTICE OF COMPLETION AND FINAL ACCEPTANCE ......................... 11

15.0     CHANGES ................................................................................................ 12

16.0     SUSPENSION OF WORK ........................................................................ 13

17.0     TERMINATION AT COMPANY'S OPTION ............................................. 14

18.0     CLAIMS ................................................................................................... 14

19.0     PROTECTION OF MATERIALS, EQUIPMENT AND WORK ................... 16

20.0     CONTRACTOR'S CONSTRUCTION EQUIPMENT ................................ 16

21.0     CONTRACTOR'S SHIPMENTS ............................................................... 16

22.0     CONTROL OF COMPANY FURNISHED MATERIALS .......................... 17

23.0     CARE, CUSTODY, CONTROL AND TITLE TO MATERIALS AND EQUIPMENT ................... 17

24.0     CONTRACTOR'S PERSONNEL .............................................................. 18

25.0     LABOR HARMONY .................................................................................. 19



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

**26.0  EMPLOYMENT CERTIFICATIONS AND PRACTICES**.....................................................**20**

**27.0  WORK RULES**..................................................................................................................**20**

**28.0  INDEMNITY**.....................................................................................................................**20**

**29.0  INSURANCE**....................................................................................................................**22**

**30.0  SURETY INSTRUMENTS**.................................................................................................**25**

**31.0  CONTRACTUAL RELATIONSHIP**....................................................................................**25**

**32.0  PERMITS AND LICENSES**..............................................................................................**26**

**33.0  INDEPENDENT CONTRACTOR**.......................................................................................**26**

**34.0  CONFIDENTIAL INFORMATION**.....................................................................................**26**

**35.0  PUBLICITY**.....................................................................................................................**26**

**36.0  OWNERSHIP AND USE OF DRAWINGS**.........................................................................**26**

**37.0  ASSIGNMENTS**..............................................................................................................**26**

**38.0  LAWS AND REGULATIONS**............................................................................................**27**

**39.0  EMERGENCY MEDICAL SERVICES** ..............................................................................**28**

**40.0  DOCUMENTATION AND RIGHT OF AUDIT** ...................................................................**28**

**41.0  LIENS**............................................................................................................................**29**

**42.0  RIGHT TO OFFSET** .......................................................................................................**29**

**43.0  FINAL PAYMENT CERTIFICATION AND RELEASE** .......................................................**29**

**44.0  ARBITRATION OPTION**..................................................................................................**30**

**45.0  VALIDITY OF PROVISIONS** ...........................................................................................**30**

**46.0  WAIVER** .........................................................................................................................**30**

**47.0  BUSINESS CONDUCT AND ETHICS EXPECTATIONS**....................................................**30**

**48.0  INTERPRETATION**..........................................................................................................**31**

**49.0  SURVIVAL** .....................................................................................................................**31**

**50.0  TRIAL**............................................................................................................................**31**

**51.0  EXPORT AUTHORIZATIONS** .........................................................................................**31**



Client Name: US ARMY SUSTAINMENT COMMAND                Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

## WORK QUALITY STANDARDS

**1.0     GUARANTEES**

1.1     Contractor guarantees Company and Owner that the Work shall comply strictly with the provisions of this Contract and all specifications, drawings and standards referred to in this Contract or thereafter furnished by Company, and that the Work shall be first-class in every particular and free from defects in materials and workmanship and in any design or engineering furnished by Contractor. Contractor further guarantees Company and Owner that all materials, equipment and supplies furnished by Contractor for the Work shall be new, merchantable, of the most suitable grade and fit for their intended purposes. Without limitation of any other rights or remedies of Company or Owner, if any defect in the Work in violation of the foregoing guarantees arises within the period set forth below, Contractor shall, upon receipt of written notice of such defect, promptly furnish, at no cost to Company or Owner, design and engineering, labor, equipment and materials necessary to correct such defect and cause the Work to comply fully with the foregoing guarantees.

1.2     Contractor's guarantees set forth in Section 1.1 shall extend for twenty-four (24) months after the date of final written acceptance of the Work by Company, or eighteen (18) months after the start of regular operation or use of the Work by Company, whichever occurs first. Any period wherein the Work is not available for use due to defects in materials, workmanship or engineering furnished by Contractor shall extend the guarantee period by an equal period of time.

1.3     Design and engineering, labor, equipment and materials furnished by Contractor pursuant to Section 1.1 to correct defects shall be guaranteed by Contractor in accordance with the guarantees set forth in Section 1.1 for a period of eighteen (18) months from the date of completion of the correction, or for the remainder of the guarantee period set forth in Section 1.2 above, whichever is longer.

1.4     In the event Contractor has been notified of any defects in the Work in violation of Contractor's foregoing guarantees and fails to promptly and adequately correct such defects, Company and Owner shall have the right to correct or to have such defects corrected for the account of Contractor, and Contractor shall promptly pay Company or Owner the costs incurred in correcting such defects.

1.5     Contractor shall include, at a minimum, the foregoing guarantee requirements in any subcontract that it places.

**2.0     INSPECTION, TESTING AND QUALITY CONTROL**

2.1     Contractor shall inspect all materials, supplies and equipment which are to be incorporated in the Work. In addition, Contractor shall conduct a continuous program of construction quality control for all Work. Contractor's quality control program and inspection procedures for the foregoing shall be submitted in writing to Company for review and approval, in sufficient detail to delineate



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

those items to be inspected and the manner in which they are to be inspected, and shall adequately describe all construction quality control activities contemplated, including provision for adequate documentation of Contractor's performance of such quality control and inspection.

2.2     Contractor shall, during the course of performance of the Work hereunder, without additional compensation, make or cause to be made all tests required by this Contract.  Company may require additional inspections and tests. Contractor shall furnish Company with satisfactory documentation of the results of all inspections and tests. Company shall be given not less than five (5) working days notice of any tests to be made by Contractor or Contractor's subcontractors in order that Company and/or Owner may witness any such tests.

2.3     Company and Owner and their representatives, and others as may be required by applicable laws, ordinances and regulations, shall have the right at all reasonable times to inspect the Work and all material, supplies and equipment for the Work at the jobsite and at Contractor's and its subcontractors' shops for conformance with the Contract. Contractor shall provide, or cause to be provided access and sufficient, safe and proper facilities for such inspections. Neither the failure to make such inspection nor to discover defective workmanship, materials or equipment, nor approval of or payment to Contractor for such Work, materials or equipment shall prejudice the rights of Company or Owner.

2.4     If Contractor covers any portion of the Work prior to any inspection or test provided for in the specifications, inspection schedule, or as previously requested by Company, the cost of uncovering and covering the Work to allow for such inspection or test shall be borne by the Contractor. Reexamination of any Work may be ordered by Company. In the event of such reexamination, if any material, equipment or any part of the Work is determined by Company to be defective, Contractor shall not be reimbursed for uncovering, repair or corrective and restoration costs. If such Work is found to be in accordance with the Contract requirements upon such reexamination, Company shall pay Contractor the cost of uncovering and restoration.

2.5     Rejection by Company of any or all parts of defective Work for failure to conform to this Contract shall be final and binding. Such rejected Work shall be promptly corrected or replaced by Contractor at Contractor's expense. If Contractor fails to commence and diligently continue correction or replacement of such rejected Work immediately after receipt of written notice from Company to correct or replace the rejected Work, Company may at its option remove and replace the rejected Work, and Contractor shall promptly reimburse Company for the costs of such removal and replacement of defective Work.

**3.0     CONDITIONS AND RISKS OF WORK**

Contractor represents that it has carefully examined the documentation, drawings and specifications for the Work and has fully acquainted itself with all other conditions relevant to the Work, and its surroundings, and Contractor assumes the risk of such



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND                Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

conditions and will, regardless of such conditions, the expense, difficulty of performing the Work, or negligence, if any, of Company or Owner, fully complete the Work for the stated Contract Price without further recourse to Company or Owner. Information on the site of the Work and local conditions at such site furnished by Company or Owner in specifications, drawings or otherwise is not guaranteed by Company or Owner and is furnished only for the convenience of Contractor.

**4.0     ISSUED FOR CONSTRUCTION DRAWINGS AND SPECIFICATIONS**

4.1     The Work shall be performed using only drawings and specifications marked "Issued for Construction" or equivalent by Company. Such indication shall not relieve Contractor of any obligations under this Contract, nor constitute Company assumption of responsibility for the accuracy or adequacy of any of Contractor's information or Work incorporated in such documents.

4.2     Contractor shall perform all Work outside of the areas marked "HOLD" on "Issued for Construction" specifications and drawings to maintain the schedule of Work, but shall not perform any Work in the areas or sections marked "HOLD" on "Issued for Construction" specifications and drawings until revised "Issued for Construction" specifications and drawings are received with the "HOLD" markings deleted.

