**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Timothy Tangen,<br><br>　　　　　　　　　　*Plaintiff*,<br><br>　　　v.<br><br>Fluor Intercontinental, Inc.; Fluor Government Group International, Inc.; and Alliance Project Services, Inc.,<br><br>　　　　　　　　　　*Defendants*. | C.A. No.: 6:21-cv-00335-BHH |

## <u>PLAINTIFF TIMOTHY TANGEN'S RESPONSE IN OPPOSITION TO FLUOR'S MOTION TO DISMISS</u>

Defendants Fluor Intercontinental, Inc. and Fluor Government Group International, Inc. (collectively, "Fluor") have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asking this Court to dismiss the Complaint filed by Plaintiff Timothy Tangen. (ECF No. 14.) Fluor contends the Court should dismiss the Complaint because Tangen's case is preempted due to the Federal Tort Claims Act's "combatant activities" exception, the U.S. Military will refuse to permit the use of necessary classified information in this case, and Tangen lacks standing as a third-party beneficiary to assert his breach of contract claim. (*See* ECF No. 14-1, at 2–6.) Respectfully, the Court should reject all of these arguments and allow Tangen's case to proceed.

As an initial matter, Fluor has submitted extrinsic materials related to its argument that the "combatant activities" exception to the Federal Tort Claims Act applies, and it "assumes" the Court will convert the motion to one for summary judgment. (*Id.* at 22 & 22 n.1.) The Court should deny the motion based on combatant-activities preemption under 28 U.S.C. § 2680(j) because:

- Conversion to a summary judgment motion is improper because Tangen has not had a reasonable opportunity to obtain discovery on the merits;

1

- Combatant-activities preemption under 28 U.S.C. § 2680(j) is an affirmative defense that Fluor has not pled; and

- In any event, Fluor has not conclusively established that Tangen's claims arise out of "combatant activities" "during time of war."

This Court should likewise deny Fluor's motion to dismiss based on the state-secret doctrine and classified information because the motion is premature. The United States has not yet raised state secrets or classified information as an issue in this case, and Fluor's argument at this point is entirely speculative.

Finally, this Court should deny Fluor's motion to dismiss Tangen's breach-of-contract claim because:

- Whether the contracting parties intended Tangen to be a beneficiary of the LOGCAP IV contract is a fact-sensitive question that must be decided in light of all relevant evidence. By its own design, Fluor has not come close to producing any relevant evidence bearing on Tangen's beneficiary status. Thus, the fact issue before the Court cannot be determined at this stage and Fluor's motion must be denied.

- Even without the benefit of Fluor's internal documents, which Tangen requested nearly two years ago, there is ample evidence demonstrating that Fluor and the government intended to benefit Tangen under the contract.

- Tangen's status as an intended beneficiary under the LOGCAP IV contract was more than sufficiently pled in Tangen's Complaint.

## BACKGROUND

On Veterans Day, November 12, 2016, Ahmad Nayeb detonated a bomb at the Bagram Air Base in Afghanistan. (ECF No. 1, ¶¶ 1, 8–13, 43.) As a result of the bombing, five men were killed (in addition to the bomber) and seventeen soldiers were badly injured. (*Id.* ¶ 18) Plaintiff Timothy

2

Tangen was among the injured. (*Id.* ¶¶ 23–26.) Nayeb was an employee of Alliance Project Services, Inc. ("APS") and was primarily supervised and managed by Fluor. (*Id.* ¶ 2.)  Fluor failed to properly supervise Nayeb, which allowed him to build and set off the bomb. (*Id.* ¶ 55.)

### A.    APS's employee Nayeb—who was being supervised by Fluor—detonated a suicide bomb after sneaking away at the end of his work shift.

On the morning of Saturday, November 12, 2016, more than 200 personnel residing at the Base were gathering for a Veterans Day 5k race set to begin at 6:15 a.m. (ECF No. 1, ¶ 1.) The meeting point for the race was an area called the "Disney Clamshell." (*Id.*) Nayeb was also on the Base that morning, having remained there after his shift. (*Id.*)

Nayeb worked at Fluor's HAZMAT work center within Fluor's Non-Tactical Vehicle Yard at the Base. (*Id.* ¶ 3.) Fluor was required to ensure that Afghan nationals like Nayeb were physically escorted off the Base at the end of their work shifts. (*Id.* ¶ 5.) Nayeb was supposed to have been escorted off the Base by bus at 4:45 a.m. that morning, at the end of his shift, but that did not happen. (*Id.*) On November 12, 2016, instead of being escorted off the Base, Nayeb walked—totally unsupervised by Fluor—toward the assembly point for the Veterans Day 5k race. (*Id.* ¶¶ 6, 8.) Nayeb had previously constructed a vest bomb while he was supposed to be working at Fluor's facility on the Airbase, and he constructed the bomb using Fluor's tools and materials. (*Id.* at ¶¶ 6, 7.)

