**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Timothy Tangen,<br><br>        Plaintiff,<br><br>     v.<br><br>Fluor Intercontinental, Inc. and Fluor<br>Government Group International, Inc.,<br><br>        Defendants. | C/A No.: 6:21-cv-00335-JD |

**REPLY IN SUPPORT OF DEFENDANTS
FLUOR INTERCONTINENTAL, INC. AND FLUOR GOVERNMENT GROUP
INTERNATIONAL, INC.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT...................................................................................................................... 3

I.      PLAINTIFF'S CLAIMS ARE PREEMPTED BECAUSE THIS LAWSUIT
        PLAINLY ARISES OUT OF "COMBATANT ACTIVITIES" AND "ACTUAL
        HOSTILITIES" INSIDE THE AFGHANISTAN THEATER OF WAR. .......................... 3

II.     PLAINTIFF'S PROCEDURAL ARGUMENTS RUN CONTRARY TO THE
        PLAIN LANGUAGE OF THE FEDERAL RULES. ......................................................... 5

III.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS BECAUSE THE
        ARMY HAS REFUSED TO RELEASE ESSENTIAL CLASSIFIED
        INFORMATION.............................................................................................................. 7

        A.      The Army *Has* Refused to Provide Classified Information................................... 8

        B.      The Classified Information Is Highly Relevant. ...................................................... 9

        C.      Formal Invocation of the State Secrets Doctrine Is Unnecessary......................... 10

IV.     THE COURT SHOULD DISMISS PLAINTIFF'S BREACH-OF-CONTRACT
        CLAIM BECAUSE HE IS NOT AN INTENDED THIRD-PARTY
        BENEFICIARY TO THE LOGCAP IV CONTRACT. .................................................. 10

        A.      Plaintiff Failed to Allege Essential Elements of Third-Party Beneficiary
                Status.................................................................................................................... 10

        B.      Plaintiff Cannot Cure His Pleading Deficiencies By Selectively Quoting
                Generic Contract Provisions and Regulations. .................................................... 12

        C.      Plaintiff's Argument Is Contrary to the Veterans' Benefits Act and Related
                Supreme Court Precedent. ................................................................................... 14

CONCLUSION................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cash v. United States*,
    No. 14-510C, 2015 WL 194353 (Fed. Cl. Jan. 13, 2015)..........................................................13

*Clayton v. Nationwide Mut. Ins. Co.*,
    260 F. Supp. 3d 514 (D.S.C. 2017).....................................................................................5, 6

*Evans v. Techs. Appls. & Serv. Co.*,
    80 F.3d 954 (4th Cir. 1996) ...................................................................................................5

*Flexfab, L.L.C. v. United States*,
    424 F.3d 1254 (Fed. Cir. 2005)......................................................................................11, 12

*Gen. Dynamics v. United States*,
    563 U.S. 478 (2011)...............................................................................................................7

*Glass v. United States*,
    258 F.3d 1349 (Fed. Cir. 2001)......................................................................................13, 14

*Harris v. Kellogg Brown & Root Servs., Inc.*,
    724 F.3d 458 (3d Cir. 2013)...................................................................................................6

*Harrods Ltd. v. Sixty Internet Domain Names*,
    302 F. 3d 214 (4th Cir. 2002) ...............................................................................................5

*Hatzlachh Supply Co. v. United States*,
    444 U.S. 460 (1980).............................................................................................................15

*Hencely v. Fluor Corp.*,
    No. 6:19-cv-00489-BHH, 2020 WL 2838687 (D.S.C. June 1, 2020) .....................................7

*In re KBR, Inc., Burn Pit Litig.*,
    744 F.3d 326 (4th Cir. 2014) ............................................................................................3, 4

*KBR, Inc. v. Metzgar*,
    No. 13-1241, 2014 WL 7185601 (U.S. Dec. 16, 2014).......................................................4, 5

*Loquasto v. Fluor Corp.*,
    No. 3:19-CV-1455-B, 2021 WL 75550 (N.D. Tex. Jan. 8, 2021) ...................................1, 2, 9

*Martin v. Halliburton*,
    618 F.3d 476 (5th Cir. 2010) ................................................................................................6

*Mathis v. GEO Grp., Inc.*,
  No. 2:08-CT-21-D, 2009 WL 10736631 (E.D.N.C. Nov. 9, 2009).........................................13

*Sallee v. United States*,
  41 Fed. Cl. 509 (1998) ...........................................................................................................14

*Stencel Aero Eng'g Corp. v. United States*,
  431 U.S. 666 (1977)................................................................................................................15

