**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Timothy Tangen, | |
| Plaintiff, | |
| v. | C/A No.: 6:21-cv-00335-JD |
| Fluor Intercontinental, Inc., et al., | |
| Defendants. | |
| | |
| Marissa Brown, | |
| Plaintiff, | |
| v. | C/A No.: 6:21-cv-01427-JD |
| Fluor Intercontinental, Inc., et al., | |
| Defendants. | |
| | |
| Shelby Iubelt, individually, on behalf of the Estate of Tyler Iubelt, and as next friend of V.I., minor, | |
| Plaintiff, | C/A No.: 6:21-cv-01420-JD |
| v. | |
| Fluor Intercontinental, Inc., et al., | |
| Defendants. | |
| | |
| Lakeia Stokes, | |
| Plaintiff, | |
| v. | C/A No.: 6:21-cv-01086-JD |
| Fluor Intercontinental, Inc., et al., | |
| Defendants. | |

DC: 7602246-1

Maggie Bilyeu,

        Plaintiff,

    v.

Fluor Intercontinental, Inc., et al.,

        Defendants.

C/A No.: 6:21-cv-01078-JD

Addie Ford,

        Plaintiff,

    v.

Fluor Intercontinental, Inc., et al.,

        Defendants.

C/A No.: 6:21-cv-01159-JD

Marvin Branch,

        Plaintiff,

    v.

Fluor Intercontinental, Inc., et al.,

        Defendants.

C/A No.: 6:21-cv-01083-JD

Julianne Perry, individually, on behalf of the Estate of John Perry, and as next friend of L.P. and G.P., minors,

        Plaintiff,

    v.

Fluor Intercontinental, Inc., et al.,

        Defendants.

C/A No.: 6:21-cv-01250-JD

Haylee Rodriguez,

       Plaintiff,

    v.                                                                        C/A No.: 6:21-cv-01084-JD

Fluor Intercontinental, Inc., et al.,

       Defendants.

India Sellers,

       Plaintiff,

    v.                                                                        C/A No.: 6:21-cv-01085-JD

Fluor Intercontinental, Inc., et al.,

       Defendants.

Samuel Gabara,

       Plaintiff,

    v.                                                                        C/A No.: 6:21-cv-01007-JD

Fluor Intercontinental, Inc., et al.,

       Defendants.

Chris Colavita,

       Plaintiff,

    v.                                                                        C/A No.: 6:21-cv-01017-JD

Fluor Intercontinental, Inc., et al.,

       Defendants.

Robert Healy,

        Plaintiff,

    v.

Fluor Intercontinental, Inc., et al.,

        Defendants.

C/A No.: 6:21-cv-01018-JD

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS THE *LOQUASTO* PLAINTIFFS' CLAIMS BASED ON COLLATERAL ESTOPPEL AND STATUTE OF LIMITATIONS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I.      THE COURT SHOULD DISMISS THE *LOQUASTO* PLAINTIFFS' CLAIMS
BECAUSE THEY ARE COLLATERALLY ESTOPPED FROM RE-
LITIGATING SUBJECT MATTER JURISDICTION. .................................................... 3

      A.    The Political Question Doctrine Issue in This Case Is Identical to the Issue
           Litigated in *Loquasto*, and Plaintiffs Are Judicially Estopped From
           Manufacturing a "New" Issue By Invoking a New State Law. ............................. 7

           1.    The *Loquasto* Plaintiffs are advancing a position that is
                 inconsistent with a prior, court-accepted position that they
                 intentionally asserted. ..................................................................... 9

           2.    Judicial estoppel applies to mixed questions of law and fact, like
                 choice of law. ................................................................................ 11

      B.    The *Loquasto* Opinion and Judgment Satisfy the Remaining Elements of
           the Collateral Estoppel Analysis. ........................................................................ 15

II.    THE COURT SHOULD DISMISS THE CLAIMS ASSERTED BY
PLAINTIFFS BROWN, IUBELT, AND PERRY BECAUSE THEY ARE TIME-
BARRED. ..................................................................................................................... 16

      A.    Based on the Face of the Complaints, These Claims Are Time-Barred. .............. 17

      B.    The Time-Barred Claimants Cannot Assert a Plausible Tolling Claim ................ 19

CONCLUSION ................................................................................................................. 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Zurich Ins. Co.*,
    667 F.2d 1162 (4th Cir. 1982) .........................................................................11, 12, 13, 14, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................19

*Baker v. Raimondo*,
    No. 1:20-cv-1367, 2021 WL 1381560 (E.D. Va. Mar. 30, 2021)..............................................3

*Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel*,
    410 F. App'x 716 (4th Cir. 2011) ............................................................................................3

*Bazemore v. Best Buy*,
    957 F.3d 195 (4th Cir. 2020) .................................................................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................19

*Brown v. Fluor Intercontinental, Inc.*,
    No. 6:21-cv-01427-JD (D.S.C. May 13, 2021)......................................................................18

*Colleton Reg. Hosp. v. MRS Med. Rev. Sys., Inc.*,
    866 F. Supp. 896 (D.S.C. 1994)...............................................................................................8

*Collins v. Pond Creek Mining Co.*,
    468 F.3d 213 (4th Cir. 2006) ...................................................................................................4

*Collins v. RJ Reynolds Tobacco Co.*,
    901 F. Supp. 1038 (D.S.C. 1995), *aff'd*, 92 F.3d 1177 (4th Cir. 1996) ..................................17

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
    566 U.S. 221 (2012)...............................................................................................................20

*Dalenko v. Stephens*,
    917 F. Supp. 2d 535 (E.D.N.C. 2013)......................................................................................3

*Dean v. Pilgrim's Pride Corp.*,
    395 F.3d 471 (4th Cir. 2005) .................................................................................................17

*Dilmar Oil Co. v. Federated Mut. Ins. Co.*,
    986 F. Supp. 959 (D.S.C. 1997)...............................................................................................8

ii

*Edmondson v. Eagle Nat'l Bank*,
    922 F.3d 535 (4th Cir. 2019) ...............................................................................21

*El Hadidi v. Intracoastal Land Sales, Inc.*,
    No. 4:12-cv-00535-RBH, 2013 WL 625575 (D.S.C. Feb. 20, 2013) ......................................17

*Folio v. City of Clarksburg*,
    134 F.3d 1211 (4th Cir. 1998) .................................................................................8

*Georgia Bank & Tr. Co. of Augusta v. Trenery, Jr.*,
    No. 3:08-2371-JFA, 2010 WL 3271732 (D.S.C. Aug. 18, 2010) ...........................................17

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) .................................................................................17

*Guinness PLC v. Ward*,
    955 F.2d 875 (4th Cir. 1992) ..............................................................................8, 13

*Healy v. Fluor Intercontinental, Inc.*,
    No. 6:21-cv-01018-BHH (D.S.C. Apr. 6, 2021), ECF 1 ......................................................9

