# Exhibit D

# *Wilson Deposition Excerpts*

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION


WINSTON TYLER HENCELY,

        Plaintiff,

                                CIVIL ACTION FILE

        vs.

                                NO. 6:19-CV-00489-BHH

FLUOR CORPORATION FLUOR

ENTERPRISES, INC., FLUOR

INTERCONTINENTAL, INC., FLUOR

GOVERNMENT GROUP

INTERNATIONAL, INC.,

        Defendants.




        CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER


                VIDEO DEPOSITION OF

                    BRYAN WILSON

                   April 2, 2021

                    9:56 a.m.

                Nexsen Pruet, LLC

            55 East Camperdown Way

                   Suite 400

            Greenville, South Carolina

    Robyn Bosworth, RPR, CRR, CRC, CCR-B-2138

CONF Bryan K. Wilson                                    April 2, 2021
Hencely, Winston Tyler v. Fluor Corporation Inc

Page 2

INDEX TO EXHIBITS

EXHIBIT    DESCRIPTION                                           PAGE

For the Plaintiff:

Exhibit 1     12-31-16 AR 15-6 Memo Final
              Signed                                             40

Exhibit 2     Afghanistan North Task Order
              0005 Performance Work Statement
              (PWS)                                              94

Exhibit 4     12-20-16 Army 15-6 Transcript of
              Interview with Fluor by LTG
              James & Team Nonconformance
              Report                                             43

Exhibit 6-1   Fluor Maintenance Tool Room
              Sign Out-In Roster                                 62

Exhibit 50    Declaration of Bryan K. Wilson          8

Exhibit 55-3  Excerpt of the Deposition of
              Bryan K. Wilson taken on February
              6, 2020                                            35

Exhibit 212   Printout from Fluor website
              "Fluor Offices Headquarters"                       13

Exhibit 213   Printout from Fluor website
              "Locations"                                        12

Exhibit 214   Printout from Fluor website of
              office locations                                   14

Exhibit 218   Placeholder for Army regulation

CONF Bryan K. Wilson                    April 2, 2021
Hencely, Winston Tyler v. Fluor Corporation Inc

Page 3

that Fluor may not conduct a

concurrent investigation                    82

INDEX TO EXAMINATION                    PAGE

By Mr. Butler                                    7

Page 4

APPEARANCES OF COUNSEL:

On behalf of the Plaintiff:

JAMES E. BUTLER, JR., ESQ.

Jim@butlerwooten.com

ROBERT H. SNYDER, ESQ.

Rob@butlerwooten.com

Butler, Wooten & Peak LLP

2719 Buford Highway

Atlanta, Georgia  30324

-and-

W. ANDREW BOWEN, ESQ.

Andrew@BowenPainter.com

PAUL PAINTER, III, ESQ.

Paul@BowenPainter.com

Bowen Painter, LLC

215 West York Street

P.O. Box 8966

Savannah, Georgia  31412

Page 5

APPEARANCES (Continued):

On behalf of the Defendants:

          DARRELL L. BARGER, ESQ.

          dbarger@hdbdlaw.com

          Hartline Barger, LLP

          1980 Post Oak Boulevard

          Suite 1800

          Houston, Texas  77056

-and-

          ANDREW A. MATHIAS, ESQ.

          AMathias@nexsenpruet.com

          KONSTANTINE P. DIAMADUROS, ESQ.

          KDiamaduros@nexsenpruet.com

          Nexsen Pruet, LLC

          55 East Camperdown Way

          Suite 400

          P.O. Box 10648

          Greenville, South Carolina  29601

Page 6

APPEARANCES (Continued):

On behalf of the Defendants:

        CHASE JOHNSON, ESQ.

        cjohnson@cov.com

        DAN RUSSELL, ESQ. (Via Telephone)

        drussell@cov.com

        RAY BIAGINI, ESQ. (Via Telephone)

        rbiagini@cov.com

        Covington & Burling LLP

        One City Center

        850 10th Street, N.W.

        Washington, D.C.  20001


Also Present:

        Alan Metts, videographer

Page 32

Q    Can you point to the words that constitute, that are the equivalent of a denial that it was Fluor's fault that Nayeb built the bomb?

A    Well, when we go through the declaration, you will see in there that US military is the one that hired Nayeb; they're the one that put him through school; they're the ones that requested Fluor to hire Nayeb once he graduated the school; they're the ones that vetted him; they're the ones that processed him through the ECP and allowed him to bring explosives on the base; they're the one that set the policies and procedures for escorting, which included that they did not have to be escorted in a -- at the facility or the worksite.

So all the policies and procedures, regulations, background checks, vetting, and requirements that led up to Fluor hiring him through the subcontract, or APS hiring him on behalf of Fluor, was conducted and performed by the military.

