**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| Timothy Tangen, | |
| Plaintiff, | |
| v. | C/A No.: 6:21-cv-00335-JD |
| Fluor Intercontinental, Inc., et al., | |
| Defendants. | |
| | |
| Marissa Brown, | |
| Plaintiff, | C/A No.: 6:21-cv-01427-JD |
| v. | |
| Fluor Intercontinental, Inc., et al., | |
| Defendants. | |
| | |
| Shelby Iubelt, individually, on behalf of the Estate of Tyler Iubelt, and as next friend of V.I., minor, | C/A No.: 6:21-cv-01420-JD |
| Plaintiff, | |
| v. | |
| Fluor Intercontinental, Inc., et al., | |
| Defendants. | |
| | |
| Lakeia Stokes, | |
| Plaintiff, | C/A No.: 6:21-cv-01086-JD |
| v. | |
| Fluor Intercontinental, Inc., et al., | |
| Defendants. | |

Maggie Bilyeu,

   Plaintiff,

  v.

Fluor Intercontinental, Inc., et al.,

   Defendants.

C/A No.: 6:21-cv-01078-JD

Addie Ford,

   Plaintiff,

  v.

Fluor Intercontinental, Inc., et al.,

   Defendants.

C/A No.: 6:21-cv-01159-JD

Marvin Branch,

   Plaintiff,

  v.

Fluor Intercontinental, Inc., et al.,

   Defendants.

C/A No.: 6:21-cv-01083-JD

Julianne Perry, individually, on behalf of the
Estate of John Perry, and as next friend of L.P.
and G.P., minors,

   Plaintiff,

  v.

Fluor Intercontinental, Inc., et al.,

   Defendants.

C/A No.: 6:21-cv-01250-JD

Haylee Rodriguez,

          Plaintiff,

    v.

Fluor Intercontinental, Inc., et al.,

          Defendants.

C/A No.: 6:21-cv-01084-JD

India Sellers,

          Plaintiff,

    v.

Fluor Intercontinental, Inc., et al.,

          Defendants.

C/A No.: 6:21-cv-01085-JD

Samuel Gabara,

          Plaintiff,

    v.

Fluor Intercontinental, Inc., et al.,

          Defendants.

C/A No.: 6:21-cv-01007-JD

Chris Colavita,

          Plaintiff,

    v.

Fluor Intercontinental, Inc., et al.,

          Defendants.

C/A No.: 6:21-cv-01017-JD

Robert Healy,

        Plaintiff,

    v.

Fluor Intercontinental, Inc., et al.,

        Defendants.

C/A No.: 6:21-cv-01018-JD

**REPLY IN SUPPORT OF**
**DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS**
**ALL PLAINTIFFS' CLAIMS BASED ON**
**THE POLITICAL QUESTION DOCTRINE AND**
**THE SOUTH CAROLINA DOOR CLOSING STATUTE**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 4

I.  PLAINTIFFS HAVE NO ANSWERS TO THE ARGUMENTS AND
    EVIDENCE ESTABLISHING APPLICATION OF THE POLITICAL
    QUESTION DOCTRINE. ................................................................................... 4

    A.  Plaintiffs Ignore Undisputed Evidence Showing That the Military Had
        Direct Control Over the Hiring, Retention, and Supervision of Nayeb. ................ 4

    B.  Plaintiffs Have No Response to Fluor's Explanation As to Why Judge
        Hendricks' Political Question Opinion Was Wrongly Decided. ........................... 7

    C.  Plaintiffs Ignore Fluor's Argument on the Second *Taylor* Factor. ........................ 8

    D.  Plaintiffs Ignore That They Have Directly Challenged Military Actions. .............. 8

II. PLAINTIFFS MISCHARACTERIZE FLUOR'S CHOICE-OF-LAW
    ARGUMENT. ....................................................................................................... 8

    A.  The *Loquasto* Plaintiffs Are Judicially Estopped From Arguing For Any
        Substantive Law Besides Texas Law. ..................................................................... 9

    B.  Plaintiffs' Focus on the Current Law of Afghanistan Is Legally Misplaced. ......... 9

    C.  Plaintiffs Mischaracterize the Legal Relevance of the Security and
        Defense Cooperation Agreement Between the United States and
        Afghanistan. ............................................................................................................ 11

    D.  Plaintiffs Do Not Dispute That Afghanistan Law, as It Existed in 2016,
        Includes Apportionment of Liability to Non-Parties. ............................................ 12

III. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS BASED ON THE
     SOUTH CAROLINA DOOR CLOSING STATUTE. .................................... 12

    A.  Plaintiffs' Breach-of-Contract Claims Are Legally Defective and, In Any
        Event, Barred By the Door Closing Statute. .......................................................... 12

    B.  Plaintiffs' Tort Claims Are Barred By the Door Closing Statute. ......................... 13

    C.  The Statute Does Not Require Another Forum Providing "Full Relief." ............. 14

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boisvert v. Techtronic Indus. N. Am., Inc.*,
   56 F. Supp. 3d 750 (D.S.C. 2014)......................................................................13, 14

*Bumgarder v. Keene Corporation*,
   593 F.2d 572 (4th Cir. 1979) ...........................................................................14

*California Buffalo v. Glennon-Bittan Grp., Inc.*,
   910 F. Supp. 255 (D.S.C. 1996).......................................................................15