4.3     If Contractor's schedule will be delayed by "HOLD" markings on specifications and drawings, Contractor shall report such delay to Company in writing not less than five (5) working days prior to the start of the delay.

4.4     Contractor shall maintain at the work site a complete and current set of "Issued for Construction" drawings and specifications.

**5.0     INTENT OF SPECIFICATIONS AND DRAWINGS**

5.1     The specifications and drawings may not be complete in every detail. Contractor shall comply with their manifest intent and general purpose, taken as a whole, and shall not make use of any errors or omissions therein to the detriment of the Work. Should any conflict, error, omission or discrepancy appear in the drawings, specifications, instructions, in work done by others, or in site conditions, Contractor shall notify Company in writing at once and Company will issue written instructions to be followed. If Contractor proceeds with any of the Work in question prior to receiving such instructions, then required corrections shall be at Contractor's expense.

5.2     Contractor shall not deviate from the specifications and drawings without prior written approval from Company.

5.3     Materials shall not be substituted for those specified, nor shall "or equal" items be furnished pursuant to the specifications without Company prior written approval.



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND                Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

## 6.0    HEALTH, SAFETY, ENVIRONMENTAL PROTECTION AND CLEAN-UP

6.1    Contractor shall take necessary safety and other precautions to protect property, the environment and persons from damage, injury or illness arising out of the performance of the Work. Contractor shall comply strictly with local, municipal, provincial, state and national laws, plans, orders and regulations pertaining to health, safety and environmental protection which are applicable to Contractor or to the Work, including without limitation the Occupational Safety and Health Act, and Contractor warrants the materials, equipment and facilities, whether temporary or permanent, furnished by Contractor in connection with the performance of the Work shall comply therewith. At all times while any of Contractor's employees, agents or subcontractors are on Owner's or Company's premises, Contractor shall be solely responsible for ensuring that they comply with the safety, health, and environmental protection rules of Owner, Company and Contractor applicable to the premises, and that all its employees, agents and subcontractors have a safe place of work on the premises of Owner or Company. Contractor shall inspect the places where its employees, agents or subcontractors are or may be present on Owner's or Company's premises and shall promptly take action to correct conditions which are or may become an unsafe place of employment for them.

6.2    Accidents, injuries and illnesses, damage to property, fires, spills, releases, and other incidents, circumstances and near misses affecting property, the environment, heath, or safety shall be promptly reported to Company at the time of the incident or observation. Written reports, satisfactory in form and content to Company shall be submitted by Contractor within forty-eight (48) hours after each incident or observation.

6.3    Contractor shall maintain, in form and content approved by Company, jobsite accident, injury and illness statistics which shall be available for inspection by, and submitted to, Company upon its written request.

6.4    Contractor shall keep Company's and Owner's premises and the vicinity thereof clean and free of any debris and rubbish caused by the Work and on completion of the Work, shall leave such premises clean and ready for use. Areas used for the purposes of material/equipment lay-down, temporary facilities, storage and the like shall be restored to the condition existing prior to Contractor's occupation.

## 7.0    SUBCONTRACTS AND PURCHASE ORDERS

7.1    Contractor shall not subcontract performance of all or any portion of the Work under this Contract without first notifying Company of the intended subcontracting and obtaining Company acceptance in writing of the subcontracting and the subcontractor. If requested by Company, Contractor shall furnish Company a copy of the proposed subcontract (with price deleted if the subcontracted work is part of fixed price Work of Contractor under this Contract) for Company review of the terms and conditions thereof and shall not execute such subcontract until Company has accepted such terms. Failure of



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND                    Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

Contractor to comply with this Section may be deemed by Company to be a material breach of this Contract.

7.2     Contractor guarantees that its subcontractors will comply fully with the terms of this Contract applicable to the portion of the Work performed by them. If any portion of the Work which has been subcontracted by Contractor is not prosecuted in accordance with this Contract, on request of Company, the subcontractor shall be replaced at no additional cost to Company and shall not be employed again on the Work.

7.3     Contractor shall include a provision in every subcontract that it places authorizing assignment of such subcontract to Company or Owner without requiring further consent from such subcontractor or supplier.

7.4     Company shall have the right from time to time to contact Contractor's subcontractors to discuss their progress.

7.5     As used in this Contract, the term "subcontract" shall also include purchase orders and rental agreements for materials or equipment, and the term "subcontractor" shall also include vendors or suppliers of such material or equipment.

7.6     Contractor shall not be relieved of its responsibility for the Work by virtue of any subcontracts it may place regardless of Company's acceptance of such subcontract.

7.7     The United Nations Convention on Contracts for the International Sale of Goods does not apply to this Contract and shall be disclaimed and excluded from any subcontracts placed by Contractor.

## 8.0     TERMINATION FOR DEFAULT

8.1     In the event that Contractor shall default in the performance of any obligation to be performed by Contractor under this Contract and shall fail to correct such default within five (5) working days following written notice thereof from Company, Company may, without prejudice to any other rights or remedies Company may have, hold in abeyance further payments to Contractor and/or terminate Contractor's right to continue performance of this Contract by written notice to Contractor specifying the date of termination. In the event of such termination, Company may take possession of the Work at the jobsite and any or all materials and plant equipment (whether delivered to the jobsite or on order therefore by Contractor), tools and construction equipment at jobsite and finish the Work by whatever method Company may deem expedient.

8.2     In the event of termination by Company under Section 8.1, Contractor shall, upon request by Company, promptly advise it of all outstanding subcontracts, rental agreements and purchase orders which Contractor has with others pertaining to performance of the Work and furnish Company with complete copies thereof. Upon request by Company, Contractor shall assign to Company or Owner, in form and content satisfactory to Company, Contractor's



Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

title to materials and plant equipment for the Work and those subcontracts designated by Company.

8.3     In the event of termination by Company under Section 8.1, Contractor shall not be entitled to receive any further payment until the Work is completed. Upon completion and final acceptance of the Work, Company will determine the total cost incurred in completing the Work including, without limitation, additional overhead, legal and other costs incurred by Company to effect such termination and to complete the Work, plus a markup for profit in the amount of ten percent (10%) on the total cost of the Work performed by Company. If the total costs noted above exceed the balance of the Contract Price unpaid at the time of the termination, Contractor shall, promptly after receipt of an invoice, pay to Company the amount of such excess. Company shall have the right and is authorized to set-off against and deduct from any excess payable to Contractor any other damages suffered by Company or Owner due to said default or event giving rise to the termination or due to other defaults of Contractor in complying with the terms of this Contract. Contractor shall continue to be fully liable for all such other damages to Company and Owner. A waiver by Company of one default by Contractor shall not be considered to be a waiver of any subsequent default by Contractor, nor be deemed to amend or modify the terms of this Contract. Contractor expressly waives any formal notice by Company of Contractor's failure to perform, or passive breach of, Contractor's express obligations under this Contract.

8.4     Contractor agrees that upon commencement of a case, receivership, civil action or other proceeding by or against Contractor under state, federal or other applicable insolvency law, or upon any general assignment by Contractor for the benefit of its creditors, Company may, in its sole discretion, treat Contractor as in default under Section 8.1 and may exercise any of the remedies of this Article. In the event Company's remedies under this Section 8.4 are limited by the commencement by or against the Contractor of a case under any chapter of the United States Bankruptcy Code, Contractor stipulates, acknowledges and agrees that time is of the essence in determination of whether this Contract should be "assumed" or "rejected," within the meaning of 11 U.S.C. § 365; and Contractor therefore further stipulates and agrees that subject only to calendaring constraints of the Bankruptcy Court having jurisdiction, it will take all necessary action to cause the assumption or rejection of this Contract on or before the thirtieth day filing the Petition commencing any such case. In such event, if Contractor seeks to "assume" this Contract, Contractor expressly stipulates, acknowledges and agrees that "adequate assurance of future performance" within the meaning of 11 U.S.C. § 365 (b)(1)(C) means a determination that there is no foreseeable likelihood that there will be any further interruption of Contractor's performance under this Contract following its assumption.

8.5     Contractor shall be considered in default from complying with the obligations of this Contract whenever, by reason of strikes, picketing or disputes of any nature between Contractor and any individual, group or organization, Contractor persistently, repeatedly, or for any period of five (5) consecutive



Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

working days, should be unable to supply enough properly skilled workers or proper materials or equipment to execute the Work.

8.6    If any termination for default is determined to have been made in error, the provisions of Article 17.0, Termination at Company's Option, shall apply.

8.7    In the event Contractor abandons the Work or otherwise repudiates this Contract, the notice requirements of Section 8.1 shall not apply.