That morning, a group of soldiers had gathered at the Clamshell, intending to conduct a combative training class. (*Id.* ¶ 9.) Upon arrival, they saw that the 5k run would be taking place, as the organizers were preparing for the event. (*Id.*) The soldiers decided to hold their training at another facility, so they left the Clamshell and began walking alongside Disney Drive towards the alternate location. (*Id.*) Meanwhile, Fluor employees Jerrold Reeves and Peter Provost, both avid runners, left their quarters and headed towards the Clamshell for the 5k run. (*Id.* ¶10.) They also

traveled alongside Disney Drive towards the Clamshell. (*Id.*) At that point, it was early in the morning and it was still dark. (*Id.*)

By all accounts, Nayeb intended to travel to the Clamshell and detonate his bomb among the hundreds of people who would be gathering there later that morning for the race. (*Id.* ¶ 11.) Nayeb attempted to hide between several concrete bunkers along the walkway. (*Id.* ¶ 12.) Unbeknownst to them, the group of people (the soldiers and the Fluor employees) that were headed to the race meeting point were converging on Nayeb. (*Id.*) At some point, Nayeb realized that he would be caught and would not reach his intended target. (*Id.*) Nayeb detonated his bomb approximately 300 meters from the race starting point. (*Id.* ¶ 13.) The soldiers nearby were injured by shrapnel directly from the bomb and shrapnel ricocheting off of the concrete bunkers. (*Id.* ¶ 14.) Four people (two soldiers and the two Fluor employees) died from the explosion that day (in addition to Nayeb), another soldier died from his injuries several weeks later, and seventeen soldiers (including Tangen) suffered severe injuries as a result. (*See id.* ¶¶ 13–19.)

### B. Fluor was required to supervise Nayeb while he was at work and ensure he left the Base when his shift was over.

It was Fluor's responsibility to supervise Nayeb's "day-to-day work" on the base. (*Id.* ¶ 51.) Nayeb's work performance was supervised by Fluor while he was employed at the Bagram Airfield non-tactical vehicle yard. (*Id.* ¶¶ 53–57.)

Nayeb was an APS employee, but he performed work for Fluor and was supervised by Fluor. (*Id.* ¶ 52.) In other words, a Fluor supervisor generally managed and oversaw Nayeb's day-to-day work activity. (*Id.*) While the United States Military controlled the Base as a whole, Fluor had supervision over the Non-Tactical Vehicle Yard, which was supposed to be Nayeb's work area. (*Id.* ¶ 51.) In actuality, Fluor failed to adequately supervise Nayeb, which resulted in him being allowed to roam the Base unsupervised at times and build the bomb in question. (*See id.* ¶¶ 55–56.)

**C.    The Military determined that Fluor failed to comply with its contractual requirements to supervise Nayeb, which allowed him to construct and detonate the bomb.**

After the bombing, the Military conducted an investigation. (*Id.* ¶ 107.) The United States Military determined that Fluor did not comply with the key requirements of its contract, particularly with respect to supervising local national labor and adhering to escort requirements. (*See id.* ¶¶ 108, 109.) The Military's investigation found that Fluor failed to ensure the local national employee was properly escorted. (*Id.*) Additionally, it found that the suicide bomber managed to leave the work facility unescorted, which violated policy. (*Id.*) The Military further determined that Fluor failed to reasonably supervise Nayeb at the non-tactical vehicle yard, where he worked, and over which Fluor had control. (*Id.*) The Military also determined that Fluor's lack of reasonable supervision facilitated Nayeb's ability to freely acquire most of the components necessary for the construction of the suicide vest and the freedom of movement to complete its construction. (*Id.*)

## LEGAL STANDARD

The liberal pleading standards of the Federal Rules of Civil Procedure require a claimant to make only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] Rule 12(b)(6) motion should be granted only in very limited circumstances," and allegations in a complaint should be liberally construed. *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989); *Kiawah Resort Assocs., L.P. v. Akers, Ellis Real Estate & Rentals, LLC*, C.A. No. 2:11-cv-2652-DCN-BM, 2012 WL 485065, at *5–6 (D.S.C. Jan. 27, 2012). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court applied a "plausibility" approach to this standard. *Id.* at 570. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff

5

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, a court must accept as true the facts alleged in a complaint, and it must construe the factual allegations "in the light most favorable to [the] plaintiff." *Schweikert v. Bank of Am.*, 521 F.3d 285, 288 (4th Cir. 2008) (quoting *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062 (4th Cir. 1984)). Rule 12(b)(6) is not intended to test the facts alleged, and Rule 8 "provides for simplicity in pleading that intends to give little more than notice to the defendant of the plaintiff's claims and that defers until after discovery any challenge to those claims insofar as they rely on facts." *Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 170 (4th Cir. 2007).

Further, if the parties present or rely on extrinsic evidence in connection with a Rule 12(b)(6) motion, the court may convert the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, a court may also disregard those materials. *See Hurd v. District of Columbia, Government*, 864 F.3d 671, 678 (D.C. Cir. 2017). Generally, a court should not convert the motion if the non-moving party has not yet had a full and fair opportunity to obtain discovery on the matters presented. *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013); *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005); *Johnson v. Brown*, 372 F. Supp. 2d 501, 504 (E.D. Va. 2005).

## **ARGUMENT**

**I.    The Court should deny Fluor's motion for summary judgment based on 28 U.S.C. § 2680(j).**

Fluor has filed a motion to dismiss based on combatant-activities preemption under 28 U.S.C. § 2680(j). (ECF No. 14-1, at 22–34.) *See generally* 28 U.S.C. § 2680(j) ("The provisions of this chapter and section 1346(b) of this Title shall not apply to . . . . Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.").