*Stokes v. Westinghouse Savannah River Co.*,
  206 F.3d 420 (4th Cir. 2000) .................................................................................................14

*United States v. Johnson*,
  481 U.S. 681 (1987)................................................................................................................15

*Zuckerbraun v. Gen. Dynamics Corp.*,
  935 F.2d 544 (2d Cir. 1991).....................................................................................................9

**Statutes**

28 U.S.C. § 2680(j) ....................................................................................................................5, 6

38 U.S.C. §§ 1110, 1131.............................................................................................................14

Veterans' Benefits Act.......................................................................................................2, 14, 15

iii

## INTRODUCTION

This lawsuit arises out of an attack by a foreign enemy on U.S. military forces abroad. In November 2016, Ahmad Nayeb, a Taliban operative, detonated a suicide bomb inside the secure perimeter of the U.S. military base at Bagram Airfield, Afghanistan. Plaintiff Timothy Tangen alleges he was injured in the enemy attack.

Importantly, this is not new litigation. Plaintiff Tangen's complaint was filed in February 2021. However, in May 2019, counsel for Plaintiff filed a separate action in Texas on behalf of dozens of other plaintiffs arising out of the exact same attack—the *Loquasto* case.[1] During the *Loquasto* litigation, Fluor asserted the same "combatant activities" preemption defense that is at issue in this motion. During the *Loquasto* litigation, Plaintiff's counsel obtained document discovery from Fluor and took the depositions of three of the same witnesses relied on by Fluor in this motion. After obtaining this discovery, Plaintiff's counsel never argued in *Loquasto* that **any** additional discovery was needed in order to oppose Fluor's "combatant activities" preemption defense. In January 2021, the Northern District of Texas dismissed *Loquasto*. *Loquasto v. Fluor Corp.*, No. 3:19-CV-1455-B, 2021 WL 75550 (N.D. Tex. Jan. 8, 2021). Just a few weeks later, Plaintiff's counsel filed this action on behalf of Tangen in South Carolina. Despite this history, including counsel's conspicuous filing of this case shortly after the *Loquasto* dismissal, nowhere in Plaintiff's opposition does he mention that: (i) his counsel already litigated claims arising out of the identical Taliban attack; (ii) his counsel already obtained discovery from Fluor regarding Fluor's "combatant activities" preemption defense; and (iii) his counsel never complained in that prior litigation that the discovery provided was insufficient.

Rather than disclose these facts, Plaintiff offers several facially implausible and legally

---

[1] Pls.' Original Pet., *Loquasto v. Fluor Corp.*, No. 3:19-CV-1455-B (N.D. Tex. June 19, 2019), ECF 1-3.

1

unsound arguments. The Court should reject these arguments and grant Fluor's motion.

*First*, Plaintiff asserts only two non-procedural arguments as to why Fluor has not met the Fourth Circuit's broad "combatant activities" preemption test, arguing that this case does not involve either (i) "combatant activities" or (ii) "actual hostilities." *See* ECF 46 at 9-12. These contentions belie reality. This case arises out of an enemy attack on an overseas U.S. military base inside a theater of war. Plaintiff's own complaint alleges that his injuries occurred after the Taliban bomber "***attacked the Army and detonated the bomb at Bagram***." *See* ECF 1 ¶ 90 (emphasis added). This lawsuit plainly meets both requirements for preemption. No discovery will alter that.

*Second*, Plaintiff argues the Army has not yet refused to release classified information in this case, and thus that basis for dismissal is not yet ripe for decision. *See* ECF 46 at 13-15. That is false. The Army refused to release the vast majority of its investigative report and supporting materials, and the Army shut down discovery in related matters, as Plaintiff's counsel is aware. The classified information being withheld concerns Army activities and decisions that "would be front and center at trial" in this matter, as the recent *Loquasto* decision confirmed.[2] This issue is ripe, the classified information is essential, and its absence warrants dismissal.

*Third*, Plaintiff is not a third-party beneficiary to the contract between Fluor and the United States; he has not pleaded essential elements of such status; and, discovery is not needed to establish his lack of standing. In particular, Plaintiff did not plead any facts, and there are no facts, supporting an intent by the Army contracting officer to confer upon him, as an individual, third-party beneficiary status. Plaintiff's theory—i.e., that every soldier at BAF can sue the United States for breach of contract—is inconsistent with the Veterans' Benefits Act ("VBA") and related Supreme Court precedent, which establish the VBA is his "sole remedy" against the Government.

---

[2] *See Loquasto*, 2021 WL 75550 at *7.