*Hencely v. Fluor Corp.*,
    No. 6:19-cv-00489-BHH, 2020 WL 2838687 (D.S.C. June 1, 2020) ............................ *passim*

*Holland v. Kohn*,
    12 F. App'x 160 (4th Cir. 2001) ...........................................................................3, 16

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
    No. PWG-14-111, 2015 WL 5201356 (D. Md. Sept. 4, 2015) ..........................................3, 16

*Iubelt v. Fluor Intercontinental, Inc.*,
    No. 6:21-cv-01420-JD (D.S.C. May 12, 2021) .............................................................18

*Jones v. United States*,
    466 F.2d 131 (10th Cir. 1972) ...............................................................................15

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi
    Negara*,
    364 F.3d 274 (5th Cir. 2004) .................................................................................11

*Konstantinidis v. Chen*,
    626 F.2d 933 (D.C. Cir. 1980) .................................................................................8

*Loquasto v. Fluor Corp., Inc.*,
    No. 3:19-CV-1455-B, 2021 WL 1017036 (N.D. Tex. Mar. 17, 2021) ......................6, 7, 10, 11

*Loquasto v. Fluor Corp., Inc.*,
    No. 3:19-CV-1455-B, 2021 WL 75550 (N.D. Tex. Jan. 8, 2021) ................................. *passim*

*Lowery v. Stovall*,
   92 F.3d 219 (4th Cir. 1996) .........................................................................................8

*Martineau v. Wier*,
   485 F. Supp. 3d 637 (D.S.C. 2020)..............................................................................19

*McLaughlin v. Bradlee*,
   803 F.2d 1197 (D.C. Cir. 1986).....................................................................................15

*Menominee Indian Tribe of Wis. v. United States*,
   577 U.S. 250 (2016)................................................................................................20, 21

*In re Microsoft Corp. Antitrust Litig.*,
   355 F.3d 322 (4th Cir. 2004) .........................................................................................4

*Moore v. Universal Underwriters Ins. Co.*,
   363 F. App'x 268 (4th Cir. 2010) ...................................................................................8

*Muntean v. Discover Fin. Servs.*,
   No. 6:13-1151-HMH, 2013 WL 2636003 (D.S.C. June 12, 2013).........................................19

*Papasan v. Allain*,
   478 U.S. 265 (1986)......................................................................................................20

*Perry v. Fluor Intercontinental, Inc.*,
   No. 6:21-cv-01250-JD (D.S.C. Apr. 27, 2021), ECF 1 ............................................................18

*Pigons S.A. de Mecanique v. Polaroid Corp.*,
   701 F.2d 1 (1st Cir. 1983).............................................................................................14

*Ragan v. Vosburgh*,
   110 F.3d 60, 1997 WL 168292 (4th Cir. 1997) (unpublished) ..................................12, 13, 14

*Schafler v. Field*,
   No. Civ.A.AW-02-1308, 2002 WL 32818725 (D. Md. July 25, 2002)....................................3

*Scott v. Land Span Motor, Inc.*,
   781 F. Supp. 1115 (D.S.C. 1991)....................................................................................9

*Sedlack v. Braswell Servs. Grp., Inc.*,
   134 F.3d 219 (4th Cir. 1998) .........................................................................................3

*Estate of Stokes ex rel. Spell v. Pee Dee Fam. Physicians, L.L.P.*,
   699 S.E.2d 143 (2010) .............................................................................................18, 19

*Swentek v. USAIR, Inc.*,
   830 F.2d 552 (4th Cir. 1987), *abrogated on other grounds*, *Mikels v. City of Durham*, 183 F.3d 323 (4th Cir. 1999) ..................................................................................16

iv

*Thornton v. Cessna Aircraft Co.*,
  703 F. Supp. 1228 (D.S.C. 1988)........................................................................17

*Wilson Grp., Inc. v. Quorum Health Res., Inc.*,
  880 F. Supp. 416 (D.S.C. 1995)..........................................................................17

*Yamaha Corp. of Am. v. United States*,
  745 F. Supp. 734 (D.D.C. 1990) ...............................................................6, 14, 15

*Zinkand v. Brown*,
  478 F.3d 634 (4th Cir. 2007) .............................................................................8, 9

**Statutes**

28 U.S.C. § 1631................................................................................................15

S.C. Code Ann. § 15-3-530(1), (5), (6)...........................................................18, 19

Tex. Civ. Prac. & Rem. § 16.003..........................................................................18

Tex. Civ. Prac. & Rem. § 33.004............................................................................5

**Other Authorities**

Fed. R. Civ. P. 8(c)(1).........................................................................................17

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 17, 20

## INTRODUCTION

These consolidated cases arise out of an attack by a foreign enemy on U.S. Military forces in an active war zone. In November 2016, Ahmad Nayeb, a Taliban operative, detonated a suicide bomb inside the secure perimeter of the U.S. Military base at Bagram Airfield, Afghanistan. Plaintiffs, who were serving as active-duty members of the U.S. Army at the time of the bombing, allege injuries from the enemy attack and seek state-law tort remedies.

As the Court is aware, this is not new litigation. In fact, twelve of the thirteen Plaintiffs in this consolidated action previously filed and fully litigated identical claims in the Northern District of Texas, which dismissed those claims earlier this year. *See Loquasto v. Fluor Corp., Inc.*, No. 3:19-CV-1455-B, 2021 WL 75550 (N.D. Tex. Jan. 8, 2021). In the wake of the *Loquasto* dismissal, these Plaintiffs (referred to herein as "the *Loquasto* Plaintiffs") re-filed their claims in South Carolina in a transparent—and plainly improper—attempt at *ex post* forum shopping.

There are numerous reasons why the Court should dismiss Plaintiffs' claims. Prior to these cases being consolidated, and before any of the *Loquasto* Plaintiffs re-filed their claims in this Court, Fluor moved to dismiss one of the now-consolidated actions—the case brought by Plaintiff Timothy Tangen, the lone Plaintiff who was not a party in *Loquasto*. Fluor's motion to dismiss was based on three grounds: (i) "combatant activities" preemption; (ii) the absence of essential classified information; and (iii) Plaintiff's lack of standing to assert breach-of-contract claims. *See* ECF 14-1, ECF 57. Fluor has now asserted these same three defenses as to ***all*** Plaintiffs. *See* ECF 64. Thus, those three issues are now ripe for resolution by the Court as to all Plaintiffs in the consolidated action. In addition, Fluor will be filing a separate Rule 12(b)(1) motion to dismiss all claims based on the political question doctrine and the South Carolina Door Closing Statute.

This Rule 12(b)(6) motion sets forth two separate and additional grounds for dismissal of the *Loquasto* Plaintiffs' claims: (i) collateral estoppel; and (ii) the statute of limitations.