MR. BUTLER:  Move to strike as nonresponsive.

BY MR. BUTLER:

Q    Now, Mr. Wilson, you agreed to give direct answers to direct questions, and so I'm going to return to my question in a moment, but to save us

page. Would you look at the first page. Isn't that what it says?

A    Yes, sir.

Q    Now, if you look at page 31, line 24, this is referring to -- y'all had been talking about Nayeb. It says, Question -- this lawyer in Texas asked you this question:

"He didn't have a military individual following him every day?" Question mark.

"Answer: No, sir.

"Supervising his work?

"Answer: No, sir.

"Question: That was Fluor's job?

"Answer: To supervise his work, yes, sir."

Was that your testimony then?

A    Yes, sir.

Q    All right. Thank you.

A    Again, there's a difference between supervising work and supervising and escorting and him not having someone over his shoulder.

Q    Was building a bomb part of Nayeb's work?

A    Absolutely not.

Q    Thank you, sir.

A    Nor was it Fluor's responsibility to

Page 37

maintain 24/7 oversight of Nayeb.  Military didn't
allow it.

Q    Well, we're going to get to that in a
moment, sir.

MR. BUTLER:  And I move to strike the
latter part as nonresponsive.

BY MR. BUTLER:

Q    Two days ago, every time I asked Mr. Riley
what evidence Fluor had, he repeated this refrain
about what evidence Fluor does not have because he
said Fluor has not seen the classified portions of
the Army report, so I want to ask you about that.

First, to say that Fluor has not seen the
classified portions of the Army report is not true,
is it?

A    As far as I know it's true, yes, sir.

Q    Were you aware that some of Fluor's
lawyers have seen the classified portions?

A    I am aware that Don Yenovkian has met with
the military and saw part of the report that was
unclassified, yes, sir.

Q    That was classified?

A    Some of the redactions taken out.

Q    Well, this is -- that's all garbled up.
Let me try again.

Page 46

when we started this deposition, I don't want to know what you don't know because it's kind of useless to us and to the judge and jury.  What I want to know is:  Does Fluor have any evidence to dispute that statement that I just read?

MR. BARGER:  Form.

THE WITNESS:  My personal opinion the majority of the 15-6 investigation disputes it and actually further verifies that Fluor was in compliance with military policies, procedures, rules and regulations for escorting of local nationals, and it also identifies that the military was responsible for the vetting.  They hired Nayeb; they allowed him on the base; they set the parameters on which he was to be escorted and supervised; they set the parameters on which Fluor was allowed to hire people to provide oversight; they set the policies and procedures and everything in regards to Nayeb, and they're the ones that was responsible for searching him the day he came onto the base and detonated the suicide bomb.

BY MR. BUTLER:

Q    Sir, every statement you just made is false, isn't it?

A    No, sir.

CONF Bryan K. Wilson                         April 2, 2021
Hencely, Winston Tyler v. Fluor Corporation Inc

Page 98

A    It's very important, yes, sir.

Q    Okay.  Well, if it's so important, why didn't somebody from Fluor ever ask him?

A    We are not -- Fluor is not responsible for vetting local nationals or authorizing them base access.  US military is responsible for the force protection screening cell and all the vetting of the local nationals to include counterintelligent agent support of that and PCASS and everything else that they do before they vet and grant access to local nationals to the base.

And Task Force Red Bulls commander when he was being sponsored for the Korean vocational school as part of his reintegration program, they identified that he was former Taliban.  They wrote a memorandum authorizing him base access and said they would take appropriate security measures to keep the people of Bagram safe and respond to any incidents.

And then when he graduated the vocational school that the military sponsored him for, they requested Fluor to hire all graduates without disclosing this previous information and then sent him back through the force protection screening cell again where he was again interviewed by US military augmentees and personnel and granted him a badge and

CONF Bryan K. Wilson                                April 2, 2021
Hencely, Winston Tyler v. Fluor Corporation Inc

Page 99

base access.

MR. BUTLER:  I may move to strike that as nonresponsive, but I'll have to read it after we get a transcript because it was so long I can't quite absorb it.

BY MR. BUTLER:

Q    But back to my question.  If possibly being a former member of the Taliban was so important, why didn't somebody for Fluor just ask Mr. Nayeb?

A    Fluor entrusts to the military to conduct proper background vetting prior to them granting authorization for individuals to access and/or work on US military installations.

Q    Was there anything that kept Fluor from asking Mr. Nayeb or any other local national the simple question:  Were you ever a member of the Taliban?

A    One, Fluor has no counterintelligent agents to dive into or vet any answers given by the Taliban -- I mean or by local nationals like the military does, but Fluor, again, entrusts the military and their local employed personnel hiring practices and procedures to conduct that background vetting and to approve or deny base access.