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*,
   572 F.3d 1271 (11th Cir. 2009) ..................................................................5, 6, 11

*Collins v. RJ Reynolds Tobacco Co.*,
   92 F.3d 1177 (4th Cir. 1996) ...........................................................................15

*Conner v. Techtronic Indus. N. Am., Inc.*,
   No. 8:13-CV-02353-JMC, 2015 WL 3871889 (D.S.C. June 23, 2015) .................................15

*Est. of Alvarez v. Johns Hopkins Univ.*,
   275 F. Supp. 3d 670, 706 (D. Md. 2017) ............................................................10

*Feres v. United States*,
   340 U.S. 135 (1950)......................................................................................11

*Fung Lin Wah Enterprises Ltd. v. E. Bay Imp. Co.*,
   465 F. Supp. 2d 536 (D.S.C. 2006)...................................................................13

*Hencely v. Fluor Corp.*,
   No. 6:19-00489-BHH, 2021 WL 3568397 (D.S.C. Aug. 11, 2021)................................ *passim*

*Hencely v. Fluor Corp.*,
   No. 6:19-00489-BHH, 2021 WL 3604781 (D.S.C. Aug. 13, 2021).....................................13

*In re KBR, Inc. Burn Pit Litig.*,
   893 F.3d 241 (4th Cir. 2018) ......................................................................5, 6, 7

*Loquasto v. Fluor Corp., Inc.*,
   No. 3:19-CV-1455-B, 2021 WL 75550 (N.D. Tex. Jan. 8, 2021) ....................................1, 3, 6

*MC Asset Recovery, LLC v. S. Co.*,
   No. 1:06-CV-0417-BBM, 2008 WL 11333464 (N.D. Ga. Apr. 1, 2008)................................10

*Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.*,
   422 F. Supp. 405 (N.D. Ill. 1976). ........................................................................10

*Proctor & Schwartz, Inc. v. Rollins*,
   634 F.2d 738 (4th Cir. 1980) ........................................................................14, 15

*Rogers v. Lee*,
   777 S.E.2d 402 (S.C. Ct. App. 2015)..................................................................14

*Szantay v. Beech Aircraft Corp.*,
   349 F.2d 60 (4th Cir. 1965) ..................................................................................16

*Taylor v. Kellogg, Brown & Root Servs., Inc.*,
   658 F.3d 402 (4th Cir. 2011) ..................................................................................8

*Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*,
   463 F. Supp. 2d 544 (D.S.C. 2006)......................................................................14

## INTRODUCTION

In their Opposition, ECF 84, Plaintiffs argue that the political question doctrine does not bar these battlefield tort suits for three main reasons: (1) This Court should "follow a similar reasoning" as the June 2020 *Hencely* decision (*see* ECF 84 at 14); (2) "The military did not choose how Fluor should carry out its contractual duties," and instead Fluor retained discretion regarding how to supervise, manage, and retain the Taliban bomber Nayeb (*id.*); and (3) "South Carolina law—not Afghanistan law—applies" and thus "the second *Taylor* factor is not met" (*id.* at 17-24). As explained herein, each of these arguments is flawed.

But what is most glaring about Plaintiffs' Opposition is not what is included; it is what is *missing*. Fluor's jurisdictional motion cited a vast record developed over the past several years, including undisputed testimony provided in 2021 by five witnesses: (1) U.S. Army Contracting Officer Lindsay Weindruch; (2) U.S. Army Contracting Officer Gordon Jones; (3) U.S. Army Lt. Gen. (Ret.) Mick Bednarek; (4) Fluor Contracts Manager Ron Riley; and (5) Fluor Security Manager Bryan Wilson. After Fluor filed its motion, Plaintiffs requested and received the transcripts from these 2021 depositions. And Plaintiffs requested and received the opportunity to depose Mr. Jones, the lone fact witness their counsel had not deposed in prior litigation.[1]

Despite having all of this new evidence in hand, and despite being given the opportunity to further develop the record, Plaintiffs cite *none* of the 2021 depositions, Plaintiffs chose *not* to depose Mr. Jones, and Plaintiffs ignore *all* facts supporting Fluor's motion. Adopting a "blinders on" approach to the jurisdictional record, Plaintiffs selectively quote two 2020 depositions and ignore everything else. Plaintiffs' failure to even acknowledge the current record is telling.

---

[1] Plaintiffs' counsel deposed four of these witnesses during the *Loquasto* case, which was dismissed based on the political question doctrine. *See Loquasto v. Fluor Corp., Inc.*, No. 3:19-CV-1455-B, 2021 WL 75550 (N.D. Tex. Jan. 8, 2021).

The record now before the Court establishes that these suits are barred under both *Taylor* factors. Most notably, Plaintiffs' Opposition ***never*** mentions the following undisputed facts:

- The Military dictated that Nayeb would be hired in the first instance because the Military deemed it strategically beneficial, and in furtherance of the NATO Afghan First Program, to place a known Taliban associate on the base—without warning Fluor. *See* ECF 67-1 at 6-7.[2]

- The Military controlled Nayeb's retention as an employee at BAF and, despite red flags during Military security interviews, the Military repeatedly decided that Nayeb should be retained because, the Military wrongly concluded, he did not pose a security risk. *See* ECF 67-1 at 8-9.