## 9.0    STOP WORK ORDERS

Upon failure of Contractor or its subcontractors to comply with any of the requirements of this Contract, Company shall have the authority to stop any operations of Contractor or its subcontractors affected by such failure until such failure is remedied or to terminate this Contract in accordance with Article 8.0. No part of the time lost due to any such stop work orders shall be made the subject of a claim for extension of time or for increased costs or damages by Contractor.

## <ins>TIMING OF WORK</ins>

## 10.0    SCHEDULING, REPORTING AND COORDINATION

10.1    Contractor shall schedule and coordinate the details of the Work being performed to meet the schedule requirements set forth in Part I of this Contract. Within thirty (30) calendar days after award of this Contract and before submittal of the first progress payment invoice, Contractor shall submit to Company for approval, a detailed schedule showing the sequence in which Contractor proposes to perform the Work, the start and completion dates of all separable portions of the Work, manpower forecasts, materials procurement and delivery plans and any other information specified by Company. Contractor agrees to adhere to the schedule approved by Company and attend and participate in scheduled progress and coordination meetings called by Company.

10.2    During the performance of Work, Contractor shall submit to Company periodic progress reports on the actual progress and updated schedules as may be required by this Contract or requested by Company. In the event Contractor's performance of the Work is not in compliance with the schedule established for such performance, Company may, in writing, require the Contractor to submit its plan for schedule recovery, or specify in writing the steps to be taken to achieve compliance with such schedule, and/or exercise any other remedies under this Contract. Contractor shall thereupon take such steps as may be directed by Company or otherwise necessary to improve its progress without additional cost to Company.

10.3    Contractor recognizes that Company, Owner, other contractors and subcontractors may be working concurrently at the jobsite. Contractor agrees to cooperate with Company, Owner and other contractors so that the project as a whole will progress with a minimum of delays. Company reserves the right to

**FLUOR**®

Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

direct Contractor to schedule the order of performance of its Work in such manner as not to interfere with the performance of others.

10.4    If any part of Contractor's Work is dependent upon the quality and/or completeness of work performed under another contract, Contractor shall inspect such other work and promptly report to Company any defects therein which render such work unsuitable for the proper execution of the Work under this Contract. Failure to make such inspections or to report any such defects to Company shall constitute Contractor's acceptance of such other work as suitable to receive Contractor's Work provided however, that Contractor shall not be responsible for defects which could not have reasonably been detected.

## 11.0    OVERTIME

Unless expressly stated elsewhere in this Contract, Work at the jobsite shall be compatible with Company's starting and quitting times or other times approved by Company. Scheduled overtime work by Contractor must be approved in advance and in writing by Company. Contractor shall notify Company in advance of any incidental spot overtime which Contractor elects to work due to such operations as concrete placement, non-disruptable work activities and emergencies to protect life and/or property. Overtime work, whether scheduled or incidental, shall be to Contractor's account unless the compensation therefore is specifically authorized in writing by Company. In the event Company approves compensation of Contractor's overtime in advance, such compensation as separately authorized shall be limited to the actual cost to Contractor of the premium portion only of all applicable wages, craft fringe benefits, and payroll burdens imposed by any governmental authority and measured by the compensation payable to employees. To establish the amount of payment, Contractor shall submit supporting documents satisfactory in form and content to Company for its verification and approval.

## 12.0    DELAYS

12.1    In the event Contractor or Company is delayed in performing any of their respective obligations in this Contract and such delay is caused by acts of God, war, riots, civil insurrection, acts of the public enemy, accidents, acts of civil or military authority, fires, floods, or earthquakes, beyond the reasonable control of the party delayed, such delay will be excused and the period of such delay will be added to the time for performance of the obligation delayed, unless the date, schedule or time period for performance of the obligation is expressly stated in this Contract to be guaranteed. In the event any delay due to the foregoing causes or events occurs or is anticipated, the party delayed or anticipating delay shall promptly notify the other party in writing of such delay or expected delay and the cause and estimated duration of such delay. In the event of a delay due to the foregoing causes or events, the party delayed shall, at no cost to the other party, exercise due diligence to shorten and avoid the delay and shall keep the other party advised as to the continuance of the delay and steps taken to shorten or terminate the delay.

12.2    Contractor shall, within five (5) working days of the commencement of any delay, give to Company written notice thereof and of the anticipated effects



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

thereof. Within two (2) working days of the termination of any delay, Contractor shall file a written notice with Company specifying the actual duration of the delay. If Company determines that a delay was beyond the control and without the fault or negligence of Contractor or its subcontractors and not foreseeable by Contractor at the effective date of this Contract, Company shall determine the duration of the delay and shall extend the time of performance of this Contract thereby.

12.3    Contractor shall not be entitled to, and hereby expressly waives recovery of, any damages suffered by reason of delays of any nature, including the negligence of Company and Owner, and extension of time shall constitute the sole liability of Company and Owner and Contractor's sole remedy for delays.

## 13.0    POSSESSION PRIOR TO COMPLETION

Company and/or Owner shall have the right to move into Contractor's working and storage areas and the right to take possession of or use any completed or partially completed part of Contractor's Work as Company or Owner deem necessary for their operations. In the event Company or Owner desire to exercise the foregoing right, Company will so notify Contractor in writing. Such possession or use shall not constitute acceptance of Contractor's Work.

## 14.0    NOTICE OF COMPLETION AND FINAL ACCEPTANCE

14.1    When Contractor deems the Work fully completed, including satisfactory completion of such inspections, tests and documentation as are specified in this Contract, Contractor shall, within ten (10) working days thereafter, give a written Notice of Completion of the Work to Company, specifying the Work completed and the date it was completed. Within thirty (30) calendar days after receipt of said Notice of Completion, Company may inspect the Work and shall either reject the Notice of Completion and specify defective or uncompleted portions of the Work, or shall give the Contractor a written Notice of Acceptance of the Work either for the purpose of final payment only, or for the purposes of final payment and final acceptance.

14.2    In the event Company rejects the Notice of Completion and specifies defective or uncompleted portions of the Work, Contractor shall, within five (5) working days, provide for Company review and approval, a schedule detailing when all defects will be corrected and/or the Work will be completed and shall proceed to remedy such defective and uncompleted portions of the Work. Thereafter, Contractor shall again give Company a written Notice of Completion of the Work, specifying a new date for the completion of the Work based upon the date such defective or uncompleted portions of the Work were corrected. The foregoing procedure shall apply again and successively thereafter until Company has given Contractor written Notice of Acceptance for purposes of final payment and final acceptance.

14.3    Any failure by Company to inspect or to reject the Work or to reject Contractor's Notice of Completion as set forth above, shall not be deemed to



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

be acceptance of the Work for any purpose by Company or Owner nor imply acceptance of, or agreement with, said Notice of Completion.

## WORK CHANGES

**15.0    CHANGES**

15.1    The Scope of Work shall be subject to change by additions, deletions or revisions thereto by Company. Contractor will be notified of such changes by receipt of additional and/or revised drawings, specifications, exhibits or other written notification.

15.2    If, upon receipt of any notification, Contractor considers that a change is involved that could affect its costs of performing the Work or upon the schedule for performance of the Work, Contractor is obligated to inform Company within five (5) working days of Contractor receiving the notification. Unless Contractor notifies Company in accordance with this Section, Contractor is obliged to perform the Work in accordance with the change and will have no entitlement to any additional compensation or to any change to the schedule.

15.3    Contractor shall submit to Company within ten (10) working days after submission of the notification from Contractor required under Section 15.2 above a detailed takeoff with supporting calculations and pricing for the change, together with any requested adjustments in the schedule. The pricing shall be itemized as required by Company and shall be in sufficient detail to permit an analysis of all labor, material and equipment and shall cover all work involved in the change, whether such work was deleted, added or modified. Amounts related to subcontracts shall be supported in similar detail. Any adjustments to the schedule must be accompanied by a revised version of the detailed schedule, agreed in accordance with Section 10.1 demonstrating that any proposed changes to the schedule have been caused by the change and have affected a critical path on such previously agreed detailed schedule.

15.4    If Contractor does not provide the detailed take-off to Company within the time allowed by Section 15.3, Contractor will have waived any right to additional compensation or to a change to the schedule in respect of the change and will proceed with the work in accordance with the change notification issued pursuant to Section 15.1 above.

15.5    Contractor shall not perform changes in the Work in accordance with Section 15.1 until Company has approved in writing the pricing for the change and any adjustment in the schedule for performance of the Work, except as set forth in Sections 15.4 and 15.6. Upon receiving such written approval from Company, Contractor shall diligently perform the change in strict accordance with this Contract.

15.6    Notwithstanding Section 15.5 Company may expressly authorize Contractor in writing to perform the change prior to such approval by Company. Contractor shall not suspend performance of this Contract during the review and

**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

negotiation of any change, except as may be directed by Company pursuant to Article 16.0, Suspension of Work.