Because Fluor has introduced evidence supporting this argument, it "assumes" the Court will convert the motion to dismiss into a motion for summary judgment. (ECF No. 14-1, at 22 n.1.) This Court should deny Fluor's motion based on combatant-activities preemption under 28 U.S.C. § 2680(j) for the following reasons:

- First, Tangen should be permitted to obtain discovery on the merits before being required to respond to a motion for summary judgment;

- Second, combatant-activities preemption under 28 U.S.C. § 2680(j) is an affirmative defense that Fluor has not pled; and

- Third, Fluor has not conclusively established that Tangen's claims arise out of "combatant activities" "during time of war."

### A. Tangen should be permitted a reasonable opportunity to conduct discovery before being required to oppose a motion for summary judgment.

As an initial matter, even though Fluor "assumes" its motion to dismiss will be converted to a motion for summary judgment, conversion at this stage of the litigation would be improper. Before converting a motion to dismiss into a motion for summary judgment, a court "must provide all parties reasonable opportunity to present all material made pertinent to such motion by Rule 56." *Johnson v. Brown*, 372 F. Supp. 2d 501, 504 (E.D. Va. 2005). The Fourth Circuit has explained that "reasonable opportunity includes some indication by the court to all parties that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or to pursue reasonable discovery." *Id.* (quoting *Plante v. Shivar*, 540 F.2d 1233, 1235 (4th Cir. 1976)); *see also Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) ("[A] party must be afforded a 'reasonable opportunity for discovery' before a Rule 12(b)(6) motion may be converted and summary judgment granted." (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 515 (4th Cir. 1974))).

Here, Tangen has not been afforded a "reasonable opportunity for discovery." This case was filed on February 3, 2021, a scheduling order has not been entered, and the parties have not

7

participated in a Fed. Rule Civ. P. 26(f) discovery conference. There has been no discovery to date, and the Rules do not permit discovery under the case's current posture (with the exception of early Rule 34 requests, which have not been served by any party). *See generally* Fed. R. Civ. P. 26(d) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . ."). Before converting the motion and considering the merits of Fluor's summary judgment argument based on combatant activities preemption under 28 U.S.C. § 2680(j), the Court should at least permit Tangen an opportunity to obtain discovery from the defendants.

**B.      Combatant-activities preemption under 28 U.S.C. § 2680(j) is an affirmative defense that Fluor has not pled.**

Fluor's combatant-activities preemption argument is also procedurally deficient in that Fluor has not yet been raised preemption under 28 U.S.C. § 2680(j) as an affirmative defense. It is well-established that combatant-activities preemption under 28 U.S.C. § 2680(j) is an affirmative defense and defendants must plead and prove affirmative defenses. *McManaway v. KBR, Inc.*, 852 F.3d 444, 447 (5th Cir. 2017); *Hsieh v. Consol. Eng'g Servs., Inc.*, 569 F. Supp. 2d 159, 181 (D.D.C. 2008); *cf. Muhammad v. Norfolk S. Ry. Co.*, 925 F.3d 192, 196 (4th Cir. 2019) (noting "[f]ederal preemption is an affirmative defense that a defendant must plead and prove" (quoting *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012))). Fluor has not answered and has not pled combatant-activities preemption under 28 U.S.C. § 2680(j) as an affirmative defense.

A defendant that has failed to plead an affirmative defense in its answer cannot move for summary judgment based on that non-pled defense. Although the requirement can be waived if no objection is made, Tangen objects to the fact that the affirmative defense has not been pled. *See E.E.O.C. v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213, 1217 (D. Md. 1989). Therefore, the Court can (and should) deny Fluor's summary judgment argument based on the affirmative

defense of combatant-activities preemption under 28 U.S.C. § 2680(j) because Fluor has not pled that affirmative defense.

### C. Fluor has not conclusively established that Mr. Tangen's claims arise out of "combatant activities" "during time of war."

Turning to the merits, this Court should deny Fluor's combatant-activities preemption argument because Fluor has not conclusively established the elements of combat-activities preemption as an affirmative defense. *Cf. McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241 F. Supp. 3d 737, 769 (N.D. Tex. 2017) ("A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense . . . ."). Under the combatant-activities exception to the Federal Tort Claims Act's limited waiver of sovereign immunity, the United States will retain immunity from "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j); *see id.* § 2674.

> Relying on the Supreme Court's decision in *Boyle v. United Technologies Corp.*, multiple circuit courts have held that the federal interests inherent in the combatant activities exception conflict with, and consequently can preempt, tort suits against government contractors when those suits arise out of what those courts viewed as combatant activities.

*Norat v. Fluor Intercontinental, Inc.*, C.A. No. 6:14-cv-0603-BHH, 2018 WL 1382666, at *12 (D.S.C. Mar. 19, 2018) (quoting *In re KBR, Inc., Burn Pitt Litig.*, 744 F.3d 326, 346 (4th Cir. 2014)). In order for the exception to apply and preempt Tangen's suit against Fluor, a government contractor, Fluor must conclusively establish that his claims arose out of "combatant activities" "during time of war." *See* 28 U.S.C. § 2680(j).  Fluor's failure to meet that burden requires that its motion be denied.