## ARGUMENT

**I.    PLAINTIFF'S CLAIMS ARE PREEMPTED BECAUSE THIS LAWSUIT PLAINLY ARISES OUT OF "COMBATANT ACTIVITIES" AND "ACTUAL HOSTILITIES" INSIDE THE AFGHANISTAN THEATER OF WAR.**

Plaintiff offers only two substantive arguments as two why Fluor has allegedly failed to meet the Fourth Circuit's broad test for "combatant activities" preemption: (i) He claims this suit does not involve "combatant activities," ECF 46 at 10-11; and (ii) He claims the conduct at issue did not take place during "actual hostilities" or "military conflict," *id.* at 12. Both arguments fail.

*First*, Plaintiff claims that this ***Taliban-bomber lawsuit*** does not implicate any "combatant activities" because "Fluor's negligent supervision and retention of Nayeb did not involve a combat situation." ECF 46 at 10. That contention is facially absurd because the core allegation in Plaintiff's complaint is that Fluor's purported negligence caused a deadly attack by an enemy combatant on an overseas U.S. military base. *See*, *e.g.*, ECF 1 ¶ 88 ("Defendants' acts and omissions allowed Nayeb to construct and detonate a bomb[.]"); *id.* ¶ 90 ("***Nayeb[] attacked the Army*** and detonated the bomb at Bagram[.]") (emphasis added); *id.* ¶ 113 ("The Fluor Defendants' negligent employment, supervision, entrustment, retention, and control were the direct and proximate cause of Nayeb being able to assemble and detonate the suicide bomb[.]"); *id.* ¶ 132 (alleging Fluor's conduct "enabled the bomber's attack and proximately caused the deaths of five innocent people and the injuries to seventeen innocent people").

Beyond that, the Fourth Circuit has made clear that "combatant activities" are broadly defined and extend well beyond a combat situation. *See In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 351 (4th Cir. 2014) ("*Burn Pit I*"). In *Burn Pit I*, the Fourth Circuit emphasized that "combatant activities" must "extend beyond engagement in physical force" and "encompass conduct and decisions that do not involve actual combat." *Id.* In that case, the Fourth Circuit addressed "waste management and water treatment functions" performed under a LOGCAP

3

contract in Iraq and Afghanistan, and it held that such services "undoubtedly" were "combatant activities." *Id.* The same rationale applies here with respect to Fluor's LOGCAP services. It is undisputed that Fluor provided "essential support services" for the military at a military base that was subject to enemy attack. *See* ECF 14-1 at 8; ECF 46 at 11. As was true in *Burn Pit I*, these LOGCAP services undoubtedly constitute "combatant activities." And, as the U.S. Solicitor General argued in prior LOGCAP-related tort suits, the claims here should be dismissed under the broad preemption rule because "***actions arising out of the Nation's conduct of military operations should not be regulated by tort law***." *See* Br. for the United States as Amicus Curiae, *KBR, Inc. v. Metzgar*, No. 13-1241, 2014 WL 7185601, at \*17 (U.S. Dec. 16, 2014) (emphasis added).

*Second*, Plaintiff somehow claims that an attack by a Taliban enemy did ***not*** take place during "actual hostilities" or "military conflict." ECF 46 at 12. Plaintiff readily acknowledges, as he must, that the "combatant activities" exception applies "even i[n] the absence of a formal declaration of war." *See id.* (citations omitted). Viewed in the context of his own complaint, Plaintiff's claim that Nayeb's attack was something other than "actual hostilities" is hard to fathom. Beyond that, Plaintiff's position is inconsistent with the receipt by numerous soldiers of the Purple Heart, which is earned by members of the armed forces who are "***wounded by an instrument of war in the hands of the enemy***."[3] Suffice to say, it is indisputable that the conduct at issue took place during actual hostilities.

Finally, Plaintiff claims a need for "discovery on the merits." ECF 46 at 1. But Fluor has

---

[3] *See* Army Reg. 600-8-22 (June 25, 2015) at Ch. 2 § 8(f) ("When contemplating an award of this decoration, the key issue that commanders must take into consideration is the degree to which the enemy caused the injury. The fact that the proposed recipient was participating in direct or indirect combat operations is a necessary prerequisite, but is not sole justification for award."); *see also* Military Order of the Purple Heart, https://www.purpleheart.org/About (last visited May 28, 2021) (noting Purple Heart "is specifically a combat decoration").