1

*First*, the Court should dismiss the claims asserted by Maggie Bilyeu, Marvin Branch, Marissa Brown, Chris Colovita, Addie Ford, Samuel Gabara, Robert Healy, Shelby Iubelt, Julianne Perry, Haylee Rodriguez, India Sellers, and Lakeia Stokes ("the *Loquasto* Plaintiffs"), in all capacities, because they are collaterally estopped from re-litigating subject matter jurisdiction in this case. In a prior action, while represented by competent and highly experienced legal counsel who continue to represent them here, the *Loquasto* Plaintiffs had the opportunity to fully and fairly litigate their claims. They conducted discovery and fully briefed Fluor's political question motion, and the court dismissed all claims for lack of subject matter jurisdiction under the political question doctrine. The political question issue here is identical to the one decided in Texas. The *Loquasto* Plaintiffs cannot manufacture a "new" issue by seeking to invoke South Carolina law. In *Loquasto*, these Plaintiffs deliberately and strategically invoked and relied on Texas law, and the court accepted their position that Texas law applied to their claims. Thus, under the doctrine of ***judicial*** estoppel, Plaintiffs cannot now take the position that South Carolina law governs their claims. That renders the issue here identical to the one previously litigated, and triggers application of collateral estoppel to bar the claims.

*Second*, the claims of three Plaintiffs (Marissa Brown, Shelby Iubelt, and Julianne Perry), who assert wrongful death claims, are barred by the statute of limitations. Based on the face of their complaints, these claims accrued in November and December of 2016. Under any potentially applicable statute of limitations, the claims expired long before their 2021 filing. These Plaintiffs have no plausible argument for equitable tolling based on the *Loquasto* litigation. That litigation resulted from a ***deliberate choice*** made by Plaintiffs themselves to file suit in Texas. As such, the *Loquasto* litigation was not the sort of circumstance external to Plaintiffs' own conduct that is required for equitable tolling.

**ARGUMENT**

**I.     THE COURT SHOULD DISMISS THE *LOQUASTO* PLAINTIFFS' CLAIMS BECAUSE THEY ARE COLLATERALLY ESTOPPED FROM RE-LITIGATING SUBJECT MATTER JURISDICTION.**

Under federal law, "[c]ollateral estoppel forecloses the re-litigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (quotations omitted). Collateral estoppel ensures that parties have ***one*** full and fair opportunity to litigate a particular issue of fact or law, including subject matter jurisdiction and other jurisdictional issues. *See Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel*, 410 F. App'x 716, 720 (4th Cir. 2011); *see also Dalenko v. Stephens*, 917 F. Supp. 2d 535, 544 (E.D.N.C. 2013) ("Collateral estoppel or issue preclusion applies to jurisdictional issues, as well as to other issues."); *Baker v. Raimondo*, No. 1:20-cv-1367, 2021 WL 1381560, at *2 (E.D. Va. Mar. 30, 2021) (applying collateral estoppel to subject matter jurisdiction); *Schafler v. Field*, No. Civ.A.AW-02-1308, 2002 WL 32818725, at *2 (D. Md. July 25, 2002) (same). When collateral estoppel applies, the issue actually and necessarily determined in the prior action "is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Holland v. Kohn*, 12 F. App'x 160, 165 (4th Cir. 2001) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).

To prevail on a collateral estoppel claim, the party invoking the doctrine must establish five elements:

1. The issue sought to be precluded is identical to one previously litigated;

2. The issue was actually determined in the prior proceeding;

3

3. The issue's determination was a critical and necessary part of the decision in the prior proceeding;

4. The prior judgment is final and valid; and

5. The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum.

*See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217-18 (4th Cir. 2006); *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).

Here, all five factors are satisfied and collateral estoppel applies based on a prior Memorandum Opinion and Final Judgment entered in the case styled Civil Action No. 3:19-CV-01455-B, *Charlotte Loquasto, et al. v. Fluor Corporation, et al.*, in the United States District Court, Northern District of Texas, Dallas Division ("*Loquasto*"). The *Loquasto* court granted Fluor's 12(b)(1) motion to dismiss and dismissed the claims for lack of subject matter jurisdiction under the political question doctrine. *See Loquasto*, 2021 WL 75550 at *10. Thus, the "issue" as to which Fluor asserts collateral estoppel—subject matter jurisdiction and application of the political question doctrine—was litigated and determined in *Loquasto*.

In *Loquasto*, as here, the *Loquasto* Plaintiffs alleged that Fluor negligently failed to supervise Nayeb. *See Loquasto*, No. 3:19-CV-1455-B (N.D. Tex.), ECF 1-3 at 27 (State Court File, Plaintiffs' Original Petition).[1] The *Loquasto* Plaintiffs initially filed their claims in Texas state court and repeatedly invoked Texas law. *See*, *e.g.*, *Loquasto*, ECF 1-3 at 32 (invoking "Texas Labor Code" and "Texas law" and seeking damages "under Texas law").[2] After removing the proceedings to federal district court, Fluor moved for leave to designate the U.S. Military as a

---

[1] Hereinafter, for citations to briefs and orders entered on the *Loquasto* docket in the Northern District of Texas, Case No. 3:19-CV-1455-B, we use the following format: "*Loquasto*, ECF [#]."

[2] According to their complaints, ten of the twelve *Loquasto* Plaintiffs are residents of Texas. The other two allege residency in California and Illinois. None allege residency in South Carolina.

responsible third party under Texas Civil Practice and Remedies Code § 33.004, and moved to dismiss all claims for lack of subject matter jurisdiction under the political question doctrine. *Loquasto*, ECF 20-21. The *Loquasto* Plaintiffs consented to Fluor's motion to designate the Military as a responsible third party under Texas law, and the court granted Fluor's motion. *Loquasto* ECF 31. Subsequently, the court ordered jurisdictional discovery, and upon completion of that discovery, further briefing. *Loquasto*, ECF 38, 39. After fully considering the parties' briefing and evidence, in January 2021, the court granted Fluor's motion and dismissed all claims for lack of subject matter jurisdiction under the political question doctrine. *Loquasto*, ECF 85. Among other things, the *Loquasto* court determined that the Military's designation as a responsible third party under Texas law meant that the trier of fact could not decide the case without scrutinizing sensitive Military judgments and decisions. *Loquasto*, 2021 WL 75550, at *5.

In January 2021, the *Loquasto* Plaintiffs asked the court to vacate its judgment and transfer the case to the District of South Carolina—a transparent and belated attempt to avail themselves of the perceived benefits of this forum, in which this Court had, in June 2020, denied Fluor's political question motion in *Hencely*, a related case arising out of the same Taliban bombing attack. *See Hencely v. Fluor Corp.*, No. 6:19-cv-00489-BHH, 2020 WL 2838687 (D.S.C. June 1, 2020). The *Loquasto* court declined both requests, and significantly for present purposes, the court confirmed that the *Loquasto* Plaintiffs had irrevocably invoked Texas law, such that even if the court had transferred the case to the District of South Carolina, the outcome would be the same:

> [I]t is clear from the record that Plaintiffs *have* grounded their negligence claims in Texas law . . . . Were this Court to transfer the case to the District of South Carolina, Plaintiffs' petition would remain the operative pleading, and the District of South Carolina would preside over Plaintiffs' Texas negligence claims.