- The Military controlled intelligence gathering and obtained specific intelligence "the night before" the attack indicating an attack on the base was imminent, but failed to act on this intelligence, and failed to warn Fluor of this extraordinary risk. *See* ECF 64-16 at 3.

- The Military controlled the manner, means, and methods by which Nayeb was subjected to oversight, including by dictating the escorting parameters. *See* ECF 67-1 at 9-10.

- Prior to the attack, the Military repeatedly rejected Fluor's proposals to perform "24/7 eyes-on" escorting—which would have resulted in constant escorting of Local Nationals, including Nayeb, at their worksites. *See* ECF 67-3 at 61:6-68:18.

- The Military controlled when Local Nationals were left unsupervised. For example, pursuant to General Order 1, issued by the U.S. Central Command, the Military "prohibited entry into the prayer areas and the mosque[s]" at BAF. *See* ECF 67-3 at 53:9-12; *id.* at 37:11-38:2.

- The Military further controlled oversight and movement of Local Nationals at BAF through a "surveillance system," including "a surveillance guide and a surveillance schedule," whereby "any time there was a movement of [Local National] personnel," a Military person was assigned to ensure Military policies were followed. *See* ECF 67-3 at 80:22-81:21.

- The Military designed and controlled the Entry Control Points and the Military was solely responsible for detecting incoming deadly explosives or other contraband. *See* ECF 67-1 at 10.

- The Military controlled base access and thus decided which Local Nationals were allowed ***onto*** the base each day. *See* ECF 64-3 ¶ 17. The Military was also solely responsible for the critical role of transporting Local Nationals ***off*** the base each day. *See* ECF 67-3 at 81:6-21.

Rather than acknowledge these central and undisputed facts, Plaintiffs focus on allegations

---

[2] Fluor's Rule 12(b)(1) motion (ECF 67-1) cited previously-filed motions and exhibits. The Court denied Fluor's non-jurisdictional motions without prejudice, *see* ECF 70, but the materials cited by Fluor to support its Rule 12(b)(1) motion remain in the record. *See also* ECF 67-1 at 12 (setting forth standard of review and Court's obligation to weigh evidence).

regarding what took place on the morning of Nayeb's attack. ECF 84 at 2-9. These allegations are legally irrelevant at this stage.[3] The application of the political question doctrine under the *Taylor* test does not turn on whether Nayeb evaded his scheduled escort on the morning of the attack. Nor does the ***jurisdictional*** issue turn on the ***merits*** of Plaintiffs' claim that Fluor negligently retained or supervised Nayeb. Rather, the *Taylor* test turns on whether either (1) Fluor's retention and supervision of Nayeb was subject to Military "control," or (2) Fluor's conduct was governed by Military decisions intertwined with "national defense interests." The record establishes both.

In addition to ignoring key facts, Plaintiffs never respond to Fluor's argument for dismissal under the plain language of the second *Taylor* factor because the Military decisions governing Fluor's activities were plainly tied to "national defense interests." ECF 67-1 at 20-22. Sidestepping this core *Taylor*-factor-two issue, Plaintiffs instead argue at length against application of Taliban law. But Fluor is not seeking to apply Taliban law. If the Court must resolve choice of law, the *lex loci* rule leads to application of Afghan law as it existed ***at the time of the 2016 attack***.

Plaintiffs' "head in the sand" approach is further illustrated by their incredible contention that "the military's conduct is not at issue in this lawsuit." *See* ECF 84 at 24. There is no serious dispute that the Military's conduct would be "front and center" at any trial, regardless of what law applies. *See Loquasto*, 2021 WL 75550, at *7. As Judge Hendricks explained in dismissing the related *Hencely* matter in August 2021:

> ***Allowing this litigation to proceed would also undermine military discipline, as soldiers would inevitably be haled into court proceedings to testify and to implicate and critique the conduct of other soldiers and senior officers.*** The recent depositions of Army personnel offer a preview of such "military versus military" testimony. For example, Lieutenant General (Ret.) Mick Bednarek testified that Lieutenant General Thomas James, the Investigating Officer in

---

[3] Some of the purported "facts" in Plaintiffs' Opposition have now been refuted by undisputed evidence, as explained *infra*. Regardless, the existence of merits disputes about how Nayeb executed his attack is of no moment to the jurisdictional political question doctrine inquiry.

charge of the Army's 15-6 investigation, "just got it wrong." *Such proceedings*, in which Military commanders, officers, and their subordinates are pointing the finger at one another, *cause great harm to military discipline and offend separation-of-powers principles*. The *inevitability* of such testimony provides further reason why this suit should be dismissed.

*Hencely v. Fluor Corp.*, No. 6:19-00489-BHH, 2021 WL 3568397, at *11 (D.S.C. Aug. 11, 2021) (citations omitted) (emphasis added).

Finally, Plaintiffs' arguments in opposition to the Door Closing Statute are also meritless. Plaintiffs ignore two elephants in the room. First, Plaintiffs rest their argument on the existence of a breach-of-contract claim that, the *Hencely* court explained, is defective as a matter of law. Second, Plaintiffs fail to mention that they strategically chose to file this suit in South Carolina only *after* trying a different forum first and losing. None of the Plaintiffs are South Carolina residents, they sued foreign defendants, and no challenged conduct occurred in South Carolina. The Door Closing Statute was designed to eliminate this very sort of forum shopping.