In the event Company and Contractor are unable to reach timely agreement regarding any change, Contractor shall then comply with Article 18.0, Claims.

15.7    Contractor shall not comply with oral changes in the Work. If Contractor believes that any oral notice or instruction received from Company will involve a change in the cost, time to perform or integrity of the Work, it shall require that the notice or instruction be given in writing and shall comply with the provisions of Sections 15.2, 15.3, 15.5 and 15.6. Any costs incurred by Contractor to perform oral changes shall be for Contractor's account, and Contractor waives any and all rights to claim from Company or Owner for such costs or additional time to perform the Work as a result of compliance by Contractor with such oral changes.

## 16.0    SUSPENSION OF WORK

16.1    Company may, at any time and from time to time, by written notice to Contractor, suspend further performance of all or any portion of the Work by Contractor. Said notice of suspension shall specify the date of suspension and the estimated duration of the suspension. Such suspensions shall not exceed one hundred eighty (180) consecutive calendar days each nor aggregate more than two hundred seventy (270) calendar days. Upon receiving any such notice of suspension, Contractor shall promptly suspend further performance of the Work to the extent specified, and during the period of such suspension shall properly care for and protect all Work in progress and materials, supplies, and equipment Contractor has on hand for performance of the Work. Upon the request of Company, Contractor shall promptly deliver to Company copies of outstanding subcontracts of Contractor and shall take such action relative to such subcontracts as may be directed by Company. Contractor shall use its best efforts to utilize its material, labor and equipment in such a manner as to mitigate costs associated with suspension. Company may, at any time, withdraw the suspension of performance of the Work as to all or part of the suspended Work by written notice to Contractor specifying the effective date and scope of withdrawal, and Contractor shall resume diligent performance of the Work for which the suspension is withdrawn on the specified effective date of withdrawal.

16.2    If Contractor believes that any such suspension or withdrawal of suspension justifies modification of the Contract Price, Contractor shall comply with the provisions of the procedure set forth in Article 15.0, Changes. Contractor's final claim for modification of the Contract Price shall substantiate Contractor's increased costs for such suspension or withdrawal of suspension, with documents satisfactory to Company. Upon Company's verification and approval of such additional costs, Contractor and Company shall agree upon an adjustment in the Contract Price, based upon such verified and approved additional costs as full settlement to Contractor for the suspension or withdrawal of suspension. Contractor shall not be entitled to any prospective

**FLUOR**®

Client Name: US ARMY SUSTAINMENT COMMAND                Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

profits or any damages because of such suspensions or withdrawals of suspension.

## 17.0    TERMINATION AT COMPANY'S OPTION

17.1    Company may, with or without cause, terminate further performance of all or part of the Work by written notice to Contractor specifying the date of termination. On the date of such termination stated in said notice, Contractor shall discontinue performance of the Work and shall preserve and protect tools, construction equipment and facilities on jobsite, materials and plant equipment purchased for or committed to the Work (whether delivered to the jobsite or on order), Work in progress and completed Work (whether at jobsite or other locations) pending Company's instructions and, if requested by it, shall turn over the same to Company, or Owner, including title to said materials and plant equipment, or dispose of same in accordance with Company's instructions.

17.2    Upon receipt of said notice, Contractor shall advise Company of its outstanding subcontracts pertaining to performance of the terminated work and, upon request, furnish Company with complete copies. Contractor shall place no further subcontracts except as may be necessary for completion of such portion of the Work as is not terminated. Contractor shall promptly make every reasonable effort to procure cancellation, upon terms satisfactory to Company, of all subcontracts to the extent they relate to the performance of Work terminated or, as directed by Company, shall assign to Company or Owner, in form satisfactory to Company, such of its subcontracts as are designated by Company or shall take such other action relative to such subcontracts as may be directed by Company.

17.3    If Contractor has fully and completely performed all obligations under this Contract up to the date of termination, Contractor shall recover from Company as complete and full settlement for such termination for Work to be performed under this Contract, the actual costs of all such Work satisfactorily executed to the date of termination, plus an allowance for reasonable overhead and profit on such costs incurred prior to termination (but not to exceed a pro rata portion of such Contract Price for such Work based on the percentage of Work properly completed to the date of termination), together with reasonable costs occasioned by such termination and not previously paid for, less such sums as Contractor has already received on account of the Work performed. In no event shall total payment to Contractor exceed the Contract Price.

17.4    All requests for compensation under any of the foregoing provisions of Section 17.3 shall be submitted to Company in accordance with the provisions of Article 15.0, Changes. In no event shall Contractor be entitled to any prospective profits or any damages.

## 18.0    CLAIMS

18.1    If, for any reason, Contractor considers that an event has occurred pursuant to which it has a right to claim compensation from Company or an extension to

**FLUOR**®

Client Name: US ARMY SUSTAINMENT COMMAND                    Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

the schedule, Contractor shall notify Company in writing of the existence of such claim within five (5) working days of the Parties' failure to reach a timely agreement pursuant to Section 15.6 for changes or from the occurrence of the event in question for other claims. Within ten (10) days of giving such a notification, Contractor shall submit to Company the proposed cost and schedule effect of the change. In this respect, Contractor shall comply with the provisions of Section 15.3. Contractor shall substantiate its claim with payroll documents, paid invoices, receipts, records of performance and other documents satisfactory to Company and subject to its verification. Neither Company nor Owner shall be liable for, and Contractor hereby waives, any claim or potential claim of Contractor which was not reported by Contractor in accordance with the provisions of this Article regardless of the cause including the negligence of Company and Owner.

18.2    Company will determine the extent, if any, to which the Contract Price is to be changed by reason of the claim and the extent to which the schedule is to be changed by reason of the claim. Company will advise Contractor of the result of this determination and will issue a Contract modification accordingly. If Contractor disputes Company's determination and notifies Company within five (5) working days of receiving it, Contractor may seek to resolve the dispute in accordance with Article 50.0. If Contractor elects to proceed pursuant to Article 50.0, Contractor agrees to limit its claim to the amount claimed by it in accordance with Section 18.1. In no event shall any work be halted, whether or not the claim can be resolved to Contractor's satisfaction, and Contractor shall be bound by the terms and conditions of this Contract to prosecute the Work without delay to its successful completion.

18.3    The following shall not constitute changes and Contractor has no right to make any claim in relation thereto:

18.3.1 Instructions, interpretations, decisions or acts by Company which are:

A. to achieve compliance with the Contract by Contractor; or

B. to correct errors, omissions, poor engineering, defective workmanship or other failure of the Contractor to comply with the Contract;

18.3.2 Delay in the performance of Contractor's work or any additional work caused by Contractor.

18.3.3  Any work performed by Contractor required by Company comments to Contractor's submittals to the extent that such comments are consistent with the Contract.

18.4    If Contractor fails to follow the requirements of Section 18.1, it shall have waived any right to make any claim, regardless of the cause including the negligence of Company and Owner, in respect of the events referred to in Section 18.1. Contractor's sole remedy in respect of any claim will be as



Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

provided in Section 18.2. No claim by Contractor in relation to events referred to in Section 18.1 shall be allowed after final payment is made pursuant to the provisions set forth in Article 43.0.

18.5    Company shall not be bound to any adjustments in the Contract Price or scheduled time unless expressly agreed to by Company in writing.

## MATERIALS AND EQUIPMENT

### 19.0    PROTECTION OF MATERIALS, EQUIPMENT AND WORK

19.1    Contractor shall at all times, in accordance with the best practices and at no additional cost to Company, preserve and protect material and equipment used by Contractor in the execution of the Work from damage or loss due to weather, fire, theft, unexplained disappearance or other similar casualty.

19.2    Contractor shall at all times, in accordance with the best practices and at no additional cost to Company, protect from damage due to Contractor's operations, equipment and materials (whether stored or installed), paving, structures and any and all other items on the jobsite belonging to Owner, Company or others.

19.3    Neither Company nor Owner shall be responsible for any loss suffered by Contractor, or damage to the Work, or to materials, tools and equipment of Contractor or of any other contractor, regardless of the cause including the negligence of Company and Owner, and Contractor assumes responsibility for any such loss or damage and for any cost of repairing, making good, or replacing any such loss or damage that may be directed by Company or Owner.

### 20.0    CONTRACTOR'S CONSTRUCTION EQUIPMENT

Construction equipment obtained or furnished by Contractor which is to be used by Contractor on the jobsite shall be in first-class operating condition, safe, fit for the uses for which intended, and suitable for the safe, legal and efficient performance of the Work. Such equipment shall be subject to inspection from time to time by Company.

Any such equipment of Contractor which is rejected by Company as not conforming with the foregoing shall be promptly removed by Contractor and replaced with equipment acceptable to Company, without additional cost to Company and without delaying the schedule for performance of the Work by Contractor.