**1.     Fluor has not conclusively established that they were engaged in "combatant activities."**

The Fourth Circuit Court of Appeals has adopted the following test for whether an actor was engaged in "combatant activities" for purposes of preemption under § 2680(j): "combatant activities 'include not only physical violence, but activities both necessary to and in direct connection with actual hostilities,' such as 'supplying ammunition to fighting vessels in a combat area during war.'" *Burn Pitt*, 744 F.3d at 351 (quoting *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948)). As federal courts have noted, "[a]iding others to swing the sword of battle is certainly a 'combatant activity,' but the act of returning it to a place of safekeeping after all of the fighting is over cannot logically be cataloged as a 'combat activity.'" *Johnson*, 170 F.2d at 770. The words "combatant activities" do not necessarily encompass "all varied activities having an incidental relation to some activity directly connected with previously ended fighting on active war fronts." *McManaway v. KBR, Inc*., 906 F. Supp. 2d 654, 666 (S.D. Tex. 2012) (quoting *Johnson*, 170 F.2d at 770); *see id.* (concluding that "activities to restore water treatment operations at [a water treatment plant] were not 'necessary to or in direct connection with actual hostilities' in Iraq"); *see also Brokaw v. Boeing Co*., 137 F. Supp. 3d 1082, 1105 (N.D. Ill. 2015) (questioning whether the combatant activities doctrine should even apply to private contractors). Here, Tangen is not attempting to use state tort law to hold Fluor responsible for "its combatant activities" because Fluor's negligent supervision and retention of Nayeb did not involve a combat situation. *See Norat*, 2018 WL 1382666, at *12.

The Complaint alleges that Fluor was awarded a contract with the Government to provide support services at Bagram Airbase in Afghanistan, and that Fluor operated and controlled a Non-Tactical Vehicle Yard at the Base. (ECF No. 1, ¶¶ 48–51.) The bomber, who Fluor negligently supervised and retained, was hired to work in the Non-Tactical Vehicle Yard. (*Id.* at ¶ 77.) No

allegations support a conclusion that Fluor's activities with respect to Nayeb (or at the Base more generally) had anything to do with providing support to the military "in direct connection with actual hostilities." *Burn Pit*, 744 F.3d at 351. Additionally, Fluor's description in its Motion demonstrate that Fluor was performing civil support services at the Base: "Fluor provided a range of essential support services, including facilities management, hazardous materials, pest control services, laundry services, food service operations, and motor pool." (ECF No. 14-1, at 8.) None of these activities were "necessary to and in direct connection with actual hostilities," nor did they involve "[a]iding others to swing the sword of battle." *Burn Pitt*, 744 F.3d at 351; *Johnson*, 170 F.2d at 770.

The fact that Nayeb constructed and detonated a bomb does not establish that Fluor's activities qualify as combatant activities. (*See* ECF No. 14-1, at 27.) There are no allegations that Fluor's activities prior to detonation with respect to the Non-Tactical Vehicle Yard were necessary to assist the military in direct connection with actual hostilities. For example, in *Taylor v. Kellogg Brown & Root Services, Inc.*, 2:09-cv-341, 2010 WL 1707530, at *10 (E.D. Va. Apr. 16, 2010), which Fluor cites in its brief, (*see* ECF No. 14-1, at 27), the district court noted that "monthly mortar fire was sustained in the camp" and "artillery was fired from the camp." *Id.* Here, in contrast, there are no allegations that Bagram or its soldiers were actively being attacked by an enemy (or actively fighting an enemy) when Fluor negligently supervised and retained Nayeb.

In sum, Fluor has not conclusively established that its work at Bagram during the relevant period aided others to swing the sword of battle, and Fluor's actions and omission therefore do not qualify as "combatant activities" under 28 U.S.C. § 2680(j).

11

**2.     Fluor has not conclusively established that Nayeb's actions took place during "wartime."**

Combatant-activities preemption only applies to cases arising from activities performed during "wartime." 28 U.S.C. § 2680(j). "During *wartime*, where a private service contractor is *integrated into combatant activities over which the military retains command authority*, a tort claim arising out of the contractor's engagement in such activities shall be preempted." *Norat*, 2018 WL 1382666, at *12 (first emphasis added) (quoting *Burn Pitt*, 744 F.3d at 349). Wartime includes "actual hostilities," "warzones," and other military conflict. *Id.*; *see also Burn Pitt*, 744 F.3d at 351. Although the combatant activities doctrine can apply "even if the absence of a formal declaration of war," there must still be a connection between the contractor's activities and some conflict or "time of war." *Arnold v. United States*, 1998 WL 156318, at *2 (5th Cir. 1998) (citing *Koohi v. United States*, 976 F.2d 1328, 1333–34 (9th Cir. 1992)). For example, "[t]he Persian Gulf conflict constituted a 'time of war' within [§ 2680(j)], when the United States armed forced marched into Kuwait and then Iraq." *Id.*

Here, the explosion at issue occurred on November 12, 2016 at Bagram Airfield, near Kabul, Afghanistan. The fact that the explosion occurred on a military base in Afghanistan does not, in and of itself, conclusively establish that it was a "time of war." As the party seeking to establish combatant activities preemption, the burden is on Fluor to make a sufficient showing, yet Fluor has not offered any argument or evidence that the relevant time and place qualified as wartime. (*See* ECF No. 14-1, at 26–34.) Instead, Fluor assumes that simply because a bomb exploded, it was necessarily engaged in "warzone activities." (*Id.* at 26–28.) That is not sufficient to establish that Bagram in November 2016 was part of a warzone.