not moved for summary judgment on the merits. Fluor is not asking the Court to resolve, for example, whether Plaintiff can establish causation or other elements of his claims. The Court need not reach such issues in order to resolve the threshold, case-dispositive preemption issue. And, as to the threshold preemption issue, discovery is not needed to show that this suit arises out of "combatant activities" and "actual hostilities." Therefore, the Court need not permit even limited discovery regarding these issues, as it is plain that such discovery would be futile.[4]

## II.     PLAINTIFF'S PROCEDURAL ARGUMENTS RUN CONTRARY TO THE PLAIN LANGUAGE OF THE FEDERAL RULES.

Plaintiff cites two supposed procedural impediments to the Court granting Fluor's motion, including: (i) discovery has not taken place, *see* ECF 46 at 7-8, and (ii) Fluor has not filed an answer, *id.* at 8. Both arguments fail.

*First,* under Rule 56(d), a party opposing summary judgment[5] on the ground that more discovery is needed must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).[6] A party cannot satisfy Rule 56(d) by offering "mere conclusory assertions that discovery would bring unspecified facts to light." *Clayton*, 260 F. Supp. 3d at 520 (citations omitted). Here, Plaintiff merely claims that

---

[4] Further, Plaintiff's counsel obtained extensive discovery from Fluor on the "combatant activities" preemption defense in the *Loquasto* matter—and did not argue in that case that more discovery was needed in order to oppose Fluor's preemption motion.

[5] Plaintiff concedes that Fluor's "combatant activities" preemption motion will be treated as a summary judgment motion. *See*, *e.g.*, ECF 46 at 6 (referring to "Fluor's motion for summary judgment based on 28 U.S.C. § 2680(j)").

[6] *See also Clayton v. Nationwide Mut. Ins. Co.*, 260 F. Supp. 3d 514, 519 (D.S.C. 2017) (noting that the Fourth Circuit ascribes "great weight" to the Rule 56(d) affidavit); *Evans v. Techs. Appls. & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) ("failure to file [a Rule 56(d) affidavit] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate"); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246 n.19 (4th Cir. 2002) ("[P]arties who ignore [Rule 56(d)'s] affidavit requirement do so at their peril.").

5

"Tangen should be permitted to obtain discovery on the merits[7] before being required to respond to a motion for summary judgment." ECF 46 at 7; *see also id.* at 8 (noting "[t]here has been no discovery to date" and asserting "the Court should at least permit Tangen an opportunity to obtain discovery from the defendants"). These are "conclusory assertion[s]" of "unspecified facts" that fail to satisfy Rule 56(d). *See Clayton*, 260 F. Supp. 3d at 522-23. Moreover, as explained *supra*, no discovery is needed for the Court to reject Plaintiff's only non-procedural challenge to preemption—i.e., his facially absurd claims that no "combatant activities" or "actual hostilities" are involved in this Taliban suicide-bomber case.

*Second*, under the Federal Rules, "a party may file a motion for summary judgment ***at any time*** until 30 days after the close of all discovery." *See* Fed. R. Civ. P. 56(b) (emphasis added). Here, Fluor properly raised its "combatant activities" preemption defense at an early stage of this case, as a Rule 12(b)(6) motion that will be treated as a summary judgment motion. *See*, *e.g.*, *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 464 n.1 (3d Cir. 2013) ("the appropriate procedural device for reviewing the § 2680(j) preemption argument is . . . ***a motion under either Rule 12(b)(6) or for summary judgment***"); *see also Martin v. Halliburton*, 618 F.3d 476, 488 (5th Cir. 2010) ("Because the basis for many of these defenses is a respect for the interests of the Government in military matters, district courts should take care to develop and ***resolve such defenses at an early stage*** while avoiding, to the extent possible, any interference with military prerogatives.") (emphasis added). Plaintiff's argument to the contrary rests on a misreading of a footnote in a single, inapposite district court decision. Plaintiff argues: "*A defendant that has failed to plead an affirmative defense in its answer* cannot move for summary judgment based on that non-pled defense." *See* ECF 46 at 8 (emphasis added) (citing *E.E.O.C. v. Peterson, Howell &*

---

[7] As noted *supra*, Fluor's preemption motion does not address ***the merits*** of Plaintiff's claims.

6

*Heather, Inc.*, 702 F. Supp. 1213, 1217 (D. Md. 1989)). Thus, the only case that Plaintiff cites has no bearing here because it involved a "defendant that ha[d] failed to plead an affirmative defense in its answer" and then later attempted to move for summary judgment based on a defense that was not pled. Here, however, Fluor did not "fail[] to plead an affirmative defense in its answer," because—consistent with the Federal Rules—Fluor has not yet answered. Plaintiff's argument elides this distinction and fails on this basis.