Mem. Op. and Order on Pls' Mot. for New Trial, to Alter, Amend, or Vacate Order, and to Transfer Venue, *Loquasto v. Fluor Corp., Inc.*, No. 3:19-CV-1455-B, 2021 WL 1017036, at *3 (N.D. Tex. Mar. 17, 2021) (hereinafter "*Loquasto* Reconsideration Order").

Rather than appealing the decision and judgment to the Fifth Circuit, the *Loquasto* Plaintiffs re-filed their claims in this District. Now, after two years of litigating their claims in Texas, and after repeatedly invoking Texas law, the *Loquasto* Plaintiffs seek to invoke South Carolina law as an end run around their own litigation strategy and the *Loquasto* court's decision.

The law does not permit this second bite at the apple. The *Loquasto* Plaintiffs had a full and fair opportunity to present the claims and arguments they seek to air again in this case. They did not avail themselves of the right to appeal from the *Loquasto* judgment. They are not entitled to a second judgment on the merits of the issue already litigated in *Loquasto*. In fact, the very purpose of collateral estoppel is to prevent this type of *ex post* forum shopping. *See*, *e.g.*, *Yamaha Corp. of Am. v. United States*, 745 F. Supp. 734, 737-38 (D.D.C. 1990). Accordingly, this Court should apply collateral estoppel and dismiss the claims with prejudice because the *Loquasto* Plaintiffs are precluded from re-litigating subject matter jurisdiction.

Nothing in the *Loquasto* court's rulings could or should alter this conclusion. In particular, in denying the reconsideration motion, the Texas district court recognized the possibility that the Plaintiffs might try to re-file their claims elsewhere and might seek application of another state's law. *See Loquasto* Reconsideration Order, 2021 WL 1017036, at *3. But the *Loquasto* court properly declined to address the issue now presented to this Court—namely, whether such a re-filed suit would be legally viable. As the *Loquasto* court explained, "Plaintiffs may bring their claims anew in a court with proper jurisdiction, styling those claims under an appropriate state's laws. This Court, however, lacks subject-matter jurisdiction over Plaintiffs' claims as pleaded, and

6

*it declines to assess jurisdiction on behalf of another forum*." *Loquasto* Reconsideration Order, 2021 WL 1017036, at \*4 (emphasis added). Indeed, the *Loquasto* court recognized the potential application of estoppel to bar Plaintiffs from taking a new position regarding applicable law in South Carolina, as the court noted that it was "not clear . . . whether [a choice-of-law] analysis would be necessary" if the case were transferred to South Carolina. *Id*. at \*3. Thus, while the *Loquasto* Plaintiffs might characterize the Texas court's statements as an invitation to re-file their claims in South Carolina, the *Loquasto* court was obviously not faced with the collateral estoppel issue now before this Court, and thus did not examine—as this Court must—whether, under well-established precedent, the *Loquasto* Plaintiffs are barred from re-litigating their claims.

### A. The Political Question Doctrine Issue in This Case Is Identical to the Issue Litigated in *Loquasto*, and Plaintiffs Are Judicially Estopped From Manufacturing a "New" Issue By Invoking a New State Law.

The first element of collateral estoppel is met—*i.e.*, the issue sought to be precluded is identical to one previously litigated—because the political question issue in this case is identical to the issue litigated in *Loquasto*. Plaintiffs may argue that the issue is different because they have invoked a different state law (South Carolina law) in their complaints. But the law does not permit Plaintiffs to jump from state to state while adopting contradictory positions on applicable law. This Court should reject any attempt by Plaintiffs to manufacture a "new" issue in this manner based on another form of estoppel: *judicial estoppel*. Specifically, this Court should hold that the *Loquasto* Plaintiffs are judicially estopped from invoking South Carolina law—or *any* law other than Texas law—as a result of the *Loquasto* Plaintiffs' intentional *and* successful invocation of Texas law in *Loquasto*. *See Loquasto*, ECF 92; *Loquasto*, 2021 WL 75550 at \*9. Because Plaintiffs are judicially estopped from using South Carolina law to concoct a new issue, the first element of collateral estoppel is met.

7

Judicial estoppel is "closely related" to collateral estoppel, but distinct in several critical respects. *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996). In short, "[j]udicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court." *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). Because judicial estoppel exists to prevent "improper use of judicial machinery," *see Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980), it is an equitable doctrine which precludes a party "from adopting a legal position in conflict with one earlier taken in the same or related litigation." *Colleton Reg. Hosp. v. MRS Med. Rev. Sys., Inc.*, 866 F. Supp. 896, 900 (D.S.C. 1994). Federal law controls the application of judicial estoppel, because "it relates to protection of the integrity of the federal judicial process." *Moore v. Universal Underwriters Ins. Co.*, 363 F. App'x 268, 269 (4th Cir. 2010); *accord Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 975-76 (D.S.C. 1997).

As the Fourth Circuit has held, judicial estoppel requires four elements: "(1) the party to be estopped . . . advance[s] an assertion that is inconsistent with a position taken during previous litigation; (2) the position [is] one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently." *Folio v. City of Clarksburg*, 134 F.3d 1211, 1217-18 (4th Cir. 1998). Judicial estoppel is available "irrespective of reliance by, or prejudice to, the party invoking it." *Guinness PLC v. Ward*, 955 F.2d 875, 899 (4th Cir. 1992) (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1177-78 (D.S.C. 1975)). The doctrine instead focuses on the actions of the estopped party: "A party cannot have its cake and eat it too." *Ward*, 955 F.2d at 899.

8

1.    The *Loquasto* Plaintiffs are advancing a position that is inconsistent with a prior, court-accepted position that they intentionally asserted.

The *Loquasto* Plaintiffs' invocation of South Carolina law[3] is inconsistent with the position they took in the prior action. The *Loquasto* Plaintiffs invoked Texas law in at least three respects during or in connection with the *Loquasto* litigation:

- With **actual knowledge** of the *Hencely* case pending in this District, the *Loquasto* Plaintiffs **chose** to maintain their claims in Texas under Texas law, thereby intentionally availing themselves of the perceived benefits and protections of Texas law.[4]

- The *Loquasto* Plaintiffs did not oppose Fluor's motion for leave to designate the Military as a responsible third party under Texas law, and in fact, argued (incorrectly) that Texas law would not support proximate cause as to the Military's occurrence-causing acts and omissions. *See Loquasto*, ECF 30 and 57, *supra*.

- The *Loquasto* Plaintiffs repeatedly invoked Texas law in opposition to Fluor's motion to dismiss. *Loquasto*, ECF 57, at 1, 9, 13, 17-21.