## ARGUMENT

I.   **PLAINTIFFS HAVE NO ANSWERS TO THE ARGUMENTS AND EVIDENCE ESTABLISHING APPLICATION OF THE POLITICAL QUESTION DOCTRINE.**

A.   **Plaintiffs Ignore Undisputed Evidence Showing That the Military Had Direct Control Over the Hiring, Retention, and Supervision of Nayeb.**

Plaintiffs emphasize that the Court "is not writing on a blank slate in this case," citing related litigation ongoing since 2019. *See* ECF 84 at 12. Yet, Plaintiffs do their best to wipe the slate clean by ignoring virtually all of the developments in the related litigation. Fluor's opening brief cited numerous facts in the now-expansive record that demonstrate Military "control" over the retention, supervision, and escorting of Nayeb—*i.e.*, the conduct challenged by Plaintiffs. *See* ECF 67-1 at 14-18. Incredibly, Plaintiffs do not mention *any* of those key facts. Because Plaintiffs simply ignore the vast majority of the record evidence, Plaintiffs' conclusory refrain that the military "did not have actual control" rings hollow.

4

For example, Plaintiffs' repeatedly argue that the military gave Fluor "discretion to determine the manner in which the contractual duties would be performed." ECF 84 at 14, 15. To support that argument, Plaintiffs selectively quote two depositions taken in February 2020, which in turn reference provisions in the LOGCAP IV Contract. *Id*. At most, that testimony confirmed the unremarkable fact that, under the contract, Fluor was tasked with performing some elements of supervision and transportation of personnel within the confines of the base, which was secured by Military personnel. *See*, *e.g.*, ECF 84 at 16 ("Under Fluor's contract with the military, Fluor was responsible to provide transportation and supervision necessary for its employees to accomplish their work.") (quotation omitted). Fluor's opening brief readily acknowledged these contract provisions and explained that, under Fourth Circuit precedent governing application of the political question doctrine, such contract provisions cannot be viewed in isolation. *See* ECF 67-1 at 18 (citing cases). In response, Plaintiffs present the contract provisions in isolation.

As the Fourth Circuit emphasized, focusing on contract provisions in abstract isolation "places form over substance" and reveals only "the formal, contractual relationship between the military and [the contractor] while ignoring the actual, operational relationship between them." *See In re KBR, Inc. Burn Pit Litig.*, 893 F.3d 241, 263 (4th Cir. 2018) ("*Burn Pit III*"). And, as Fluor explained (*see* ECF 67-1 at 15-20), the facts regarding the actual, operational relationship that existed between the Military and Fluor at BAF—facts that Plaintiffs entirely ignore—show that Fluor's authority to supervise "plainly was not exclusive or absolute." *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1295 (11th Cir. 2009). For example, the Military dictated the parameters for how, when, and where Fluor was required to provide escorting of Local Nationals. *See* ECF 67-1 at 15. Fluor repeatedly sought authorization from the Military to provide enhanced "24/7 eyes-on" escorting—*i.e.*, constant oversight of Nayeb and other Local

5

Nationals throughout the base, including at the worksite. *See* ECF 67-1 at 16. But based on battlefield exigencies, the Military rejected Fluor's proposals and prohibited Fluor from performing enhanced oversight. *Id.*; *see also* ECF 1 at ¶ 58 (alleging "Nayeb worked alone and unsupervised at the HAZMAT work center"). In addition, the Military established a "surveillance system" to ensure its policies were followed "any time there was a movement of [Local National] personnel" at BAF. *See* ECF 67-1 at 16. Indeed, with regard to base security and the mechanisms in place at BAF to prevent an enemy attack, the Military's control was absolute. As one court explained: "If Nayeb smuggled explosives onto Bagram, he did so through the military security screening checkpoints—and thus on the military's watch." *Loquasto*, 2021 WL 75550, at *8. As a result of all of these facts, "the inquiry necessary to adjudicate [Plaintiff's] negligent supervision claim could not be cabined to [Fluor's] supervisory practices, but would rather require examination of military policies and judgments." *See Carmichael*, 572 F.3d at 1295.

Plaintiffs have no answer to the facts showing that the Military's control here is akin to that in *Burn Pit*, in which the contractor "had little to no discretion in choosing how" to carry out the challenged activities. *See Burn Pit III*, 893 F.3d at 261; ECF 67-1 at 15-16. Fluor "had little to no discretion" in deciding whether to hire Nayeb in the first place; Fluor "had little to no discretion" when it came to vetting Nayeb and monitoring his threat level; and, Fluor "had little to no discretion" in deciding whether, when, and how to oversee Nayeb at BAF. *See id.* Instead, Fluor was controlled by Military directives, and Fluor "could not unilaterally choose" to enact different or additional options for security or for oversight related to Local Nationals. *See id.*

Finally, to compound their "blinders on" approach to the record, Plaintiffs also blatantly mischaracterize the little evidence they do cite. For example, Plaintiffs rely on Bryan Wilson's February 2020 testimony to argue that supervision of Nayeb "was Fluor's job." *See* ECF 84 at 15.

But Plaintiffs fail to mention that Wilson unequivocally testified that "the U.S. Government dictated exactly how [Nayeb] was to be supervised." *See* ECF 84, Ex. A at 18.