### 21.0    CONTRACTOR'S SHIPMENTS

21.1    Contractor shall be responsible for arranging all shipments of Contractor supplied materials and equipment to the site of the Work and shall consign such shipments to itself as Consignee at the project shipping address, freight fully prepaid. Contractor shall be responsible for making demurrage agreements and settlement with carriers for its shipments.



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

21.2    Contractor shall advise Company in writing, in advance of major shipments of Contractor's materials and equipment and shall coordinate with Company the arrival, unloading and release of carriers' equipment. Contractor shall promptly unload its shipments and promptly release carrier's equipment.

21.3    In the event Contractor may be unable to promptly unload its shipment, Contractor shall notify Company of such inability not less than ten (10) working days in advance of arrival. Company, at its option, may unload or make arrangements for others to unload such shipments for the account and risk of Contractor. Contractor will promptly pay Company for such costs of unloading.

## 22.0    CONTROL OF COMPANY FURNISHED MATERIALS

22.1    Materials and equipment furnished by Company shall be received by Contractor in the presence of Company authorized representative and quantities thereof shall be checked jointly by Contractor and Company. The delivery and acceptance of all such materials and equipment shall be recorded in writing, and Contractor shall evidence receipt and acceptance of such materials and equipment by signing forms satisfactory to Company.

22.2    Contractor shall carefully note any visible damage to Company furnished materials and equipment prior to Contractor's acceptance of delivery. After Contractor has accepted delivery of such materials and equipment, Contractor shall assume full responsibility for any loss of or damage to such materials and equipment. Contractor shall notify Company of any materials and equipment supplied to Contractor by Company which are surplus and, without additional compensation, shall cooperate with Company and Owner in the disposition of such surplus as directed by Company.

22.3    Contractor shall notify Company of any lack of, or requirement for, materials and equipment required under this Contract to be supplied by Company in sufficient time for Company to furnish said materials or equipment in advance of Contractor's need. In the event of misfit of Company furnished materials or equipment, Contractor shall promptly notify Company of such misfit.

Contractor shall take all reasonable steps to avoid standby time due to such misfit or lack of Company furnished materials or equipment and to continue progress of other portions of Work pending correction of such misfit and/or the furnishing of materials or equipment.

## 23.0    CARE, CUSTODY, CONTROL AND TITLE TO MATERIALS AND EQUIPMENT

23.1    Good and clear title to all materials and equipment furnished by Contractor under this Contract for the Work shall, except as expressly provided otherwise, elsewhere in this Contract, pass to Owner upon incorporation into the permanent plant. Contractor shall ensure that subcontractors from whom Contractor obtains materials and equipment do not retain, encumber or reserve title to such items, and Contractor shall defend, indemnify and hold Company and Owner harmless from any such claims by its subcontractors.



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND                Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

23.2    Notwithstanding the provisions of Section 23.1, the care, custody and control of Contractor's Work incorporated into the permanent plant shall remain with Contractor until such Work has been accepted in writing by Company and shall thereupon pass to Company unless Company or Owner notify Contractor in writing that such care, custody, and control is assumed by Company or Owner at an earlier date. The taking of possession of such Work pursuant to Article 13.0, Possession Prior to Completion, shall not constitute the assumption of care, custody and control of such Work until such time as such Work has either been accepted in writing by Company or Contractor has been notified as set forth herein.

23.3    Contract revenues representing payments to subcontractors shall not be considered to be earned by Contractor unless and until Contractor has paid the current invoices of such subcontractor. In the event Company determines, in its sole discretion, that Contractor has become insolvent or is in danger of becoming insolvent, then Company is authorized, but not required, to make direct payment to Contractor's subcontractors with respect to any current or past-due invoices then outstanding. Alternatively, Company may, in its sole discretion, require that contracts between Contractor and any such subcontractor be assigned to Owner or Company, and Contractor hereby authorizes and consents to any such assignment. Owner and Company shall be entitled to full credit against any obligations to Contractor for any payments made to any subcontractor under this Section 23.3, whether made pursuant to assigned subcontracts or otherwise. Title to any materials or equipment for which such direct payment is made shall pass directly from such subcontractor to Company or Owner.

## LABOR AND WORK RULES

### 24.0    CONTRACTOR'S PERSONNEL

24.1    At all times during the course of the Work, Contractor shall provide at the jobsite a qualified, competent and responsible supervisor who shall be satisfactory to Company. The supervisor shall have authority to represent Contractor and directions given to him shall be binding on Contractor. Upon Company's written request, Contractor shall give the supervisor, in writing, complete authority to act on behalf of, and to bind Contractor in all matters pertaining to the Work and this Contract. Contractor shall furnish Company a copy of the authorization. Contractor shall not transfer or remove any of its supervisory or key personnel from performance of Work without the prior written approval of Company.

24.2    Any employee of Contractor deemed by Company or Owner, in their sole judgment, to be objectionable shall be removed from the jobsite immediately upon Company request and shall be promptly replaced by Contractor at no extra expense to Company or Owner. Contractor shall nevertheless retain all authority and control over its employees, including responsibility for all costs arising from providing reasonable accommodations for its employees.



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND           Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

24.3   If requested by Company, Contractor shall furnish it with the names and addresses of Contractor's subcontractors, field employees of Contractor and its subcontractors, and others who have performed or are performing the Work hereunder.

## 25.0   LABOR HARMONY

25.1   Contractor agrees that all labor employed by it, its agents, and/or its subcontractors for Work on the Work Site shall be in harmony with and be compatible with all other labor used by Company or other contractors. Whenever Contractor has knowledge that any actual or potential labor dispute is delaying, or threatens to delay, the timely performance of the Work, Contractor shall immediately give notice thereof, including all relevant information to Company.

25.2   Contractor shall comply with and shall cooperate with Company in enforcing Work Site conditions including, but not limited to, starting and quitting time, hours of work, overtime, shift differentials, holidays, travel and subsistence payments, smoking regulations, daily clean-up and/or other conditions that affect the overall performance of the Work.

25.3   Owner and Company may determine that all field construction labor be performed in accordance with a standard nationally recognized labor agreement (including, but not limited to the National Maintenance Agreement or the National Construction Agreement). Such determination shall be noted in Part I to the Contract and the terms of such agreement shall be set forth in Attachment J to the Contract. In the event of such determination, Contractor shall make available upon request of Company and/or Owner, including, but not limited to, all records and documents, for the purpose of verifying Contractor's compliance with working in accordance with the national agreement set forth in Attachment J. Compliance by Contractor or any of its subcontractors in any tier with the provisions of the specified national agreement is a specific Contract obligation and any failure or default in compliance will be grounds for termination under Article 8.0, Termination for Default.

25.4   UNION LABELS

In the event that Company and Owner make the determination set forth in Section 25.3 above, Contractor and its suppliers and subcontractors in any tier shall be responsible to adhere to all fabrication and work preservation requirements as outlined in the national agreement specified in Attachment J. In the event that the applicable national agreement has no reference to the fabrication and work preservation requirements of the local, regional or area collective bargaining agreement, then at a minimum, all fabricated piping that is shipped loose, all special built electrical cabinets that are not standard catalog items and all HVAC duct work that is fabricated offsite for later installation at the Work Site, shall carry a "Union Label" from an approved shop of the International Union that has the historic jurisdictional claim to the work.



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND                    Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

## 26.0   EMPLOYMENT CERTIFICATIONS AND PRACTICES

26.1   Contractor certifies that it has an affirmative action policy ensuring equal employment opportunity without regard to race, color, age, sex, sexual orientation, gender identity, religion, national origin, disability, veteran status, or genetic information, that it maintains no employee facilities segregated on the basis of race, color, religion or national origin and that it is not debarred or suspended from being awarded federal or federally assisted contracts.

26.2   If applicable to this Contract, the following laws, orders and regulations, as amended, are hereby incorporated by reference:   Executive Order 11246; Vietnam Era Veterans Readjustment Act; Rehabilitation Act of 1973; 41 CFR 60-1 (Equal Employment Opportunity Obligations); 41 CFR 60-300 (Protected Veterans Affirmative Action); 41 CFR 60-2 (Affirmative Action Programs); 29 CFR 1602.7 CFR 61-300 (VETS-4212 Reports).

26.2.1   **Contractor shall abide by the requirements of 41 CFR §§ 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals on the basis of protected veteran status or disability, and require affirmative action by Contractor and its subcontractors to employ and advance in employment qualified protected veterans and individuals with disabilities.**

26.3   Upon request of Company, Contractor will furnish it with a certificate satisfactory in form to Company that goods furnished by Contractor in performance of this Contract were produced in full compliance with the requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act of 1938, as amended, and the regulations and orders of the U.S. Department of Labor issued under Section 14 thereof.