12

**II.    The Court should deny Fluor's motion to dismiss based its "classified information" defense.**

Fluor also seeks to dismiss the Complaint based on the state-secret doctrine and the possibility that classified information will be needed. (ECF No. 14-1, at 34–43.) The "state secrets doctrine" "embodies an evidentiary 'privilege which protects military and state secrets' from disclosure in judicial proceedings." *Sterling v. Tenet*, 416 F.3d 338, 341 (4th Cir. 2005) (quoting *United States v. Reynolds*, 345 U.S. 1, 7 (1953)). This Court should deny the motion because it is premature—until the United States actually resists discovery in this case based on alleged state secrets, this issue is not ripe for determination.

Fluor's argument is premature and speculative at this point because the Military is not a party and has not yet raised either the state-secret doctrine or refused to provide classified information in this lawsuit. Even though the Military has declined to provide certain documents and raised certain objections in depositions that have occurred in other proceedings, this case is still in its infancy. No scheduling order has been entered and no discovery has been exchanged.

Additionally, unlike the cases Fluor relies on, here neither the United States nor any branch of the Military has asked the Court to dismiss this case based on the state-secret doctrine. Indeed, most of the cases Fluor relies on were suits against the United States Government or government officials wherein the Government raised the state-secret doctrine as a defense. *See Sterling v. Tenet*, 416 F.3d 338, 341–42 (4th Cir. 2005) (suit against CIA director and the CIA invoked the state secrets doctrine); *Kasza v. Browner*, 133 F.3d 1159, 1163–64 (9th Cir. 1998) (suit against U.S. EPA administrator); *Halkin v. Helms*, 598 F.2d 1, 3–4 (D.C. Cir. 1978) (suit against U.S. Secretary of Defense and others); *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1362 (4th Cir. 1975) (suit against the Director of the CIA and the Secretary of State). In the cases against private companies, the Government has either raised the issue directly in court or resisted discovery based

on state secrets. *See, e.g.*, *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 269 (4th Cir. 1980); *White v. Raytheon Co.*, No. 07-10222-RGS, 2008 WL 5273290, at \*5 (D. Mass. Dec. 17, 2008). For example, in *Farnsworth Cannon, Inc. v. Grimes*, even though the suit was against a private company, the United States Government raised the state-secret doctrine and provided a classified affidavit from the Secretary of the Navy outlining the state secrets involved. *Farnsworth Cannon*, 635 F.2d at 269. Here, only Fluor has raised this issue to the Court.

Fluor argues that the United States does not have to formally invoke the state-secret privilege. (ECF No. 14-1, at 46 n.26.) While a particular kind of invocation may not be needed in all cases, there must be sufficient grounds for the Court to determine whether the United States is claiming that the information sought contains state secrets. Fluor relies on the Supreme Court's decision in *Tenet v. Doe* to support its argument that no "formal assertion of state secrets" is needed. *Tenet v. Doe*, 544 U.S. 1 (2005). But the *Tenet* Court based its ruling on "the longstanding rule" that prohibits "suits against the Government based on covert espionage agreements." *Id.* at 3. The Supreme Court ruled that the United States did not have to formally raise the state-secret doctrine in that kind of case because "requiring the Government to invoke the privilege on a case-by-case basis risks the perception that it is either confirming or denying relationships with individual plaintiffs." *Id.* at 11. That is not the situation here, which involves an incident at a U.S. military base and not covert spies. This Court should defer ruling on the state-secret doctrine until the United States actually raises the issue, which may or may not occur.

Additionally, as this Court previously ruled in the *Hencely* case, a related matter, (*see* ECF No. 3, at 2), South Carolina law precludes the consideration of any negligence on the part of the U.S. Army in this case. *Hencely v. Fluor Corp., Inc.*, 6:19-CV-00489-BHH, 2020 WL 2838687, at \*14 (D.S.C. June 1, 2020). This Court explained that because "the United States is immune from

14

suit," "as a matter of South Carolina law [the Government] cannot be found to be the proximate cause of Plaintiff's injuries, so no evaluation of military decisions by the Court is required." *Id.* at \*14. Therefore, "no evaluation of the reasonableness of military decisions is required." *Id.* The same reasoning applies here. Because there is no need to inquire into secret or confidential issues regarding the U.S. Army and what it did or did not do, even if the United States raised the state-secret doctrine, it would not require dismissal of Tangen's claims. *See DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327, 334 (4th Cir. 2001) (holding the fact that state secrets were involved did not necessarily require dismissal).

This Court should deny Fluor's motion to dismiss based on the state-secret doctrine and classified information as premature. The Court can revisit the issue if the United States raises the state-secret doctrine after the parties commence discovery.