## III.     THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS BECAUSE THE ARMY HAS REFUSED TO RELEASE ESSENTIAL CLASSIFIED INFORMATION.

With respect to classified information, nothing in Plaintiff's opposition alters three unassailable principles. First, if this case proceeded to trial, Fluor would be entitled to present evidence demonstrating that the actions of the U.S. military and/or Nayeb and his Taliban co-conspirators—and *not* Fluor's alleged conduct—caused Plaintiff's injuries. This is true under any potentially-applicable tort law.[8] Second, despite Plaintiff's hollow claims, the United States *has* refused to release a substantial volume of highly-relevant evidence that, by all objective measures, directly bears on the causal role of the U.S. Army and Nayeb's Taliban co-conspirators. Third, as a matter of law, if Fluor's causation defense will be disabled by virtue of the United States' refusal to release classified information, that requires dismissal of this entire suit. *See*, *e.g.*, *Gen. Dynamics v. United States*, 563 U.S. 478, 487 (2011) ("It seems to us unrealistic to separate . . . the claim from the defense, and to allow the former to proceed while the latter is barred.").

Rather than confront this reality, Plaintiff argues "this issue is not ripe for determination" until "the United States actually resists discovery in this case based on alleged state secrets." ECF

---

[8] For example, in the related *Hencely* matter this Court assumed (without conducting a choice-of-law analysis) that South Carolina law would apply, and noted that a factfinder "could find that the actions and decisions for which Fluor blames the Army—and not Fluor's alleged conduct—caused Plaintiff's injuries." *See Hencely v. Fluor Corp.*, No. 6:19-cv-00489-BHH, 2020 WL 2838687, at *14 (D.S.C. June 1, 2020).

46 at 13. Plaintiff's "head in the sand" approach to the missing classified information is unavailing.

### A.     The Army *Has* Refused to Provide Classified Information.

Plaintiff claims that "the Military . . . has not yet . . . refused to provide classified information in this lawsuit." ECF 46 at 13. But Plaintiff knows better, as his own complaint cites the *heavily-redacted*, *unclassified* version of the Army's Regulation 15-6 Report. *See* ECF 1 ¶ 107. The large majority of that report is classified and redacted, and thus unavailable for the parties and the Court to review. Beyond that obvious point, Plaintiff's counsel is well aware that there is a massive volume of classified information—including the Army report and the Army investigative file—that the Army has refused to release for use in this and related litigation matters.

In *Loquasto*, for example, Plaintiff's counsel deposed two Army witnesses. During each of those depositions, counsel for the Army was present, and counsel for the Army refused to allow any questions regarding classified information. Both before and during these depositions, counsel for the Army imposed a blanket rule prohibiting any testimony "that reveals classified information," including the Army 15-6 Report and supporting materials. ECF 14-32 at 2-3. The Army permitted those depositions to proceed solely regarding non-merits issues, and when counsel for Fluor attempted to pose questions even in the vicinity of the Army 15-6 Report, counsel for the Army immediately shut down the questioning, making expressly clear that the Army "would instruct the witness not to answer all questions regarding any knowledge of classified information." *See* ECF 14-8 at 31:12-16.[9]

---

[9] Although *some* limited discovery against the Army was permitted in the related cases, and although *some* discovery between the parties has taken place, all such discovery relates solely to *unclassified* information. The Army has made it crystal clear that no discovery whatsoever is permitted into *classified* information in any of these cases. The question before the Court is whether this suit can be fairly litigated, in its entirety, by both sides, without the classified information. Given that the absence of classified information disables Fluor's defense (at a minimum), dismissal is warranted at this time, notwithstanding that some discovery could

### B.    The Classified Information Is Highly Relevant.

Plaintiff next claims that the massive volume of classified information being withheld is somehow irrelevant, arguing "there is no need to inquire into secret or confidential issues regarding the U.S. Army and what it did or did not do." *See* ECF 46 at 15. But this is also false. Any attempt to litigate and try this case would require scrutiny into what the Army did and did not do. Even assuming Plaintiff himself does not need this information (a dubious assumption), Fluor can and will argue that the Army's actions and inactions caused the attack.