In addition, the *Loquasto* court accepted the *Loquasto* Plaintiffs' invocation of Texas law in at least three respects. *Zinkand*, 478 F.3d at 638 ("[T]he prior inconsistent position must have been accepted by the court."); *accord Scott v. Land Span Motor, Inc.*, 781 F. Supp. 1115, 1120 (D.S.C. 1991) (same). First, with the Plaintiffs' consent, the *Loquasto* court granted Fluor's motion to designate the United States a responsible third party under Texas law. *Loquasto*, ECF 31. Second, the *Loquasto* court again accepted Texas law in its opinion granting Fluor's motion to dismiss under the political question doctrine. *Loquasto*, 2021 WL 75550, at *9 ("Plaintiffs here brought their negligence claims in Texas under Texas law."). And third, after the *Loquasto*

---

[3] Each of the Plaintiffs expressly pleads in his or her complaint that "South Carolina law applies to Plaintiff's claims for relief in this case." *See*, *e.g.*, Compl. ¶ 41, *Healy v. Fluor Intercontinental, Inc.*, No. 6:21-cv-01018-BHH (D.S.C. Apr. 6, 2021), ECF 1.

[4] *See Loquasto*, ECF 92, at 6 ("Plaintiffs were aware of the *Hencely* decision before the Court entered the Opinion and the Final Judgment. Assuming *arguendo* that transfer to the District of South Carolina is appropriate, Plaintiffs could have asked for such relief upon learning of *Hencely* or raised such an argument in response to Defendants' motion to dismiss under the political-question doctrine. Plaintiffs did neither.") (citation omitted).

9

Plaintiffs attempted to renege on their prior positions and transfer the case to South Carolina, the court ***again*** confirmed its acceptance of the *Loquasto* Plaintiffs' choice-of-law position, this time using far stronger language:

> That the District of South Carolina found subject matter-jurisdiction existed over similar negligence claims against Fluor arising from the bombing does not mean that the District of South Carolina would necessarily find subject-matter jurisdiction over *Plaintiffs*' claims. As the Court has explained, Texas's negligence regime, and the designation of the military as a responsible third party in this matter, are the dispositive factors to the Court's holding in the Opinion. Incredibly, Plaintiffs now argue that they have not brought their negligence claims under Texas law, but rather they "have sued for negligence and gross negligence generally." . . . Putting aside the inquiry of whether one may even bring a cause of action not grounded in a particular statutory scheme or common-law rule, it is clear from the record that Plaintiffs *have* grounded their negligence claims in Texas law.

*See Loquasto* Reconsideration Order 2021 WL 1017036, at *3 (citations omitted).

Moreover, there can be no question that the *Loquasto* Plaintiffs' prior invocation of Texas law was intentional, not inadvertent. When the *Loquasto* Plaintiffs filed their suit in Texas, Fluor's motion to dismiss based on the political question doctrine had been pending for approximately two months in the *Hencely* matter; Fluor's motion had been fully briefed, and the court had granted Fluor's motion to stay discovery.[5] *See Hencely*, ECF 20, 30, 36, 37. In the face of the *Hencely* litigation, the *Loquasto* Plaintiffs made a strategic choice to file in Texas, under Texas law, and, in so doing, to deliberately distance themselves from the *Hencely* case—in which a well-supported, fully briefed, and case-dispositive motion had been submitted to the court with no immediate prospect of obtaining discovery. *Id.* The *Loquasto* Plaintiffs likewise made a strategic choice to

---

[5] Fluor filed its motion to dismiss in *Hencely* on March 19, 2019; the *Loquasto* case was filed on May 14, 2019 in Dallas County, Texas.

10

frame their Texas claims differently than the *Hencely* claims.[6] Even after filing suit in Texas, the *Loquasto* Plaintiffs **still** could have asked the court to apply South Carolina law or, as the *Loquasto* court noted, transfer their claims to South Carolina. *Loquasto* Reconsideration Order 2021 WL 1017036, at *3. Instead, the *Loquasto* Plaintiffs repeatedly **chose** to maintain their claims in Texas, under Texas law. None of this was inadvertent. Indeed, given that Plaintiffs are represented by sophisticated Texas-based counsel who boast extensive experience litigating complex tort suits in Texas and around the country, the decision to pursue claims in Texas under Texas law was plainly intentional.[7]

>           2.     Judicial estoppel applies to mixed questions of law and fact, like choice of law.

The choice-of-law issue here is precisely the type of issue that qualifies for judicial estoppel. *See*, *e.g.*, *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 294 (5th Cir. 2004) (affirming imposition of judicial estoppel to bar party "from arguing against the application of Swiss procedural law [after] repeatedly represent[ing] to the Tribunal and to the district court that Swiss procedural law controlled the arbitration"). Nonetheless, Plaintiffs may ask this Court to restrict the Fourth Circuit's judicial estoppel framework, outlined *supra*, to "pure" issues of fact. This Court should reject any such argument because the Fourth Circuit **has** applied judicial estoppel to mixed questions of law and fact, like the choice-of-law issue before the Court in this case. *See Allen v. Zurich Ins. Co.*, 667 F.2d 1162,

---

[6] *E.g.*, *compare Hencely* Compl. ¶¶ 222, 240, ECF 1 (alleging Fluor had an "obligation to provide Base security") *with Loquasto* Compl., ECF 1-3, at 22 ("The incident ha[d] absolutely zero to do with the U.S. Government's provision of security on the Base.").

[7] For example, Plaintiffs' lead counsel held a press conference in Dallas, Texas on the day the *Loquasto* lawsuit was filed in Texas state court, during which counsel proclaimed his belief that the *Loquasto* Plaintiffs' allegations would "resonate with **a jury in Dallas**." *See* https://www.facebook.com/tonybuzbeehouston/videos/615295782319881/ (emphasis added).

1166-68 (4th Cir. 1982); *Ragan v. Vosburgh*, 110 F.3d 60 (Table), 1997 WL 168292 at *6 (4th Cir. 1997) (unpublished).

In *Allen v. Zurich Ins. Co.*, for example, the Fourth Circuit applied judicial estoppel to preclude a personal injury claimant ("Allen") from contending that he and his alleged tortfeasor ("Scruggs") were joint venturers. *See* 667 F.2d at 1163-64, 1167-68. Allen previously prosecuted a personal injury suit against Scruggs, in which Allen alleged Scruggs owed him a duty of care because Scruggs was Allen's employer. *Id.* at 1163. Unfortunately for Allen, Scruggs' insurance policy did not cover injuries to Scruggs' employees; thus, in the subsequent suit against Scruggs' insurance carrier, Zurich Insurance Co. ("Zurich"), Allen claimed he and Scruggs were joint venturers, rather than an employer and employee. *Id.* at 1163-64.