### B.    Plaintiffs Have No Response to Fluor's Explanation As to Why Judge Hendricks' Political Question Opinion Was Wrongly Decided.

Fluor explained that the June 2020 *Hencely* decision regarding the political question doctrine contained legal errors and, beyond that, did not consider evidence now in the record. *See* ECF 67-1 at 19-21. For example, the June 2020 *Hencely* court did not have the benefit of the testimony of Gordon Jones, a senior Army Contracting Officer who explained, *inter alia*, that Fluor was **prohibited** by the Military from performing constant "24/7 eyes-on" escorting at the job site—meaning, the Military exercised direct control over the level of oversight, and Fluor had no discretion to perform increased oversight. *Id*. In the August 2021 *Hencely* dismissal (based on preemption), Judge Hendricks emphasized the significance of the 2021 testimony, citing the "recent depositions of Army personnel" as proof continued litigation would "offend separation-of-powers principles." *Hencely*, 2021 WL 3568397, at *11. Especially in light of the August 2021 *Hencely* dismissal, Plaintiffs' continued reliance on the June 2020 opinion is misplaced.

Plaintiffs rely on a lengthy block quote from the June 2020 *Hencely* opinion. *See* ECF 84 at 13. That quote illustrates one of the opinion's legal flaws.[4] As Plaintiffs note, *Hencely* framed the "control" issue as whether the Military "direct[ed] Fluor to…*So fail to* supervise the bomber that he was able to attack the U.S. Army." *Id*. (quoting *Hencely*, 2020 WL 2838687, at *8-9). Under *Taylor*, the question is whether the Military exercised "control" over the challenged conduct such that evaluating Fluor's conduct "would lead to scrutinizing military decisions." *See Burn Pit III*, 893 F.3d at 259. The issue is **not** whether the Military directed Fluor **to act negligently**. The

---

[4] As previously noted, another legal flaw in the June 2020 *Hencely* opinion was the failure to conduct a choice-of-law analysis. *See* ECF 67-1 at 22, n.17; *see also id*. at 3, n.3.

Court should reject this misstatement of the applicable legal framework.

**C.    Plaintiffs Ignore Fluor's Argument on the Second *Taylor* Factor.**

Plaintiffs never address Fluor's standalone argument for dismissal based on the plain language of the second *Taylor* factor, *see* ECF 67-1 at 20-22, because "national defense interests were closely intertwined with the military's decisions governing [Fluor's] conduct." *See Taylor v. Kellogg, Brown & Root Servs., Inc.*, 658 F.3d 402, 411 (4th Cir. 2011). The record easily establishes this independent ground for dismissal. National defense interests, including the Afghan First Program, were at the heart of the Military decision to place Nayeb onto the base despite the Military's knowledge of Nayeb's Taliban ties. *See* ECF 67-1 at 21. National defense interests were closely intertwined with: (i) the Military's repeated vetting and approval of Nayeb for base access; (ii) the Military's repeated security screenings of Nayeb; (iii) the Military's establishment of escort policies and procedures; (iv) the Military's establishment of a surveillance system for ensuring compliance with its escort policies; and (v) the Military's establishment of security protocols at ECPs (which presumably failed, allowing deadly explosives to be smuggled onto BAF). *Id*.

**D.    Plaintiffs Ignore That They Have Directly Challenged Military Actions.**

Indisputable facts show that the Military alone had the responsibility to escort Nayeb and other Local Nationals off the base each day. *See* ECF 67-3 at 81:14-21; *see also* ECF 67-2 at 115:13-21. As a result, Plaintiffs ***directly*** challenge actions that were the ***sole*** responsibility of the Military by alleging: "Defendants were required to ensure that employees like Nayeb were physically escorted off the Base at the end of their work shifts." *See* ECF 1 ¶ 5; *see also id*. ¶ 108(c). Like numerous other facts set forth in Fluor's brief, Plaintiffs ignore this.

## II.    PLAINTIFFS MISCHARACTERIZE FLUOR'S CHOICE-OF-LAW ARGUMENT.

Almost seven pages of Plaintiffs' Opposition are devoted to the many reasons why Plaintiffs believe it would be improper for this Court to apply Taliban law. *See* ECF 84 at 17-23.

This is a non-issue. Fluor does not argue that Taliban law should apply.

The unstated but legally flawed assumption underlying Plaintiffs' position is that the law of Afghanistan as it exists **today** has some relevance to this suit, which arises out of activities at BAF **in November 2016**. As reiterated below, the Court may not need to conduct any choice-of-law analysis here, but, to the extent one is necessary, the South Carolina *lex loci* rule results in application of the law of Afghanistan as of the date of the attack.

### A.    The *Loquasto* Plaintiffs Are Judicially Estopped From Arguing For Any Substantive Law Besides Texas Law.

In a separate motion that the Court denied without prejudice, Fluor explained that twelve Plaintiffs are judicially estopped from arguing for the application of **any** substantive tort law other than that of Texas. *See* ECF 66-1 at 1-2, 7-14. The Court declined to resolve the collateral estoppel issue at this time, but as to the *Loquasto* Plaintiffs, the Court should conclude that **judicial** estoppel bars their contention that South Carolina law applies. *See id*. The Court should apply Fourth Circuit precedent to hold that the *Loquasto* Plaintiffs' Texas-law-based claims are non-justiciable. *Id*.