## 27.0   WORK RULES

Contractor shall comply strictly with Company and Owner's rules governing the conduct of Contractor and Contractor's employees, agents and subcontractors at and about the jobsite. Contractor agrees that it shall ensure that its supervisory personnel, employees, agents and subcontractors at the jobsite comply strictly with such rules. Company and Owner reserve the right to, from time to time, revise any such rules, and Contractor shall comply fully with such rules as revised in accordance with the foregoing provisions.

## <u>INDEMNIFICATION AND INSURANCE</u>

## 28.0   INDEMNITY

28.1   Contractor agrees to defend, indemnify and hold harmless Company and Owner, the affiliated companies of each, and all of their directors, officers, employees, agents and representatives, from and against any claim, demand, cause of action, liability, loss or expense arising:

28.1.1   By reason of Contractor's actual or asserted failure to comply with any law, ordinance, regulation, rule or order, or with this Contract.

Client Name: US ARMY SUSTAINMENT COMMAND                Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

This Subsection 28.1.1 includes, but is not limited to, fines or penalties by government authorities and claims arising from Contractor's actual or asserted failure to pay taxes.

28.1.2    From actual or asserted violation or infringement of rights in any patent, copyright, proprietary information, trade secret or other property right caused or alleged to be caused by the use or sale of goods, materials, equipment, methods, processes, designs or information, including construction methods, construction equipment and temporary construction facilities, furnished by Contractor or its subcontractors in performance of the Work. Should any goods or services provided by Contractor become, or appear likely to become, the subject of a claim of infringement of a patent, copyright or other property right, Contractor shall, at Company's option, either procure for Company and Owner the right to continue using such goods or services, replace same with equivalent, non-infringing goods or services, or modify the goods or services so that the use thereof becomes non-infringing, provided that any such modification or replacement is of equal quality and provides equal performance to the infringing goods or services.

28.1.3    From injury to or death of persons (including employees of Company, Owner, Contractor and Contractor's subcontractors) or from damage to or loss of property (including the property of Company or Owner) arising directly or indirectly out of this Contract or out of any acts or omissions of Contractor or its subcontractors. Contractor's defense and indemnity obligations hereunder include claims and damages arising from non-delegable duties of Company or Owner or arising from use by Contractor of construction equipment, tools, scaffolding or facilities furnished to Contractor by Company or Owner.

28.1.4    From actual or alleged contamination, pollution, or public or private nuisance, arising directly or indirectly out of this Contract or out of any acts or omissions of Contractor, its subcontractors, or suppliers.

28.2    Contractor's indemnity obligations shall apply regardless of whether the party to be indemnified was concurrently negligent, whether actively or passively, excepting only where the injury, loss or damage was caused solely by the negligence or willful misconduct of, or by defects in design furnished by, the party to be indemnified. Contractor's defense and indemnity obligations shall include the duty to reimburse any attorneys' fees and expenses incurred by Company or Owner for legal action to enforce Contractor's indemnity obligations.

28.3    In the event that the indemnity provisions in this Contract are contrary to the law governing this Contract, then the indemnity obligations applicable hereunder shall be construed to be to the fullest extent allowed by applicable law.

**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND                Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

28.4    With respect to claims by employees of Contractor or its subcontractors, the indemnity obligations created under this Article 28.0 shall not be limited by the fact of, amount, or type of benefits or compensation payable by or for Contractor, its subcontractors or suppliers under any workers' compensation, disability benefits, or other employee benefits acts or regulations, and Contractor waives any limitation of liability or immunity arising from workers' compensation or such other acts or regulations.

28.5    Company shall be entitled to retain from payments otherwise due Contractor such amounts as shall reasonably be considered necessary to satisfy any claims, suits or liens for damages that fall within Contractor's indemnity obligations under this Article 28.0, until such claims suits or liens have been settled and satisfactory evidence to that effect has been furnished to Company.

**29.0    INSURANCE**

29.1    Contractor shall, at its sole cost, obtain and maintain in force for the duration of the Contract (including the guarantee period set forth in Article XX) insurance of the following types, with limits not less than those set forth below:

29.1.1    Workers' Compensation Insurance, including occupational illness or disease coverage, in accordance with the laws of the nation, state, territory or province having jurisdiction over Contractor's employees and Employer's Liability Insurance with a minimum limit of $2,000,000 per accident and, for bodily injury by disease, $2,000,000 per employee. Policy shall include United States Longshoreman & Harbor Workers Act (USL&H) and Federal Employers Liability Act (Jones Act) and Outer Continental Shelf Act coverage where such exposures may exist as part of the Contractor's Work.  Contractor shall not utilize occupational accident or health insurance policies, or the equivalent, in lieu of mandatory Workers' Compensation Insurance or otherwise attempt to opt out of the statutory Workers' Compensation system.

29.1.2    Commercial General Liability Insurance ("Occurrence Form") with a minimum limits as follows:

- $5,000,000 each occurrence for bodily injury and property damage combined;

- $5,000,000 personal and advertising injury any one person;

- $5,000,000 annual general aggregate;

- $5,000,000 products-complete operations aggregate maintained for a minimum of three (3) years following completion of Contractor's services.

The policy shall be endorsed, utilizing ISO Endorsements CG 20 10 07 04 and CG 20 37 07 04, "Additional Insured - Owners, Lessees



Client Name: US ARMY SUSTAINMENT COMMAND                    Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

or Contractors – Scheduled Person or Organization/Completed Operations" or their equivalent, to name Company and Owner, including their respective affiliates, the financing parties, if any, and the respective officers, directors and employees of each, as additional insureds.

29.1.3    Automobile Liability Insurance covering use of all owned, non-owned and hired automobiles with a minimum combined single limit of liability for bodily injury and property damage of $5,000,000 per occurrence.  This policy shall be endorsed to name Company and Owner, including their respective affiliates, directors and employees, as additional insureds.

29.1.4    If any part of the Contractor's or its subcontractor's Work involves the removal, remediation, abatement, cleanup or disposal of hazardous waste/materials, the contractor shall maintain Contractors Pollution Liability insurance, on an occurrence form, with a limit of not less than $5,000,000 per occurrence, $5,000,000 annual aggregate and a $5,000,000 completed operations aggregate for a minimum of three years after completion of the Work.  Such insurance shall name Company and Owner, including their respective affiliates, the financing parties, if any, and the respective officers, directors and employees of each, as additional insureds.

29.1.5    To the extent the Contractor utilizes any aircraft in the completion of its works, the Contractor shall maintain Aircraft Liability insurance with a limit of not less than $10,000,000 Combined Single Limit including passengers for bodily injury / property damage per occurrence / annual aggregate.  Such coverage shall provide for any territory in which such aircraft will be operated and shall include War Risk (AVN52E). Such insurance shall name Company and Owner, including their respective affiliates, the financing parties, if any, and the respective officers, directors and employees of each, as additional insureds.

Contractor is completely responsible for risk of loss to the aircraft, regardless of the cause of such loss.  Should Contractor or the owner of each aircraft hereunder purchase aircraft hull loss coverage, such coverage shall include a waiver of subrogation in favor of the Owner, the Company, and their subsidiaries, associated or affiliated corporations, firms or other entities over which either exercises financial or management control and their respective officers, directors, shareholders, and employees.

29.1.6    To the extent that the Work involves the usage of watercraft, Contractor shall maintain Hull & Machinery coverage to the full value of the hull and machinery and Protection & Indemnity insurance with a minimum limit of $5,000,000 per occurrence / annual aggregate. Protection & Indemnity insurance shall name Company and Owner,



Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

including their respective affiliates, the financing parties, if any, and the respective officers, directors and employees of each, as additional insureds.

29.2    All insurance provided by Contractor under this Article 29.0 shall include a waiver of subrogation by the insurers in favor of Company, Owner, financing parties (if any) and all other contractors and subcontractors performing work at the Project Site, including their respective affiliates, directors, and employees. Contractor hereby releases Company and Owner, including their respective affiliates, directors and employees for losses or claims for bodily injury, property damage or other insured claims arising out of Contractor's performance under the Contract.

29.3    The foregoing insurance shall be primary and non-contributing with respect to any other insurance, whether primary or excess or self-insurance, which may be maintained by Company or Owner.  Contractor's General, Automobile Liability and, to the extent required hereunder, Contractors Pollution and Aviation insurance policies shall contain a Cross Liability or Severability of Interest clause.  Contractor shall provide with its Certificates of insurance policy endorsements or other written confirmation from its insurance carrier(s) evidencing that these requirements have been met.

29.4    Certificates of insurance satisfactory in form to Company (ACORD form or equivalent) shall be supplied to Company evidencing that the insurance required above is in force, that not less than thirty (30) days written notice will be given to Company prior to any cancellation or restrictive modification of the policies, and that the waivers of subrogation are in force.  Contractor shall also provide with its certificate of insurance executed copies of the additional insured endorsements required in this Article 29.0.  At Company's request, Contractor will provide a certified copy of each insurance policy required under this Contract.