**III.     Tangen has adequately pled a claim for breach of contract.**

**A.     Whether Tangen was an intended third-party beneficiary is a mixed question of law *and fact*, which generally must be decided in light of all relevant evidence and after an opportunity for discovery.**

"[T]he inquiry into third-party beneficiary status is fact sensitive and not ordinarily ripe for resolution at the motion-to-dismiss stage." *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 709 (4th Cir. 2007). That is because the "question of whether a plaintiff is a third-party beneficiary to a contract with the United States is a mixed question of law *and fact*." *Knight v. United States*, 65 F. App'x 286, 289 (Fed. Cir. 2003) (emphasis added); *see also Glass v. United States*, 258 F.3d 1349, 1353 (Fed. Cir. 2001); *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005); *see generally Beverly v. Grand Strand Reg'l Med. Ctr., LLC*, 429 S.C. 502, 507–08, 839 S.E.2d 468, 470–71 (Ct. App. 2020) ("Under South Carolina law, it is well settled that a nonparty may enforce contractual terms that intentionally provide her direct benefits. 'The presumption that [a] contract is not enforceable by [a nonparty] may be overcome by showing he

was intended to be the direct beneficiary of the contract.'" (alterations in original) (citations omitted) (quoting *Touchberry v. City of Florence*, 295 S.C. 47, 48–49, 367 S.E.2d 149, 150 (1988))).

Here, Tangen's status as an intended third-party beneficiary under the contract is a fact-sensitive question that must be decided considering all relevant evidence. To get to that point, Tangen must first be allowed discovery. Only then can Tangen's beneficiary status be properly determined. Fluor's motion should accordingly be denied.

**B.    The LOGCAP IV contract, the LOGCAP program, the circumstances surrounding the formation of the contract, and other objective evidence all demonstrate that Tangen was an intended beneficiary.**

The proper test for determining third-party beneficiary status is whether the contract reflects the express or implied intention of the parties to benefit the third party. *Schuerman v. United States*, 30 Fed. Cl. 420, 433 (Fed. Cl. 1994). To be an intended third-party beneficiary under the LOGCAP IV contract, Tangen "need not be specifically identified in the contract" so long as he "fall[s] within a class clearly intended to be benefited thereby." *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997). "When the intent to benefit the third party is not expressly stated in the contract, evidence thereof may be adduced." *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001).

The intent of the contracting parties may be adduced in many ways. "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right to him." *Montana*, 124 F.3d at 1273; *see also Lea v. United States*, 592 F. App'x 930, 934 (Fed. Cir. 2014) ("[T]he contracting parties' intent to create [third-party beneficiary] status can generally be inferred if the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him."). The Court may also "inquire into the governing statute and its purpose" to the extent that "the contract implements a statutory enactment." *Roedler,* 255 F.3d at 1352. Intent may also be adduced by "looking beyond

16

the contract to the circumstances surrounding its formation" or through "other objective evidence." *United Kingdom Ministry of Defence v. Trimble Navigation Ltd*., 422 F.3d 165, 173 (4th Cir. 2005); *see also Flexfab, L.L.C.*, 424 F.3d at 1262.

Tangen's status as a third-party beneficiary is clear from both the express and implied intent of the parties. *First*, the express terms of the LOGCAP IV contract demonstrate that the soldiers at Bagram Airfield were intended to directly benefit from the contract. The contract sets forth that Fluor's obligations to execute logistics operations would be "in support of several dozens to tens of thousands of *troops*." (ECF No. 14-29, at 4.) The contract also provides that Fluor is responsible for lending "support in all types of environments providing combat support and combat service support services." (*Id.* at 17.) "Combat Support Services" include base camp services provided *directly to soldiers*, including but not limited to services such as food service; clothing exchange and bath; waste management; and morale, welfare, and recreation services. (*Id.*)

*Second*, the stated purpose of the LOGCAP program illustrates that deployed soldiers such as Tangen are within the class of intended third-party beneficiaries to such contracts. The LOGCAP program was established by Army Regulation 700-137, which states that the purpose of the LOGCAP program as a whole is to "execute contracted support services . . . *for deployed forces performing missions*." AR 700-137 ¶ 1-1; s*ee also* AR 700-137 ¶ 6-3 ("LOGCAP is primarily designed to support deployed forces . . . ."); U.S. Army Materiel Command RESOURCE GUIDE, at 43 (2019) ("LOGCAP provides support services to *deployed Soldiers*."), available online at: https://www.amc.army.mil/Portals/9/Documents/AMC%20Publications/FINAL_ResourceGuide_2019-2020.pdf.

*Third*, the circumstances surrounding the formation of Fluor's LOGCAP IV contract with the U.S. Government and other objective evidence also demonstrate that deployed soldiers such

17

as Tangen are within the class of intended third-party beneficiaries.  Fluor's own statements illustrate its intent to directly benefit deployed "soldiers" and "troops" such as Tangen. For example, on its website, Fluor writes that the "U.S. Army's Logistics Civil Augmentation Program IV (LOGCAP) provides contractor support and logistics work *for U.S. military troops* stationed in Afghanistan, Iraq, and Kuwait. *As a LOGCAP prime contractor, Fluor is proud to support U.S. military personnel* in various contingency environments around the globe." Fluor Corp., *LOGCAP IV Jobs: A Challenging World Calls for Adventurous People*, https://www.fluor.com/careers/logcap-iv-opportunities (last visited April 22, 2021).