The recent *Loquasto* decision, which Plaintiff's counsel litigated in Texas, illustrates the fallacy of Plaintiff's "blinders on" vision of any trial in this matter. Faced with identical underlying facts, the *Loquasto* court recognized that any trial on the merits would inevitably thrust the role of the Army into the limelight. As the *Loquasto* court held, the Army's decision to "approve[] Nayeb, who had known Taliban ties, for base access contrary to its standard procedures" is a decision that would be "front and center at trial." *Loquasto v. Fluor Corp.*, No. 3:19-CV-1455-B, 2021 WL 75550, at *7 (N.D. Tex. Jan. 8, 2021) (internal quotations omitted). Similarly, the *Loquasto* court recognized that the "the military's decision to re-certify Nayeb for base access numerous times and its daily decisions related to screening him prior to base entry" would be "front and center at trial." *Id.* The same is true here. And these are but a handful of the military actions that would be focal points at any trial. Notably, the *Loquasto* court identified these examples based on the ***limited*** available evidence and that court concluded, based on just limited evidence, that "[t]he military's alleged contribution to causation here is not so tenuous." *Id.* at *8.

Plaintiff would prefer that pivotal military decisions, and all evidence regarding the causal role of the Army and Nayeb's Taliban co-conspirators, be kept out of view at any trial. But in the

---

theoretically proceed. *See*, *e.g.*, *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 548 (2d Cir. 1991) ("Discovery would thus be a waste of time and resources.").

real world they will be front and center. And Fluor cannot present a fair defense premised on those pivotal actions when a massive volume of critical evidence has been withheld from the case.

### C.     Formal Invocation of the State Secrets Doctrine Is Unnecessary.

Plaintiff elevates form over substance by erroneously claiming that a formal assertion of state secrets is a prerequisite to dismissal. *See* ECF 46 at 13-14. In fact, the lack of an assertion of state secrets is irrelevant as a practical matter, as Plaintiff himself tacitly acknowledges. *See* ECF 46 at 14 (conceding "a particular kind of invocation may not be needed in all cases"). In suits dismissed following such an assertion, the rationale for dismissal is that the information is key to the claims or defenses and is missing from the suit, and thus it would be impossible to fairly litigate the case. That rationale applies equally with or without a formal assertion. Here, whether or not the United States invokes the privilege, the reality—and conundrum—faced by the parties and this Court is stark: There is a massive volume of highly relevant, potentially exculpatory information that Fluor is being prevented from using to defend itself. Litigating the suit under these circumstances would not only run contrary to the case law, but also would offend basic principles of fairness. This compels dismissal.

### IV.     THE COURT SHOULD DISMISS PLAINTIFF'S BREACH-OF-CONTRACT CLAIM BECAUSE HE IS NOT AN INTENDED THIRD-PARTY BENEFICIARY TO THE LOGCAP IV CONTRACT.

Plaintiff argues that the third-party beneficiary issue is too fact-sensitive to resolve now. *See* ECF 46 at 15-16. He also argues that the "express language in the LOGCAP IV contract, the relevant statutory enactments, and Fluor's own admissions make clear that Tangen, a soldier among the troops at Bagram Airfield, was intended to directly benefit from the contract and is a third-party beneficiary." *Id.* at 21. These arguments are unavailing.

### A.     Plaintiff Failed to Allege Essential Elements of Third-Party Beneficiary Status.

Plaintiff tries to escape his pleading failures by claiming a need for discovery. *See* ECF 46

10

at 16 ("Tangen must first be allowed discovery"). However, as the cases Plaintiff cites prove, courts routinely resolve whether parties are third-party beneficiaries under government contracts based on only the pleadings. Here, Plaintiff had an obligation to plead the elements of its claims *before* obtaining discovery. He failed.

Plaintiff does not dispute that third-party beneficiary status for any contract is an exceptional status that is not liberally granted. With respect to a federal government contract, Plaintiff does not dispute that he bears an especially heightened burden. Nearly all government contracts can be said to confer benefits on the general public or some broad class of individuals. But under the law, that alone does not make all such people third-party beneficiaries—a status which would bring with it *the right to sue the federal government* for breach of contract. Rather, to qualify as a third-party beneficiary under a government contract, Plaintiff must plead and show that *both* Fluor and the government contracting officer intended to confer a direct benefit on him.

Plaintiff did not do so. Instead, he pled only bare legal conclusions about his purported third-party beneficiary status. He failed to allege sufficient facts regarding the parties' requisite intent to confer such status upon him—in fact he did not plead *any* facts concerning the contracting officer's intent—and at best he cites generic contract provisions that actually refute his position. *See id.* at 9-14. Most glaringly, Plaintiff did not come close to alleging that, in addition to Fluor, the *Army contracting officer* intended Plaintiff to be a third-party beneficiary. That is a necessary component of third-party beneficiary status on a government contract. *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) ("[F]or third-party beneficiary status to lie, the contracting officer must be put on notice, by either the contract language or the attendant circumstances, of the relationship between the prime contractor and the third-party . . . so that *an intent to benefit the third party is fairly attributable to the contracting officer*.") (emphasis

11

added). Plaintiff's failure to even attempt to plead any facts showing the requisite intent by the contracting officer, alone, is fatal to his claim.