Allen successfully prosecuted his claim against Zurich, but the trial court granted Zurich's motion for judgment as a matter of law and entered a take-nothing judgment in favor of Zurich. *Id.* at 1164. Allen appealed the trial court's judgment to the Fourth Circuit. *Id.*

On appeal, the Fourth Circuit affirmed the trial court's judgment by applying judicial estoppel. The court found that Allen's contradictory positions concerning his relationship to Scruggs constituted a "plain example of 'intentional self-contradiction . . . as a means of obtaining unfair advantage,'" which is a hallmark of judicial estoppel. *Allen*, 667 F.2d at 1168 (quoting *Scarano v. Cent. R.R. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir. 1953)). Tellingly, the Fourth Circuit found that Allen's change of position was particularly egregious because in that case, as here, Allen had a number of other avenues he could have pursued in an effort to impose a duty on Scruggs in the first proceeding. *See id* at 1167. ("Allen obviously thought it sufficiently important in his state court action to make a deliberate allegation that the relationship [with Scruggs] was that of employer and employee rather than any of a number of others from which different and lesser

12

duties of care might have arisen."). Allen *chose* to characterize Scruggs as his employer in order to maximize his (perceived) chances of a favorable outcome, which he was free to do. But once he did so, he could not then change his position later because his initial choice proved unfruitful. *Id.*

In *Ragan v. Vosburgh*, the Fourth Circuit applied judicial estoppel to preclude litigants from asserting the constitutionality of a judicial election scheme they had previously challenged as an unconstitutional political gerrymander. *See* 110 F.3d 60 (Table), 1997 WL 168292, at *6. The *Ragan* court noted that the Fourth Circuit's framework outwardly indicates that judicial estoppel applies to factual issues, but crucially, the court observed that the constitutionality issue in that case rested on ***factual*** issues, including "affidavits and deposition testimony that, ***as a factual matter***, [asserted] the statewide election scheme was maintained for the purpose and had the effect of diluting Republican voting strength-positions." *Id.* (emphasis added). In other words, while the constitutionality of a statute is unquestionably an issue of law, the Fourth Circuit applied judicial estoppel because the issue was the product of underlying factual representations. *Id.*

Moreover, the claimants in *Ragan* exhibited the same kind of *ex post*, result-oriented position changing that triggered the application of judicial estoppel in *Allen*. *See Ragan*, 110 F.3d 60 (Table), 1997 WL 168292, at *6. "***It was only after*** the 1994 elections when they prevailed in the statewide vote, but lost in the districtwide vote, that Vosburgh and Tilghman changed their position to the one they now assert on appeal." *See id.* (emphasis added). As the court explained, Vosburgh and Tilghmann could not "have [their] cake and eat it too." *Ward*, 955 F.2d at 899.

This case presents all of the characteristics that marked the Fourth Circuit's application of judicial estoppel in *Allen* and *Ragan*. The *Loquasto* Plaintiffs have adopted a facially inconsistent position on choice of law—an issue that they perceive as critical to the case—***only after*** their previous suit and invocation of Texas law in *Loquasto*. *See Loquasto*, 2021 WL 75550, *supra.*

Similar to the claimant in *Allen*, the *Loquasto* Plaintiffs chose to file **and** maintain their suit in Texas, under Texas law, and to pursue their previous lawsuit through judgment instead of pursuing any number of other options available to them. *Allen*, 667 F.2d at 1167. And like the issues considered in both *Allen* and *Ragan*, choice of law is a mixed question of law and fact, or alternatively, a question of law which depends on the resolution factual issues. *See id.* at 1163-64; *Ragan*, 110 F.3d 60 (Table), 1997 WL 168292, at \*6. Here, as in *Allen* and *Ragan*, judicial estoppel applies under the Fourth Circuit's judicial estoppel framework, even though choice of law is not a pure issue of fact.

In sum, the *Loquasto* Plaintiffs voluntarily filed, maintained, and prosecuted their claims to conclusion—while invoking Texas law—because they believed it was in their collective interest to do so. The *Loquasto* Plaintiffs deliberately chose to file their claims in Texas, under Texas law, rather than intervene in or join the *Hencely* case, invoke South Carolina law, or pursue any number of alternative options available to them. *Cf. Allen*, 667 F.2d at 1167. The *Loquasto* Plaintiffs maintained their strategy even after Fluor moved to dismiss in Texas, and in fact, even after the *Hencely* court denied Fluor's motion to dismiss. *See Loquasto*, ECF 60-62, 84, 92. And like the claimants in *Allen* and *Ragan*, Plaintiffs did not attempt to reverse course, recast their positions, and ultimately forgo an appeal to the Fifth Circuit in favor of maintaining a new lawsuit purportedly under South Carolina law, until **after** they received an unfavorable judgment in *Loquasto*.

Far from inadvertent or mistaken, the *Loquasto* Plaintiffs' course of conduct is exactly the type of intentional, *ex post* forum shopping that judicial estoppel—and its related doctrine, collateral estoppel—were designed to curtail. *Yamaha*, 745 F. Supp. at 737-38[8]; *see also, e.g., Pigons S.A. de*

---

[8] "Yamaha America also complains that it would be unfair to preclude it from taking advantage of the Court of Appeals' tentative holding in *Lever Bros*. It argues that it should be entitled to take

*Mecanique v. Polaroid Corp.*, 701 F.2d 1, 2 (1st Cir. 1983) ("Once a plaintiff has had a chance to prove a fact, he cannot reopen the matter by stating that he wishes to introduce more or better evidence."); *McLaughlin v. Bradlee*, 803 F.2d 1197, 1204 (D.C. Cir. 1986). Affording the *Loquasto* Plaintiffs a second opportunity to litigate subject matter jurisdiction with the benefit of hindsight would violate basic principles of estoppel. *Jones v. United States*, 466 F.2d 131, 136 (10th Cir. 1972).[9] These principles should apply with ***double strength*** where, as here, these Plaintiffs had ample opportunity to pursue—***and actual knowledge of***—the availability of their "new" position, but ***deliberately chose*** to continue to judgment in the first proceeding on their original position. *Yamaha*, 745 F. Supp. at 737; *see also Allen*, 667 F.2d at 1167.

## B. The *Loquasto* Opinion and Judgment Satisfy the Remaining Elements of the Collateral Estoppel Analysis.

The remaining elements (elements 2-5) of collateral estoppel are also met. The political-question issue was "actually determined" in *Loquasto* (element 2) and was "a critical and necessary part of the decision" (element 3) because, as established above, the *Loquasto* court dismissed all of the *Loquasto* Plaintiffs' claims for lack of subject matter jurisdiction based on the political question doctrine. *See Loquasto*, 2021 WL 75550, at \*5-10.

Further, the *Loquasto* court's opinion and judgment were "valid and final" for all purposes (element 4). The *Loquasto* Plaintiffs asked the *Loquasto* court to vacate its opinion and judgment and transfer the case to the District of South Carolina under 28 U.S.C. § 1631. *Loquasto*, ECF 86. The court declined and the *Loquasto* Plaintiffs did not appeal the court's final judgment to the

---

advantage of a split in the circuits if it loses in the first jurisdiction in which [it] makes its arguments. The argument smacks of the very forum shopping that collateral estoppel was designed to preclude." (citation omitted).