### B.    Plaintiffs' Focus on the Current Law of Afghanistan Is Legally Misplaced.

Even assuming, *arguendo*, that all Plaintiffs could argue for application of a substantive law besides Texas, the Court should still reject Plaintiffs' choice-of-law position.

Plaintiffs argue that, as a matter of public policy, this Court cannot apply Taliban *Shari'a* law. ECF 85 at 17-23. But Fluor never sought application of Taliban law. Plaintiffs' entire argument begins from the flawed, unstated assumption—supported by no precedent—that South Carolina's *lex loci* rule would result in application of **current** Afghanistan law. But courts faced with analogous circumstances—*i.e.*, situations in which there has been some change in the substance of a foreign law between the time an action arose and the time the choice-of-law decision is made—have repeatedly held that the applicable law is that from the time of the injury.

For example, in *Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.*, the choice-of-law rules directed that the law of Mozambique governed. *See* 422 F. Supp. 405, 408 (N.D. Ill. 1976). In that suit, between the time of the alleged injury and the time of the lawsuit, the law of the foreign forum changed because Mozambique became an independent nation. Yet, the court explained that the substantive law as it existed at the time of the injury—not at the time of the lawsuit—governed. *See id.* at 407 n.1, 408-09. The court held: "to the extent that Mozambique law is controlling, it is the law as it existed at the time of the alleged wrong." *Id.* at 407 n.1.

Similarly, the District of Maryland addressed a change in a foreign country's substantive law in *Est. of Alvarez v. Johns Hopkins Univ.*, 275 F. Supp. 3d 670, 706 (D. Md. 2017). Like *Pancotto*, the *Alvarez* court likewise applied the law of the foreign forum (Guatemala) that was in place at the time of the alleged injury. *Alvarez* declined to apply the current version of law, reasoning that it would be "unsound to conclude that a lawful action taken in 1946 can be retroactively rendered tortious by a statute passed seventeen years thereafter." *Id.* In another example, the Northern District of Georgia, faced with a change in Georgia law between the time of the conduct and the time of the lawsuit, emphatically rejected the notion that current law should govern. *See MC Asset Recovery, LLC v. S. Co.*, No. 1:06-CV-0417-BBM, 2008 WL 11333464, at *2, *10 (N.D. Ga. Apr. 1, 2008) (applying law "in effect at the time of the transfers").

Here, to the extent the Court must address choice of law, and to the extent it is appropriate to apply ***any*** tort law principles, the *lex loci* rule should result in application of the Afghanistan law as it existed in 2016.[5] As other courts have recognized, it would be illogical and unworkable to apply a new (and perhaps changing) substantive law to conduct that took place years ago.

---

[5] As previously noted, Fluor respectfully disagrees with the Fourth Circuit's holding that ***state***-specific contours of tort law can impact application of the ***federal*** political question doctrine—a

### C.    Plaintiffs Mischaracterize the Legal Relevance of the Security and Defense Cooperation Agreement Between the United States and Afghanistan.

Plaintiffs claim it was Fluor's position that the Security and Defense Cooperation Agreement "provides that Afghanistan law applies to torts committed there." ECF 84 at 18. But Fluor did not argue that the agreement itself triggered application of Afghan tort law. Fluor simply pointed out that, under the agreement, the soil at BAF was property of Afghanistan, and thus the "*locus*" of the attack for purposes of the *lex loci* rule was Afghanistan (as opposed to soil belonging to another sovereign). *See* ECF 67-1 at 23, n.19. Plaintiffs do not dispute this point. For good reason: the agreement repeatedly emphasizes that bases remained "the territory of Afghanistan."[6]

Plaintiffs argue that the agreement "provides that Americans would be covered by United States law," and Plaintiffs selectively quote a handful of provisions that reference the law of the United States. *See* ECF 84 at 19. But nothing in the agreement addresses the question of choice-of-law with regard to tort claims brought against contractors. For example, Plaintiffs point to a provision that states: "United States forces are bound by the laws and regulations of the United States . . . ." ECF 84 at 19 (quoting SDCA). But Plaintiffs' quotation left out the following context:

---

premise the Eleventh Circuit rejected. *See* ECF 67-1 at 3 n.3; *Carmichael*, 572 F.3d at 1288 n.13 ("We find it unnecessary to address the [choice-of-law] issue here as well since, given the uniformity of negligence law among the states, ***our analysis would remain the same regardless of which state's law applied***.") (emphasis added). Here, for example, the Fourth Circuit's rule could lead to disparate treatment of Plaintiffs, with individual claims deemed justiciable or non-justiciable based on the happenstance of residency or a forum's choice-of-law rules—even though the litigation and trial of all claims would be identical and would present identical offenses to separation of powers. *See*, *e.g.*, *Hencely*, 2021 WL 3568397, at *11; *see also Feres v. United States*, 340 U.S. 135, 144 (1950) ("That the geography of an injury should select the law to be applied to his tort claims makes no sense…It would hardly be a rational plan of providing for those disabled in service by others in service to leave them dependent upon geographic considerations over which they have no control and to laws which fluctuate in existence and value.").