29.5    The fact that Contractor has obtained the insurance required in this Article shall in no manner lessen nor affect Contractor's other obligations or liabilities set forth in this Contract.

29.6    Contractor is fully and solely responsible for any physical loss or damage to all tools, equipment, construction office trailers and their contents, vehicles or any other personal property utilized in the performance of Contractor's work. Contractor agrees to waive its rights of recovery and cause its insurers, if any, to waive their rights of subrogation against Owner and Company for any such damage or loss, howsoever caused.

29.7    **RISK OF LOSS TO AND RESPONSIBILITY FOR THE WORK.** The Contractor shall be responsible for all work performed and equipment and materials furnished to or by the Contractor under this Contract until the Contract work is completed and has been accepted by the Company. In the event of loss, damage or destruction of such work, equipment or materials, the Contractor at his sole expense shall promptly repair, restore or replace such to the satisfaction

Client Name: US ARMY SUSTAINMENT COMMAND                    Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

of the Company. Contractor agrees to waive its rights of recovery and cause its insurers, if any, to waive their rights of subrogation against Company and Owner for any loss, damage or destruction, regardless of cause, to the Work.

## 30.0    SURETY INSTRUMENTS

If requested by Company, Contractor shall obtain payment and performance bonds each in an amount equal to 100% of the Contract Price.  The bonds shall be written on forms satisfactory to Company.  All Contractor's Sureties shall be approved by the Department of Treasury, as indicated in Circular 570, "Companies Holding Certificates of Authority as Acceptable Sureties on Federal Bonds and as Acceptable Reinsuring Companies."

## WORK CONDITIONS

## 31.0    CONTRACTUAL RELATIONSHIP

Contractor represents that it is fully experienced and properly qualified to perform the class of Work provided for herein, and that it is properly equipped, organized and financed to perform such Work. Contractor represents that at the time of submission of its quotation for performance of the Work, it was properly licensed and qualified to do business in all governmental jurisdictions in which the Work is to be performed. Upon written request by Company, Contractor shall furnish to it such evidence as Company may require relating to the Contractor's ability to fully perform this Contract. Nothing contained in this Contract or any subcontract awarded by Contractor shall create any contractual relationship between any subcontractor and Company or Owner. Contractor agrees that Contractor is an independent contractor and an employer subject to all applicable unemployment compensation, occupational safety and health, workers' compensation, or similar statutes so as to relieve Company of any responsibility or liability for treating Contractor's employees as employees of Company for the purpose of their safety or of keeping records, making reports or paying of any payroll taxes or contribution; and Contractor agrees to defend, indemnify and hold Company and Owner harmless and reimburse them for any expense or liability incurred under said statutes in connection with employees of Contractor, including a sum equal to any unemployment benefits paid to those who were Contractor's employees, where such benefit payments are charged to Company or Owner under any merit plan or to Company or Owner reserve account pursuant to any statute.

Contractor further agrees, as regards the items set forth below and for Work under this Contract, that it will keep and have available all necessary records and make all payments, reports, collections and deductions and otherwise do any and all things so as to fully comply with all federal, state and local laws, ordinances and regulations as they affect performance of this Contract, so as to fully relieve and protect Company and Owner from any and all responsibility or liability therefore or in regard thereto:  (1) the production, purchase and sale, furnishing and delivering, pricing, and use or consumption of materials, supplies and equipment; (2) the hire, tenure or conditions of employment of employees and their hours of work and rates of the payment of their work, and (3) the keeping of records, making of reports, and the payment, collection



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

and/or deduction of federal, state, commonwealth and local taxes, contributions, pension funds, welfare funds, or similar assessments.

## 32.0    PERMITS AND LICENSES

Contractor shall promptly apply for and procure, without additional compensation, all permits (except for such permits as may be specifically set forth as Company responsibility elsewhere in this Contract), certificates and licenses required by governmental authorities having jurisdiction over the Work, Contractor or the location of the Work.

## 33.0    INDEPENDENT CONTRACTOR

Nothing in this Contract shall be deemed to represent that Contractor, or any of Contractor's employees or agents, are the agents, representatives or employees of Company or Owner. Contractor shall be an independent contractor and shall have responsibility for and control over the details and means for performing the Work, provided that Contractor is in compliance with the terms of this Contract. Anything in this Contract which may appear to give Company the right to direct Contractor as to the details of the performance of the Work or to exercise a measure of control over Contractor shall mean that Contractor shall follow the desires of Company only as to the intended results of the Work.

## 34.0    CONFIDENTIAL INFORMATION

Drawings, specifications, and other information obtained by Contractor from Company or Owner in connection with the Work shall be held in confidence by Contractor and shall not be disclosed to third parties or used by Contractor for any purpose other than for the performance of Work or as authorized in writing by Company. All such documents furnished by Company or Owner to Contractor shall remain their property, and upon completion of the Work, Contractor shall, as requested by Company, either destroy or return such documents, including any copies thereof.

## 35.0    PUBLICITY

Contractor shall not make news releases, publicize or issue advertising pertaining to the Work or this Contract, without first obtaining the written approval of Company.

## 36.0    OWNERSHIP AND USE OF DRAWINGS

Drawings, technical documents and data prepared or developed by Contractor and furnished to Company in performance of the Work, shall be the property of Company and may be used by Company or Owner without restriction.

## 37.0    ASSIGNMENTS

Contractor shall not assign this Contract wholly or in part, voluntarily, by operation of law, or otherwise, without first obtaining the written consent of Company. Any assignment of this Contract in violation of the foregoing shall be, at the option of Company, void. Subject to the foregoing, the provisions of this Contract shall extend to the benefit of and be binding upon the successors and assigns of the parties hereto.

**FLUOR**®

Client Name: US ARMY SUSTAINMENT COMMAND                    Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

Company reserves the right, at its sole option, to assign this Contract to Owner, Owner's designated agent, or to Company affiliates.

## 38.0    LAWS AND REGULATIONS

38.1    Contractor shall comply strictly with local, municipal, state, federal and governmental laws, orders, codes and regulations applicable to Contractor's operations in the performance of the Work hereunder.

38.2    Contractor shall not, under any circumstances apply to or enter into negotiations with any governmental authority or agency for acceptance of variations from or revisions to safety or health, or air, water or noise pollution laws or regulations relating to this Contract, or to the performance thereof, without Company and Owner's prior written approval.

38.3    Contractor certifies that it is in compliance, and shall at all times remain in compliance, with all applicable anti-corruption and anti-bribery laws, including but not limited to the U.S. Foreign Corrupt Practices Act of 1977, as amended.

38.4    Contractor shall not, under any circumstances, cause or permit, in connection with the Work to be performed hereunder, the discharge, emission or release of any hazardous substance and/or waste, pollutant, contaminant or other substance in violation of any applicable laws, rules or regulations which are now or hereafter promulgated by any governmental authorities having jurisdiction over the Work. Contractor shall comply with all legal regulatory requirements applicable to the Work performed under this Contract and shall be responsible for compliance with all hazardous waste, health and safety, notice, training, and environmental protection laws, rules, regulations and requirements.

"Hazardous waste" includes all substances which are or may be identified as such in 40 CFR Part 261 or other applicable laws or regulations. Contractor shall submit to Company material safety data sheets (OSHA Form 20) as required by applicable regulation. As an inducement to award of this Contract, Contractor warrants full compliance and that it will adhere to all applicable project hazardous waste procedures and, if necessary, obtain or arrange for, at its expense, all identification numbers, permits, applications and other things required in connection with the activities under this Contract.

Contractor agrees that it will not store any hazardous wastes at the jobsite for periods in excess of ninety (90) days or in violation of the applicable site storage limitations imposed by law, the Owner or Company, whichever shall be more restrictive. Contractor further agrees that it will not permit any accumulation in excess of the small quantity generator exclusion of 40 CFR Part 261, or other applicable law, as amended. Contractor agrees to take, at its expense, all actions necessary to protect third parties, including without limitation, employees and agents of Owner and Company from any exposure to, or hazards of, hazardous and/or toxic wastes or substances generated, or utilized in, Contractor's operations. Contractor agrees to report to the appropriate governmental agencies all discharges, releases and spills of



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

hazardous substances and/or wastes required to be reported by law and to immediately notify Owner and Company of same.

38.5  This Contract shall be subject to the law and jurisdiction of the State of California, unless expressly designated otherwise within this Contract.