On the same webpage, Fluor's employees discuss Fluor's role under the LOGCAP IV contract in several videos. Fluor's "Project Controls Specialist" admits "LOGCAP is [Fluor's] support contract with the U.S. Army.  *It's basically contractors, civilians supporting the troops* that are literally on the front line of the battlefield." Additionally, a "Senior Manager" for Fluor admits "LOGCAP is a government contract [providing] base support operation, life support operations *to the soldiers* fighting the battle in Afghanistan and Iraq." The "Deputy Director" for Fluor's Afghanistan operations likewise states that:

> *the LOGCAP program* is kind of unique [because] it's a project that instead of building buildings and brick and mortar *it gives [Fluor] an opportunity to serve the war fighters* who are protecting our nation's freedoms. There is a certain amount of pride associated with that that's maybe more so than we would have with building a plant or building a highway.

(emphasis added). Clearly, Fluor intended Tangen to be a direct beneficiary under the contract.

Altogether, the LOGCAP IV contract, the unambiguous purpose and design of the LOGCAP program, and Fluor's own statements show that deployed soldiers at Bagram Airfield, including Tangen, were within the class of individuals intended to directly benefit under the contract. Furthermore, in this instance, the contracting parties' intent to benefit Tangen should be

18

inferred because it would be perfectly reasonable for Tangen to rely on the promises in the contract as manifesting Fluor's and the U.S. Government's intent to confer rights and benefits upon him. Additionally, Tangen should be permitted to conduct discovery on the issue of his status as an intended beneficiary.

Fluor relies heavily in its brief upon *Secretary of State for Defence v. Trimble Navigation Ltd.*, where the Fourth Circuit, in a split decision, dismissed a *foreign government's* breach of contract claim against a military contractor. 484 F.3d at 702. However, there are several important differences between *Trimble Navigation* and the case at hand. That case involved two separate contracts between (1) the contractor and the United States and (2) the United States and the foreign government, and the Fourth Circuit's holding was based on the structure and intent of the Foreign Military Sales program to reflect U.S. national security interests. *Id.* at 703, 707. Further, the court's discussion of the foreign government's status as an intended beneficiary is focused on the United States Government's demonstrated intent to provide the foreign government benefits through its separate agreement. *Id.* at 708. Surely, a United States soldier is more likely to be an intended beneficiary of a U.S. government contract with a military contractor to provide services directly to soldiers than a foreign government, which may receive some incidental benefits of a government contract.

Moreover, the court in *Trimble Navigation* expressly recognized that the case was an "exception to the general rule" and that "the inquiry into third-party beneficiary status is fact sensitive and not ordinarily ripe for resolution at the motion-to-dismiss stage." *Id.* at 709. *Trimble Navigation* was an "exception" because (1) all relevant documents were properly before the court and (2) it was clear that a finding of third-party beneficiary status in favor of the foreign government would have been directly contrary to the Arms Export Control Act and the policy of the United States.

*Id.* at 707, 709. That is certainly *not* the case here. As detailed above, all relevant documents are *not* before the Court, and confirming Tangen's status as a third-party beneficiary to the LOGCAP contract would not be contrary to any applicable act or policy of the United States.

Fluor also briefly attempts to liken this case to *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 2000), to support its argument that neither Fluor nor the Government supposedly intended to benefit any third parties under the contract. (*See* ECF No. 14-1, at 45.) But *Klamath* was not decided until the summary judgment phase after discovery, and the court in *Klamath* did not even discuss the allegations of those plaintiffs' complaint at all in its discussion of third-party beneficiary status. 204 F.3d at 1210–12. Further, the facts before this Court regarding the parties' intent to benefit soldiers such as Tangen already far exceed the facts before the Court in *Klamath*, even though there has not yet been any discovery. Fluor has not produced any internal documents bearing on Fluor's and the Government's intent to benefit third parties.

Additionally, Fluor makes many unsupported and inaccurate statements throughout its brief. For example, Fluor vaguely contends the LOGCAP IV Contract contains "language definitively rejecting" Tangen's status as a third-party beneficiary. (ECF No. 14-1, at 49.) Yet Fluor does not quote the specific language in its brief. Had Fluor or the Government intended to preclude third party beneficiaries, the parties could have included an express disclaimer provision in the contract. Fluor is a sophisticated multi-billion-dollar, multi-national corporation, and express disclaimers of third-party beneficiaries are common in corporate contracts. If the U.S. Government had been open to expressly disclaiming soldiers as third-party beneficiaries in the contract, surely Fluor would (and could) have negotiated that term into the contract. *Cf. Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*, No. CV 20-784, 2020 WL 4201661, at \*5 & n.5 (D.D.C. July 22, 2020) (denying motion to dismiss and noting "where the terms of the contract do

not expressly resolve the parties' intent" and "[n]othing in the contract precludes the existence of third-party beneficiaries," then whether the plaintiff was an intended beneficiary should be determined "at a later stage in the litigation" and in light of all the relevant evidence).