The requirement that *both* the government contracting officer and the contractor intend to confer third-party beneficiary status makes good sense. When a party is a third-party beneficiary to a government contract, it can enforce its rights under the contract against *both* the contractor and the federal government. Stated differently, if this Court were to hold that Plaintiff can sue Fluor for breach-of-contract, the Court would also be holding that Plaintiff can sue the United States for breach-of-contract. Of course, "the government does not lightly consent to suit." *See Flexfab,* 424 F.3d at 1263. Plaintiff has not pled any facts supporting such consent.

Beyond that, finding that every deployed soldier at Bagram Airfield is a third-party beneficiary under the LOGCAP IV Contract would have far-reaching consequences. Plaintiff seeks to downplay those consequences by arguing that the United States will not be besieged with breach-of-contract claims because, according to Plaintiff, the United States did not breach the contract. ECF 46 at 21 ("To be 'besieged' with thousands of breach-of-contract suits, the Government would first have to breach those contracts. Nobody makes such a claim."). This is circular reasoning and avoids the issue. Saying the government will not be sued for breach-of-contract so long as it does not breach the contract is meaningless. And the issue is not whether the United States breached the contract; it is whether the United States expressed an intent to confer upon Plaintiff the right to sue for breach-of-contract. Plaintiff alleges no facts supporting this, and there are none.

**B.     Plaintiff Cannot Cure His Pleading Deficiencies By Selectively Quoting Generic Contract Provisions and Regulations.**

Plaintiff points to terms from the LOGCAP IV's Performance Work Statement and LOGCAP's governing regulations. ECF 46 at 16-17. Although he claims these terms show an

12

"express" intent to directly benefit Plaintiff *individually*, in reality these terms merely show that to support *the Army's* overseas combat missions, Fluor must provide certain services to *all* soldiers. *Id.* at 16-17. This is plainly insufficient under the law.

Plaintiff exclusively cites contract language referring to the collective military unit—services to be performed for the "troops" and "deployed Soldiers." *See* ECF 46 at 17 (quoting contract). Plaintiff cites no contract language that grants Plaintiff any benefit *as an individual*. When read in context, Fluor and the Army intended these clauses to protect the U.S. military's interest in maintaining a combat-ready force (consisting of personnel, equipment, and supplies) that is capable of effectively waging war at all times.

The cited language is no different from the services that contractors provided for federal inmates in *GEO Group* and *Cash* without conferring third-party beneficiary status on that population. *See, e.g.*, *Mathis v. GEO Grp., Inc.*, No. 2:08-CT-21-D, 2009 WL 10736631, at *20 (E.D.N.C. Nov. 9, 2009) (contract requiring contractor to provide "all essential health services" as well as education, recreation activities, and telephone services to plaintiff did not confer third-party beneficiary status); *Cash v. United States*, No. 14-510C, 2015 WL 194353, at *2-3 (Fed. Cl. Jan. 13, 2015) (prisoner was not a third-party beneficiary to a contract that required contractor to provide "secure custody, care[,] and safekeeping"). These cases confirm that providing benefits directly to Plaintiff does not mean that Plaintiff was intended to directly benefit from the contract.

In fact, when determining third-party beneficiary status, courts have regularly acknowledged the difference between an entity that is a party to the contract and the individuals who make up that entity. In *Glass v. United States*, for example, the Federal Circuit rejected claims that an insolvent thrift's shareholders were intended third-party beneficiaries based on the government's promise to permit the thrift to count "goodwill capital" toward its capital valuation.

13

*See* 258 F.3d 1349, 1353-55 (Fed. Cir. 2001). Likewise, in *Stokes*, the Fourth Circuit cast aside claims that a contractor's employees were intended third-party beneficiaries of a "severance pay" provision in a government contract. *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000); *see also Sallee v. United States*, 41 Fed. Cl. 509, 514-15 (1998) (dismissing former contractor employee's claim that he was an intended third-party beneficiary of a contract provision that entitled employees to at least 10% of contract cost savings for which they were responsible). A soldier is no more entitled to claim benefits directed at the Military than shareholders to the company they own or employees to the company they work for.