[9] "If [a party's] case was not effectively presented at the first trial it was their fault; affording them a second opportunity in which to litigate the matter, with the benefit of hindsight, would contravene the very principles upon which collateral estoppel is based and should not be allowed."

Fifth Circuit. The *Loquasto* opinion and judgment are therefore "final" for purposes of collateral estoppel. *See Intell. Ventures I LLC v. Capital One Fin. Corp.*, No. PWG-14-111, 2015 WL 5201356, at *2-4 (D. Md. Sept. 4, 2015) (collecting cases). The fourth element is satisfied.

Finally, the *Loquasto* Plaintiffs had a "full and fair opportunity" to litigate the issue (element 5). *See Holland v. Kohn*, 12 F. App'x 160, 166 (4th Cir. 2001). "It is well settled that the full-and-fair-opportunity formulation generally requires that a litigant receive 'reasonable notice of the claim against him *and* opportunity to be heard in opposition to that claim.'" *Id.* (quoting *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982), which in turn quotes 1B *Moore's Federal Practice*, ¶ 0.411 at 1252 (2nd ed. 1982)). The *Loquasto* Plaintiffs had the opportunity to, *inter alia*, conduct discovery and fully brief the political question doctrine and its application to their claims. *See Loquasto*, ECF 38, 57, 63, 78. Such notice and opportunity to be heard easily satisfy the full-and-fair-litigation formulation. *Holland*, 12 F. App'x at 166; *Swentek v. USAIR, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987), *abrogated on other grounds*, *Mikels v. City of Durham*, 183 F.3d 323 (4th Cir. 1999) ("Collateral estoppel is appropriate where the identical issue was 'actually litigated, that is, contested by the parties and submitted for determination by the court.'") (quoting *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983).

## II. THE COURT SHOULD DISMISS THE CLAIMS ASSERTED BY PLAINTIFFS BROWN, IUBELT, AND PERRY BECAUSE THEY ARE TIME-BARRED.

Alternatively, this Court should dismiss all claims asserted by Plaintiffs Marissa Brown, Shelby Iubelt, individually and on behalf of the Estate of Tyler Iubelt, and Julianne Perry, individually and on behalf of the Estate of John Perry (collectively, the "time-barred claims"), because their pleadings confirm that they are barred by the statute of limitations.

### A.     Based on the Face of the Complaints, These Claims Are Time-Barred.

Statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1); *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations . . . constitutes an affirmative defense."). An affirmative defense can be the basis of a motion to dismiss under Rule 12(b)(6), if the defense clearly appears on the face of the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Dean*, 395 F.3d at 474; *see also El Hadidi v. Intracoastal Land Sales, Inc.*, No. 4:12-cv-00535-RBH, 2013 WL 625575, at \*2 (D.S.C. Feb. 20, 2013). An affirmative defense clearly appears on the face of the complaint if the complaint "allege[s] all facts necessary to the affirmative defense." *Goodman*, 494 F.3d at 464 (citing *Richmond, Fredricksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

Where, as here, a defendant moves to dismiss on the basis of limitations, the moving defendant must establish two elements: (1) the accrual date for the cause(s) of action in question, and (2) based on that accrual date, that the plaintiff's claim(s) fall outside the applicable limitations period. *See*, *e.g.*, *Wilson Grp., Inc. v. Quorum Health Res., Inc.*, 880 F. Supp. 416, 424 (D.S.C. 1995) (citing *Creech v. N.D.T. Indus., Inc.*, 815 F. Supp. 165, 167 (D.S.C. 1993)).[10] Both elements are readily established through facts asserted on the face of the pleadings.

---

[10] South Carolina courts typically treat statute of limitations as procedural in nature, and thus generally apply South Carolina's statute of limitations. *See Georgia Bank & Tr. Co. of Augusta v. Trenery, Jr.*, No. 3:08-2371-JFA, 2010 WL 3271732, at \*7 (D.S.C. Aug. 18, 2010) ("Under the applicable South Carolina choice of law rule, lex fori, South Carolina generally applies its own statute of limitations."). The limitations period is generally considered procedural rather than substantive because it "requires an action to be brought within a fixed time following accrual of a cause of action" and therefore "affects the remedy rather than the right." *Thornton v. Cessna Aircraft Co.*, 703 F. Supp. 1228, 1230 (D.S.C. 1988). In some instances, South Carolina courts have applied a different forum's statute of limitations based on the determination that the provision was substantive rather than procedural. *See*, *e.g.*, *Collins v. RJ Reynolds Tobacco Co.*, 901 F. Supp. 1038, 1046 (D.S.C. 1995), *aff'd*, 92 F.3d 1177 (4th Cir. 1996) (applying Georgia's two-year limitations period to wrongful death action for death that occurred in Georgia because "the South Carolina Supreme Court has ruled that the Georgia statute of limitations is a substantive element

17

*First*, the pleadings filed by Brown, Iubelt, and Perry (collectively, the "time-barred claimants") provide on their face all facts necessary to establish accrual dates for each of their claims. Under South Carolina law, wrongful death claims accrue on the date of the decedent's death. S.C. Code Ann. § 15-3-530(6); *see also Estate of Stokes ex rel. Spell v. Pee Dee Fam. Physicians, L.L.P.*, 699 S.E.2d 143, 146 n.2 (2010) ("To be sure, a wrongful death claim accrues only upon the death of the decedent."). Brown's complaint confirms that her decedent, Sergeant First Class Allan Brown, died on December 6, 2016. *See* Compl. ¶ 23, *Brown v. Fluor Intercontinental, Inc.*, No. 6:21-cv-01427-JD (D.S.C. May 13, 2021), ECF 1. Iubelt's and Perry's complaints likewise confirm that their respective decedents—Private First Class Tyler Iubelt and Staff Sergeant Allan Perry—died on November 12, 2016. *See* Compl. ¶ 23, *Iubelt v. Fluor Intercontinental, Inc.*, No. 6:21-cv-01420-JD (D.S.C. May 12, 2021), ECF 1; Compl. ¶ 24, *Perry v. Fluor Intercontinental, Inc.*, No. 6:21-cv-01250-JD (D.S.C. Apr. 27, 2021), ECF 1. Accordingly, the pleadings on their face establish that Brown's claims accrued on December 6, 2016, and Iubelt's and Perry's claims accrued on November 12, 2016.

*Second*, the pleadings establish on their face that these lawsuits were filed well outside of the applicable limitations period under South Carolina law (or any other potentially applicable limitations period, *see supra* n.10).

---

of the Georgia wrongful death act"). Here, the *Loquasto* Plaintiffs initially invoked Texas law, *see supra*, which has a shorter two-year statute of limitations for wrongful death claims. Tex. Civ. Prac. & Rem. § 16.003. The only other potentially applicable statute of limitations would be that under Afghan law. However, as will be explained in an expert declaration to be filed today in support of Fluor's Rule 12(b)(1) motion, Afghan law, like South Carolina law, has a three-year statute of limitations. *See* Decl. of Mehdi Hakimi (forthcoming) at ¶ 40.