[6] *See* Security and Defense Cooperation Agreement ("SDCA") at 3-18 (available at https:/www.state.gov/15-101/). The agreement also notes: "It is the duty of members of the force and of the civilian component to respect the Constitution and laws of Afghanistan." *Id.* at 5.

> United States forces, in accordance with United States laws, may enter
> into contracts for the acquisition of articles and services, including
> construction, *in the territory of Afghanistan*. Afghanistan recognizes that
> United States forces are bound by the laws and regulations of the United
> States *in the solicitation, award, and administration of such contracts*.

*See* SDCA at 12 (emphasis added). Far from supporting application of Afghan tort law to a private

suit brought against a contractor, this provision simply reinforces that U.S. bases remain "the

territory of Afghanistan," while noting that *the United States* is bound by U.S. contracting laws in

the administration of federal government contracts.

### D. Plaintiffs Do Not Dispute That Afghanistan Law, as It Existed in 2016, Includes Apportionment of Liability to Non-Parties.

Finally, because Plaintiffs never address the choice-of-law argument that Fluor presented,

they do not challenge the substance of Professor Hakimi's declaration, nor his ultimate conclusion

regarding the content of Afghan law as of 2016. In fact, Plaintiffs apparently recognized that they

would be unable to mount any serious challenge to Professor Hakimi: After gaining Fluor's

agreement to conduct a deposition of Professor Hakimi, Plaintiffs declined to pursue the

deposition. As such, Professor Hakimi's opinions are unchallenged, and the Court should find that

the Afghan Civil Code includes a proportional-liability rule that assigns liability based on fault—

thereby triggering dismissal based on the political question doctrine. *See* ECF 67-1 at 25-27.

## III. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS BASED ON THE SOUTH CAROLINA DOOR CLOSING STATUTE.

### A. Plaintiffs' Breach-of-Contract Claims Are Legally Defective and, In Any Event, Barred By the Door Closing Statute.

Plaintiffs' primary argument against application of the Door Closing Statute is that "the

contract at issue in this case was administered" in South Carolina. *See* ECF 84 at 28-31. Plaintiffs

ignore that their breach claim is legally invalid, and they misstate the law relevant to the statute.

First, consistent with their overarching "head in the sand" strategy, Plaintiffs ignore the

obvious: Judge Hendricks dismissed an identical breach-of-contract claim because active duty soldiers, such as Plaintiffs, lack standing as third-party beneficiaries to sue for breach of contract. *See Hencely v. Fluor Corp.*, No. 6:19-00489-BHH, 2021 WL 3604781 (D.S.C. Aug. 13, 2021).

Second, Plaintiffs are correct that "[w]hen a contract is involved, the question for purposes of the door-closing statute is whether the contract was made or was to be performed in South Carolina." ECF 84 at 30. But Plaintiffs are incorrect that the performance complained of here occurred in South Carolina. Plaintiffs heavily rely on Judge Hendricks' Door Closing opinion in *Hencely*, including the determination that the LOGCAP IV contract "was centrally administered from Fluor's corporate offices in Greenville, South Carolina." *See Hencely*, ECF 78 at 4.[7] But, contrary to *Hencely*, it is the location of the contract performance—not contract administration—that is controlling for the purposes of a Door Closing analysis. *See Fung Lin Wah Enterprises Ltd. v. E. Bay Imp. Co.*, 465 F. Supp. 2d 536 (D.S.C. 2006) ("A cause of action on a contract arises at the place of performance; for there the delict or wrong, which is the refusal to perform, takes place. . . . So that the final test as to where an action on a contract arises is to ascertain the place where it is to be performed."). Here, even assuming *arguendo* that the contract was administered in South Carolina, the challenged contract performance occurred in Afghanistan.[8]

**B.     Plaintiffs' Tort Claims Are Barred By the Door Closing Statute.**

Plaintiffs offer no argument as to why their tort claims should survive the Door Closing Statute. It is well-established rule that "the substantive law governing a tort action is determined

---

[7] Fluor respectfully submits that Judge Hendricks' opinions on the Door Closing Statute in *Hencely* are incorrect, unsupported by more than a century of case law, and contradictory to a prior ruling. *See Boisvert v. Techtronic Indus. N. Am., Inc.*, 56 F. Supp. 3d 750 (D.S.C. 2014).

[8] Plaintiffs attach a nearly decade-old sworn declaration from a case filed in California through which Fluor argued, on *forum non conveniens* grounds, that the case was more appropriately litigated in South Carolina. *See* ECF No. 84 at 39, 84-3. Because venue is irrelevant to a Door Closing Statute analysis, any reliance on Fluor's position in that case would be improper.

by the state in which the injury occurred," *Rogers v. Lee*, 777 S.E.2d 402, 405 (S.C. Ct. App. 2015), and it is undisputed that Plaintiffs' injuries occurred in Afghanistan. As such, the Door Closing Statute clearly applies to Plaintiffs' tort claims because they did not arise in this State. *See Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*, 463 F. Supp. 2d 544, 551 (D.S.C. 2006) ("[D]etermining whether the door-closing statute precludes *some* of the causes of action in this case depends on a fact-sensitive analysis.") (emphasis added).[9]