## 39.0   EMERGENCY MEDICAL SERVICES

Company or Owner may furnish emergency medical treatment or related services to Contractor's employees in the case of job connected illness or injury occurring at the jobsite. In the event that such services are available, all such treatment or services, if any, are furnished on a Good Samaritan basis and not as a contractual obligation. In consideration of any such treatment or services, Contractor acknowledges that it assumes full and complete responsibility and liability for all injuries and damages to any of its employees arising out of or allegedly attributable in any way thereto. Nothing herein contained shall be construed as imposing any duty upon Company or Owner to provide facilities necessary to furnish emergency medical treatment or related services to Contractor's employees or to make such facilities and/or services available to Contractor's employees.

## DOCUMENTATION, LIENS AND OFFSETS

## 40.0   DOCUMENTATION AND RIGHT OF AUDIT

40.1  Where Contractor's invoice includes compensation for Work performed at a unit price, Contractor shall submit its determination of units of Work performed, determined in accordance with the provisions of this Contract, and substantiated by documents satisfactory in form and content to Company. Upon verification by Company of said documents, Company will advise Contractor in writing of either acceptance of Contractor's determination of units or of Company determination of such units. If Contractor believes that Company has incorrectly determined the units of Work performed, Contractor shall comply with the provisions of Article 18.0, Claims.

40.2  Where Contractor's invoice includes compensation for Work performed for a reimbursable Contract Price, all costs, expenses and other amounts so invoiced shall be substantiated and supported by equipment time slips, paid invoices, time sheets, receipts and other documents satisfactory to and verified by Company.

40.3  Contractor shall maintain for a period of two (2) years after final payment under this Contract, all records and accounts pertaining to Work performed by Contractor under this Contract for a unit price, a reimbursable price, or otherwise authorized in writing by Company for performance on a reimbursable basis. Company and/or Owner shall have the right to audit, copy and inspect said records and accounts at all reasonable times during the course of such Work and for the above two (2) year period for the purpose of verifying units furnished and/or costs incurred, as applicable.



Client Name: US ARMY SUSTAINMENT COMMAND                    Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

## 41.0   LIENS

41.1   To the full extent permitted by applicable law, Contractor hereby waives and releases any and all rights of mechanic's lien and similar rights for payment for services, labor, equipment, or materials furnished by Contractor in performance of the Work and granted by law to persons supplying materials, equipment, services and other things of value to improve or modify land or structures hereon, which Contractor may have against Owner's premises, property belonging to Company and Owner, or to either of them, or funds payable by Owner to Company.

41.2   Contractor shall at all times promptly pay for all services, materials, equipment and labor used or furnished by Contractor in the performance of the Work under this Contract and shall, to the fullest extent allowed by law, at its expense keep Owner's premises and all property belonging to Company and Owner, or to either of them, free and clear of any and all of the above mentioned liens and rights of lien arising out of services, labor, equipment or materials furnished by Contractor or its employees, material-men or subcontractors in the performance of the Work.  If Contractor fails to release and discharge any lien or threatened lien against Owner's premises or the property of Company and Owner, or of either of them, arising out of performance of the Work within five (5) working days after receipt of written notice from Company to remove such claim of lien, Company may, at its option, discharge or release the claim of lien or otherwise deal with the lien claimant, and Contractor shall pay Company any and all costs and expenses of Company in so doing, including reasonable attorneys' fees incurred by Company.

## 42.0   RIGHT TO OFFSET

Company, without waiver or limitation of any rights or remedies of Company or Owner, shall be entitled from time to time to deduct from any amounts due or owed by Company to Contractor, in connection with this Contract (or any other contract with Company), any and all amounts owed by Contractor to Company or Owner in connection with this Contract.

## 43.0   FINAL PAYMENT CERTIFICATION AND RELEASE

43.1   Company shall not be obligated to make final payment to Contractor until Contractor has delivered to Company a certificate and release satisfactory to Company that Contractor has fully performed under this Contract and that all claims of Contractor for the Work are satisfied upon the making of such final payment, that no property of Owner or property used in connection with the Work is subject to any unsatisfied lien or claim as a result of the performance of the Work, that all rights of lien against Owner's property in connection with the Work are released (including without limitation, if Company requests, releases of lien satisfactory in form to Company, executed by all persons who by reason of furnishing material, labor or other services to Contractor for the Work or potential lienors against Owner's property), and that Contractor has paid in full all outstanding obligations against the Work.



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND          Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

43.2    In addition to the above specified submittals and prior to final payment being made to Contractor, Contractor shall provide Company with written certification that all wages, fringe benefits, dues and payroll deductions have been made. Failure to provide such certification shall be cause for Company to withhold final payment until such time as all payment(s) are made and certification is submitted

## GENERAL

### 44.0    ARBITRATION OPTION

In the event that Company is required to arbitrate a dispute with a third party, which dispute arises out of or is directly related to this Contract, Contractor agrees to join in such arbitration proceeding, as Company may direct, and shall submit to such jurisdiction and be finally bound by the judgment rendered in accordance with the arbitration rules, as may be established therein.

### 45.0    VALIDITY OF PROVISIONS

In the event any section, or any part or portion of any section of this Contract shall be held to be invalid, void or otherwise unenforceable, such holding shall not affect the remaining part or portions of that section, or any other section hereof.

### 46.0    WAIVER

Company's failure to insist on performance of any term, condition, or instruction, or to exercise any right or privilege included in this Contract, or its waiver of any breach, shall not thereafter waive any such term, condition, instruction, and/or any right or privilege.

No asserted waiver of any right or benefit by Company shall be valid unless such waiver is in writing, signed by Company, supported by consideration and specifies the extent and nature of the rights or benefits being waived.

### 47.0    BUSINESS CONDUCT AND ETHICS EXPECTATIONS

Company's "Business Conduct and Ethics Expectations for Suppliers and Contractors" publication is available at http://www.fluor.com/sustainability/ethics_compliance ("Company's Expectations").  Contractor confirms that it has received or accessed and reviewed Company's Expectations and agrees that it and its suppliers and contractors, and the employees, agents and representatives of each shall at all times comply with Company's Expectations, and where more stringent, applicable laws and Contractor's own business conduct guidelines and policies.  Violation of this Article may be deemed by Company to be a material breach of this Contract and in such event, Company may, without prejudice to any other rights or remedies Company may have, hold in abeyance further payments to Contractor and/or terminate Contractor's right to continue performance of this Contract in accordance with Article 8, Termination for Default.  Company's Expectations may be modified at any time by publication at the website address above and general mailing to its suppliers and contractors at the address contained in Company's supplier and contractor database.  The most current publication of Company's Expectations shall apply to this Article.



**CONTRACT PART III – GENERAL TERMS – STANDARD**

Client Name: US ARMY SUSTAINMENT COMMAND                 Contract No.: L4CP-005-90-K10327
Project Name: LOGCAP IV
Project Location: Afghanistan AOR

**48.0    INTERPRETATION**

Headings and titles of Articles, Sections, Subsections paragraphs or other subparts of this Contract are for convenience of reference only and shall not be considered in interpreting the text of this Contract. No provision in this Contract is to be interpreted for or against any party because that party or its counsel drafted such provision.

**49.0    SURVIVAL**

The provisions of this Contract which by their nature are intended to survive the termination, cancellation, completion or expiration of this Contract shall continue as valid and enforceable obligations of the parties notwithstanding any such termination, cancellation, completion or expiration.

**50.0    TRIAL**

Contractor hereby knowingly, voluntarily and intentionally waives (to the extent permitted by applicable law) any right it may have to a trial by jury of any dispute arising under or relating in any way to this Contract and agrees that any such dispute may, at Company's option, be tried before a judge sitting without a jury.

**51.0    EXPORT AUTHORIZATIONS**

Contractor agrees to comply with all applicable export and re-export control laws and regulations, including but not limited to United States Export Administration Regulations (EAR) administered by the Bureau of Industry and Security, U.S. Department of Commerce, trade and economic sanctions regulations administered by the Office of Foreign Assets Control (OFAC), U.S. Department of Treasury, the International Traffic in Arms Regulations (ITAR), Arms Control Export Act, and United States Munitions List (USML) administered by Directorate of Defense Trade Controls, Bureau of Political-Military Affairs of the U.S. Department of State, and any other export authorities identified in Supplement 3 to Part 730 of the EAR.

Contractor shall accurately identify in writing to Company, within thirty (30) calendar days after issuance of this Contract, those goods, services and technologies for which an export license or other regulatory approval is required and shall provide accurate export classification and licensing information necessary for supporting export documents, including but not limited to (as applicable) the appropriate Export Control Classification Numbers (ECCN), an indication of the applicability or availability of license exceptions or exemptions, and all pertinent technical data, drawings, brochures, technical expertise, or other relevant information as deemed necessary by Company. Contractor shall obtain any required license or other regulatory approval required.

**END OF PART III – GENERAL TERMS – STANDARD**