Fluor also contends that a finding of third-party beneficiary status in the "context of this suit" would be "especially significant" and have "profound implications" such that the "government would be besieged with breach-of-contract suits by potentially thousands of non- parties" and could "potentially . . . eviscerate *Feres v. United Sates*." (ECF No. 14-1, at 46 n.33.) Fluor's sky-is-falling protestations are wholly baseless, *especially* in the "context of this suit." To be "besieged" with thousands of breach-of-contract suits, the Government would first have to breach those contracts. Nobody makes such a claim. Tangen did not sue or even allege that the Government breached the LOGCAP IV contract. Instead, Tangen alleges that *Fluor* breached the contract. In addition, the Military cannot be "besieged" from *any* suit from soldiers because the Supreme Court has made it clear that individual soldiers like Tangen are not legally allowed to sue the Army for injuries suffered while on active duty.  Thus, Fluor's "parade of horribles" argument is neither applicable nor convincing in the context of this case.

This Court should reject Fluor's arguments. The express language in the LOGCAP IV contract, the relevant statutory enactments, and Fluor's own admissions make clear that Tangen, a soldier among the troops at Bagram Airfield, was intended to directly benefit from the contract and is a third-party beneficiary. Tangen respectfully requests that Fluor's motion be denied.

### C.     Tangen's  third-party  beneficiary status  been sufficiently pled.

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds on which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing

that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). "A complaint, in other words, need not allege *all* that a plaintiff must eventually prove." *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 13 (D.D.C. 2002) (emphasis added).

Tangen's breach of contract claim satisfies the federal pleading requirements and provides Fluor with ample notice as to the grounds upon which the claim rests. The Complaint addresses Fluor's obligations under the LOGCAP IV contract and whom they were intended to benefit, and therefore, sufficiently pleads Tangen's status as an intended third-party beneficiary. (*See* ECF No. 1, ¶¶ 122–127.) The Complaint alleges that Fluor entered into a contract with the U.S. Government and agreed to abide by the terms of the LOGCAP IV (including the Statements of Work, Performance Work Statements, Task Orders, and Letters of Technical Direction issued under LOGCAP IV) and the Bagram Airfield Base Policies (collectively referred to as the "LOGCAP Materials"). (*Id.* ¶ 44–47.) Specifically, the Complaint alleges: "The LOGCAP Materials constitute contracts with the U.S. government and set forth the parameters within which Fluor was required to perform." (*Id.* ¶ 47.)

Tangen's Complaint also identifies services Fluor promised to provide, including its agreement under Task Order 005, part of the LOGCAP Materials, to provide "basic life support for the eastern and northern sections of the Islamic Republic of Afghanistan." (*Id.* ¶ 48.) The Complaint further includes an explanation of what the LOGCAP Program is and what it does, specifically referencing Army Regulation 700-137 (which directs that the stated Purpose of the LOGCAP program is to "execute contracted support services . . . for deployed forces performing missions"). (*Id.* ¶ 44.) And the Complaint expressly alleges that the LOGCAP Materials were intended to

benefit U.S. soldiers such as Tangen. (*Id.* ¶¶ 125, 127.)

In sum, the Complaint sufficiently pleads that Tangen was an intended third-party beneficiary. It does much more than "tender[] naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Fluor is incorrect that the Complaint only sets forth legal conclusions because the Complaint makes allegations as to the parties' intent, which presents a question of fact. *See Bear Brand Hosiery Co. v. Tights, Inc.*, 605 F.2d 723, 726 (4th Cir. 1979). (*See* ECF No. 1 ¶ 125 ("The LOGCAP Materials were intended to directly benefit U.S. soldiers at Bagram Airfield, including Plaintiff.").)

When construed in the light most favorable to the plaintiff, the Complaint satisfies the requirement to set forth a short and plain statement of the breach of contract claim and the facts supporting that claim. In the alternative, and to the extent the Court agrees with Fluor that the Complaint does not satisfy the federal pleading requirements, Plaintiff respectfully requests that, rather than dismissing the claim, the Court permit Plaintiff the opportunity to replead.

**<u>CONCLUSION</u>**

Based on the foregoing, Plaintiff respectfully submits that this Court should deny Fluor's Motion to Dismiss in its entirety.

*Signature Page Follows*

Respectfully submitted,

_/s/ John B. White, Jr._

John B. White, Jr. (Fed. ID No. 04619)
Marghretta H. Shisko (Fed. ID No. 11601)
Griffin L. Lynch (Fed. ID No. 09580)
HARRISON WHITE, P.C.
178 West Main Street
P.O. Box 3547 (29304)
Spartanburg, SC 29306
(864) 585-5100
jwhite@spartanlaw.com
mshisko@spartanlaw.com
glynch@spartanlaw.com


Anthony G. Buzbee (State Bar No. 24001820)*
Peter K. Taaffe (State Bar No. 24003029)*
THE BUZBEE LAW FIRM
JP Morgan Chase Tower
600 Travis, Ste. 7300
Houston, Texas 77002
Telephone:  (713) 223-5393
Facsimile: (713) 223-5909
tbuzbee@txattorneys.com
ptaffe@txattorneys.com

*Admitted Pro Hac Vice


**ATTORNEYS FOR PLAINTIFF**

April 26, 2021

Spartanburg, SC

24