Plaintiff selectively quotes the LOGCAP government regulations, Army Regulation 700-137, to give the false impression that the program is designed to benefit individual deployed soldiers. *See* ECF 46 at 17. But Plaintiff ignores that LOGCAP's fundamental purpose is "to augment the force by providing a service capability to meet externally driven operational requirements for rapid contingency augmentation support." Army Reg. 700-137 § 1-1. The regulations also explain that "LOGCAP supports scalable, ready, and responsible logistics and base support services by integrating contracted private sector capabilities *to fulfill the operational commander's requirements*." *Id.* § 6-1 (emphasis added). These statements establish the unsurprising reality that LOGCAP is designed to focus on the needs and goals of the U.S. Military as a whole; the LOGCAP program is not designed to directly benefit any one soldier.

**C.     Plaintiff's Argument Is Contrary to the Veterans' Benefits Act and Related Supreme Court Precedent.**

Plaintiff readily admits that, like any soldier injured in the line of duty, Plaintiff is entitled to federal remedies under the Veterans' Benefits Act ("VBA"). *See*, *e.g.*, 38 U.S.C. §§ 1110, 1131; *see also* ECF 3 ("The Department of Veterans Affairs may also have a subrogation interest in this matter due to medical benefits and other disability benefits provided to Plaintiff as a result of his

14

injuries."). But Plaintiff fails to recognize that his flawed breach-of-contract legal theory is irreconcilable with the VBA and related Supreme Court precedent.

The VBA is "intended to be the sole remedy for service-connected injuries." *See Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 464 (1980); *accord United States v. Johnson*, 481 U.S. 681, 690 (1987). The VBA "provides an upper limit of liability for the Government as to service-connected injuries." *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673 (1977) ("To permit petitioner's claim would circumvent this limitation, thereby frustrating one of the essential features of the Veterans' Benefits Act.").

To prevail on his legal theory, Plaintiff would have to prove the opposite. He would have to plead and establish that the Army contracting officer intended for him to have an ***additional*** remedy—one for breach of contract—on top of his exclusive VBA remedy. He would have to plead and establish that the Army contracting officer intended to expose the Government to ***unlimited*** potential liability by way of breach-of-contract claims filed by the thousands of soldiers stationed at BAF. He has not done so, and he cannot do so. For the same reasons the Supreme Court has eliminated a soldier's ability to sue the United States in tort—i.e., because of the existing VBA exclusive remedy—this Court should reject a soldier's ability to sue the United States for breach of contract.

### CONCLUSION

The Court should dismiss this suit in its entirety with prejudice based on "combatant activities" preemption, and, separately, based on the Army's withholding of essential classified information. The Court should also dismiss Plaintiff's breach-of-contract claim (Count VII) with prejudice because Plaintiff is not a third-party beneficiary of Fluor's government contract.

Respectfully submitted,

NEXSEN PRUET, LLC

15

s/Andrew A. Mathias
William W. Wilkins, Fed. ID No. 4662
Andrew A. Mathias, Fed. ID No. 10166
Konstantine P. Diamaduros, Fed. ID No. 12368
55 E. Camperdown Way, Suite 400 (29601)
Post Office Box 10648
Greenville, South Carolina 29603-0648
Telephone: 864.370.2211
Facsimile: 864.282.1177
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

TREY GOWDY LAW FIRM, LLC

Harold Watson Gowdy, III, Fed. ID No. 5675
Post Office Box 3324
Spartanburg, South Carolina 29304
Telephone: 864.809.0917
trey@treygowdylawfirm.com

HARTLINE BARGER LLP

Darrell L. Barger (*pro hac vice forthcoming*)
1980 Post Oak Blvd.
Suite 1800
Houston, Texas 77056
Telephone: 713.759.1990
Facsimile: 713.652.2419
dbarger@hartlinebarger.com

J. Reid Simpson (*pro hac vice forthcoming*)
800 N. Shoreline Blvd.
Suite 2000, North Tower
Corpus Christi, Texas 78401
Telephone: 361.866.8000
Facsimile: 361.866.8039
rsimpson@hartlinebarger.com

COVINGTON & BURLING LLP
Raymond B. Biagini (*admitted pro hac vice*)
Daniel L. Russell, Jr. (*admitted pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001

16

Telephone: 202-662-6000
Facsimile: 202-662-6291
RBiagini@cov.com
DRussell@cov.com

*Attorneys for Defendants Fluor Intercontinental, Inc.*
*and Fluor Government Group International, Inc.*

June 2, 2021
Greenville, South Carolina

17