Thus, while we cite South Carolina law herein on the limitations issue, this Court need not conduct a choice-of-law analysis regarding this issue, because under any potential statute of limitations these claims are easily time-barred.

These claims are subject to a three-year limitations period, which again, commences on the death of the decedent. *See* S.C. Code Ann. § 15-3-530(1), (5)-(6); *Stokes*, 699 S.E.2d at 349 ("the wrongful death action must be filed within three years, which begins to run 'upon the death of the person on account of whose death the action is brought.'") (citing S.C. Code Ann. § 15-3-530(6)). The pleadings establish on their face that the time-barred claimants filed their suits in April and May of 2021—well over four years after accrual. *Id.*

Accordingly, the pleadings establish that these claims are time-barred, and the Court should dismiss them. *See, e.g., Martineau v. Wier*, 485 F. Supp. 3d 637, 645-46 (D.S.C. 2020) (granting 12(b)(6) dismissal based on limitations).

**B.    The Time-Barred Claimants Cannot Assert a Plausible Tolling Claim.**

These Plaintiffs may try to avoid limitations based on pro forma pleadings asserting equitable tolling and a tolling agreement between the parties. This Court should reject that claim because the Plaintiffs cannot plead a plausible tolling claim—contractual or equitable—to avoid Fluor's limitations defense.

A litigant seeking to avoid a limitations defense bears the burden of establishing sufficient facts to toll limitations. *See Martineau*, 485 F. Supp. 3d at 645-46. This Court is well acquainted with the standards applicable to pleadings filed by a litigant with the burden of proof. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also, e.g., Muntean v. Discover Fin. Servs.*, No. 6:13-1151-HMH, 2013 WL 2636003, at *1-2 (D.S.C. June 12, 2013). The party who bears the burden of proof must plead a "plausible" claim to relief. *See Iqbal*, 556 U.S. at 678. A claim is plausible on its face when the party seeking relief pleads *factual content* that allows the court to draw a reasonable inference that the party is entitled to relief. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). The district court will assume as true all well-pleaded facts for purposes of this inquiry, *see Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020), but legal conclusions and formulaic

19

element recitations are entitled to no such presumption and will not survive scrutiny under Rule 12(b)(6). *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Here, each of the time-barred claimants pleads: "[a]ny applicable statutes of limitations have been partially tolled pursuant to a tolling agreement between the parties and under the doctrine of equitable tolling." *See, e.g., Brown* Compl.¶ 24. This pleading is insufficient to avoid Fluor's limitations defense because, *inter alia,* it does not assert *any* facts to establish a plausible tolling claim. *Id*.

Assuming the time-barred claimants seek leave to amend, the Court should reject such a request because allowing amendment would be futile for at least two reasons.

***First***, as the time-barred claimants are aware, the referenced tolling agreement was, at most, in effect from October 31, 2018 to May 31, 2019—a total of 213 days. Even assuming 213 days were added to relevant limitations period, their claims, which accrued in 2016, still expired long before their 2021 filing.

***Second***, none of the time-barred claimants can assert a plausible claim for equitable tolling relief. Under well-established federal law, the party invoking the doctrine bears the burden of pleading and proving two elements: (1) the litigant has pursued his or her rights diligently, ***and*** (2) some extraordinary circumstances stood in the litigant's way, which prevented timely filing. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012). The United States Supreme Court has consistently characterized these two components as true "elements," not factors of indeterminate or commensurable weight. *See Menominee*, 544 U.S. at 256 (citing *Pace*, 544 U.S. at 408). The Court has treated the two requirements as elements in practice, too, routinely rejecting requests for equitable tolling where

20

the litigant fails to satisfy both. *See id.* (citing *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007); *Pace*, 544 U.S. at 418). Thus, to invoke equitable tolling, the party asserting the claim must plead and prove **both** elements.

The time-barred claimants may argue that the now-dismissed *Loquasto* suit constitutes an "extraordinary circumstance[ ]" that purportedly prevented them from timely filing in this Court. But the second element of the equitable tolling framework is satisfied **only** "in those rare instances where—due to **circumstances external to the party's own conduct**—it would be unconscionable to enforce the limitations period against the party and gross injustice would result." *Edmondson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019) (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc)) (emphasis added). The *Loquasto* litigation was far from a circumstance external to the claimants' own conduct. Quite the contrary: while represented by highly competent and experienced legal counsel, who continue to represent them today in this case, they intentionally, and for their own strategic purposes, **chose** to file the *Loquasto* case in Texas, with **actual knowledg**e of the *Hencely* case pending in this District when they filed. *See supra* at § I.A. Thus, even if the time-barred claimants seek leave to amend their insufficient pleadings, this Court should deny their request and dismiss their claims as time-barred.

## CONCLUSION

In this consolidated action, the *Loquasto* Plaintiffs (twelve of the thirteen Plaintiffs) are plainly seeking an improper second bite at the apple, and their claims are barred under a straightforward application of collateral estoppel. Beyond that, three of the Plaintiffs' wrongful death claims are time-barred based on the face of their Complaints, which demonstrate that their claims accrued and expired long before they filed suit in South Carolina. For all of these reasons, the Court should dismiss the claims of these Plaintiffs with prejudice.

21

Respectfully submitted,

NEXSEN PRUET, LLC

s/Andrew A. Mathias
William W. Wilkins, Fed. ID No. 4662
Andrew A. Mathias, Fed. ID No. 10166
Konstantine P. Diamaduros, Fed. ID No. 12368
104 South Main Street, Suite 900 (29601)
Post Office Box 10648
Greenville, South Carolina 29603-0648
Telephone: 864.370.2211
Facsimile: 864.282.1177
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

TREY GOWDY LAW FIRM, LLC

Harold Watson Gowdy, III, Fed. ID No. 5675
Post Office Box 3324
Spartanburg, South Carolina 29304
Telephone: 864.809.0917
trey@treygowdylawfirm.com

HARTLINE BARGER LLP

Darrell L. Barger (*admitted pro hac vice*)
1980 Post Oak Blvd.
Suite 1800
Houston, Texas 77056
Telephone: 713.759.1990
Facsimile: 713.652.2419
dbarger@hartlinebarger.com

J. Reid Simpson (*admitted pro hac vice*)
800 N. Shoreline Blvd.
Suite 2000, North Tower
Corpus Christi, Texas 78401
Telephone: 361.866.8000
Facsimile: 361.866.8039
rsimpson@hartlinebarger.com

COVINGTON & BURLING LLP

Raymond B. Biagini (*admitted pro hac vice*)

22

Daniel L. Russell Jr. (*admitted pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: 202-662-6000
Facsimile: 202-662-6291
RBiagini@cov.com
DRussell@cov.com

*Attorneys for Defendants Fluor Corporation, Fluor Enterprises, Inc., Fluor Intercontinental, Inc., and Fluor Government Group International, Inc.*

July 30, 2021
Greenville, South Carolina

23