### C.    The Statute Does Not Require Another Forum Providing "Full Relief."

Plaintiffs incorrectly argue that the Door Closing analysis requires consideration of whether Plaintiffs "could gain full relief" in another state. *See* ECF No. 84 at 39-42. Plaintiffs' "full relief" language comes from a conclusory sentence in a two-paragraph Fourth Circuit opinion, *Bumgarder v. Keene Corporation*, 593 F.2d 572 (4th Cir. 1979). A thorough reading of *Bumgarder* and its progeny shows that *Bumgarder*'s "full relief" language was superfluous and irrelevant to the Door Closing analysis. *See id.* ("Bumgarder *could have maintained* his suit in North Carolina, the place where he lived, worked and was allegedly exposed to asbestos. Because there was an alternate forum to the South Carolina court where Bumgarder could gain full relief, we find *Szantay* [*v. Beech Aircraft Corp.*, 349 F.2d 60 (4th Cir. 1965)] does not apply.") (emphasis added); *see also Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 740 (4th Cir. 1980) ("A plaintiff's failure to timely file suit in the more logical, convenient forum does not constitute a countervailing consideration favoring the exercise of federal jurisdiction."); *see also Boisvert*, 56 F. Supp. 3d at 752 (holding same and noting: "*Szantay* has been almost completely limited, by the Fourth Circuit Court of Appeals, to circumstances in which the plaintiff does not have an alternative forum in which to assert his claims."); *id.* at 753 ("The availability of an alternative

---

[9] Under *Tuttle*, the Court need not take an "all or nothing" approach to the dismissal of Plaintiffs' causes of action. At minimum, Plaintiffs' tort claims are barred by the Door Closing Statute.

forum is dispositive under *Rollins* and its progeny."); *Conner v. Techtronic Indus. N. Am., Inc.*, No. 8:13-CV-02353-JMC, 2015 WL 3871889, at *2 (D.S.C. June 23, 2015) ("'the Fourth Circuit [has] . . . limited the need to apply *Szantay* balancing to situations in which a plaintiff has no other available forum in which to bring its action'" (quoting *California Buffalo v. Glennon-Bittan Grp., Inc.*, 910 F. Supp. 255, 259 (D.S.C. 1996)); *Collins v. RJ Reynolds Tobacco Co.*, 92 F.3d 1177, at *3 (4th Cir. 1996) ("Georgia clearly constitute[d] an alternative forum for [a Georgia resident]").

Moreover, if a plaintiff's failure to timely file suit in a more logical, convenient forum does ***not*** constitute a countervailing federal consideration—a situation in which a plaintiff would be barred from obtaining ***any*** relief—then surely the ability to obtain "full relief" is not required. *See Collins*, 92 F.3d 1177, at *3 ("Following *Rollins*, we find that the fact that the statute of limitations in Georgia has lapsed is insufficient to overcome barring this action under the door-closing statute."); *see also Conner*, 2015 WL 3871889, at *2 ("Even if Plaintiff was procedurally barred from filing this action in [his home state of] Alabama, . . . this would not constitute a countervailing federal consideration"). As this case law makes clear, the Door Closing Statute applies even when a foreign plaintiff is ***completely barred*** from filing elsewhere, so long as there had been an alternative forum in which the plaintiff's suit ***could*** have been brought at any point in time.[10]

Here, nearly all Plaintiffs already litigated their claims in Texas, they lost, and then they refiled in South Carolina. The Door Closing Statute bars these foreign Plaintiffs from suing foreign defendants in South Carolina for injuries that occurred on foreign soil.

## CONCLUSION

The Court should dismiss these consolidated cases based on the political question doctrine and based on the South Carolina Door Closing Statute.

---

[10] At minimum, each Plaintiff ***could*** have also brought his or her respective case in the states in which the named Defendants were incorporated, or in his or her respective home state.

Respectfully submitted,

NEXSEN PRUET, LLC

s/Andrew A. Mathias
William W. Wilkins, Fed. ID No. 4662
Andrew A. Mathias, Fed. ID No. 10166
Konstantine P. Diamaduros, Fed. ID No. 12368
104 South Main Street, Suite 900 (29601)
Post Office Box 10648
Greenville, South Carolina 29603-0648
Telephone: 864.370.2211
Facsimile: 864.282.1177
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

TREY GOWDY LAW FIRM, LLC

Harold Watson Gowdy, III, Fed. ID No. 5675
Post Office Box 3324
Spartanburg, South Carolina 29304
Telephone: 864.809.0917
trey@treygowdylawfirm.com

HARTLINE BARGER LLP

Darrell L. Barger (*admitted pro hac vice*)
1980 Post Oak Blvd.
Suite 1800
Houston, Texas 77056
Telephone: 713.759.1990
Facsimile: 713.652.2419
dbarger@hartlinebarger.com

J. Reid Simpson (*admitted pro hac vice*)
800 N. Shoreline Blvd.
Suite 2000, North Tower
Corpus Christi, Texas 78401
Telephone: 361.866.8000
Facsimile: 361.866.8039
rsimpson@hartlinebarger.com

COVINGTON & BURLING LLP
Raymond B. Biagini (*admitted pro hac vice*)
Daniel L. Russell Jr. (*admitted pro hac vice*)

16

One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: 202-662-6000
Facsimile: 202-662-6291
RBiagini@cov.com
DRussell@cov.com

*Attorneys for Defendants Fluor Intercontinental, Inc.
and Fluor Government Group International, Inc.*

November 2, 2021
Greenville, South Carolina

17